1  WOODRUFF & SMART, APC
   CAROLINE A. BYRNE – State Bar No. 196541
2  cbyrne@woodruff.law
   MEREDITH D. STEWART – State Bar No. 217212
3  mstewart@woodruff.law
   555 Anton Boulevard, Suite 1200
4  Costa Mesa, California 92626-7670
   Telephone: (714) 558-7000
5  Facsimile: (714) 835-7787

6  Attorneys for Defendants CITY OF GARDEN GROVE, a public
   entity; SERGEANT MARK LORD, an employee of Defendant City
7  of Garden Grove, a public entity; DETECTIVE MICHAEL
   REYNOLDS, a former employee of Defendant City of Garden Grove,
8  a public entity; and SERGEANT MIKE MARTIN, a former employee
   of Defendant City of Garden Grove, a public entity

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  AARON NGUYEN, NGOC LE THI          CASE NO.: 8:21-cv-01775-JVS (ADSx)
    PHAN, AND HOANG MINH NGUYEN,
14                                      BEFORE THE HONORABLE
          Plaintiffs,                   JAMES V. SELNA; CTRM. 10C
15
    v.                                  **DEFENDANTS LORD, REYNOLDS**
16                                      **AND MARTIN'S RESPONSE TO**
    CITY OF GARDEN GROVE, MARK          **PLAINTIFFS' "ADDITIONAL"**
17  LORD, MICHAEL REYNOLDS,             **STATEMENT OF MATERIAL**
    SERGEANT MIKE MARTIN, AND           **FACTS IN OPPOSITION TO THE**
18  DOES 1-10, INCLUSIVE,               **OFFICERS' MOTION FOR**
                                        **SUMMARY JUDGMENT, OR**
19        Defendants.                   **ALTERNATIVELY PARTIAL**
                                        **SUMMARY JUDGMENT**
20
                                        [*Filed Concurrently with Memorandum of*
21                                      *Points and Authorities; Response to*
                                        *Plaintiffs' Statement of Genuine Disputes;*
22                                      *Objections to Plaintiffs' Evidence; and*
                                        *Supplemental Compendium of Evidence*]
23
                                        HEARING DATES PENDING:
24                                      Type:  Defendants' Motion for Summary
                                               Judgment
25                                      Date:  December 11, 2023
                                        Time:  1:30 p.m.
26
                                        Type:  Final Pre-Trial Conference
27                                      Date:  January 2, 2024
                                        Time:  8:30 a.m.
28

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

1

Type:  Trial
Date:  January 30, 2024
Time:  8:30 a.m.

Defendants SERGEANT MARK LORD ("Lord"), DETECTIVE MICHAEL REYNOLDS ("Reynolds"), SERGEANT MIKE MARTIN ("Martin") (sometimes collectively "Officers"), submit the following responses to Plaintiffs' "additional" material facts submitted in opposition to the Officers' motion for summary judgment/partial summary judgment.

**GENERAL OBJECTIONS**

**A.**    The Officers object to the entirety of Plaintiffs' "additional" material facts. Plaintiffs have submitted 577 "additional" facts that they claim are material. Plaintiffs' "additional" facts are improper. Under Local Rule 56-2, a party opposing a motion for summary judgment is required to file a "Statement of Genuine Disputes" that sets forth in the left-hand column every fact included in the moving party's statement of uncontroverted facts and indicating for each such fact in the right-hand column whether the opposing party contends that a genuine dispute necessary to be litigated exists as to that fact. Local Rule 56 does not permit an opposing party to file "additional" material facts in opposition to a motion for summary judgment.

**B.**    Many of Plaintiffs' "facts" are not facts at all but consist of argument of counsel and/or improper conclusions that usurp the role of the trier of fact.

**C.**    Many of Plaintiffs' purported "additional" facts are not relevant to the issues to be decided in this matter, which issues are framed by Plaintiffs' contentions. As to Lord, Plaintiffs contend he conducted a coercive interview of Nina, he fabricated evidence by coercing false inculpatory statements from Nina, including the hand-drawn diagram, and by omitting exculpatory evidence from his written report and that Lord made misleading statements to Nina about the evidence the police had against Aaron. *See* Officers' Compendium of Evidence, Ex. C & D, pp. 105-163. As to Reynolds, Plaintiffs allege he fabricated evidence relating to Leesa Huynh's interview and that he omitted exculpatory evidence from his report relating to that

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

2

1797161.4

interview. Plaintiffs also allege Reynolds is subject to supervisory liability because he was the lead investigator assigned to the Phi Hong shooting incident. *See* Officers' Compendium of Evidence, Ex. E & F, pp. 174-213. As to Martin, Plaintiffs' allege his unrecorded contact with Nina between the first and second interview, which he failed to document, was coercive and caused her to cry, that he fabricated evidence through his coercive techniques, including Nina's hand-drawn diagram, and that Martin made misleading statements to Nina about the evidence the police had against Aaron. Plaintiffs also assert Martin has supervisory liability because he was a supervisor at the time of the investigation and was responsible for overseeing investigatory activities. *See* Officers' Compendium of Evidence, Ex. G & H, pp. 216-297. The issue of whether or not Plaintiff Aaron Nguyen is or is not factually innocent is not relevant.

     **D.**    For many of their facts, Plaintiffs have not submitted admissible, supporting evidence. For example, Plaintiffs have relied on evidence that is not submitted with their opposition papers but that was previously submitted in support of a different motion, requiring the Officers and this Court to sift through multiple documents to try and locate Plaintiffs' supporting evidence. (See also, the Officers' separately filed objections to Plaintiffs' evidence, objection no. 1.) They also have relied on expert reports that are not signed under penalty of perjury, as well as other unauthenticated evidence. And as set forth in the Officers' Objections to Plaintiffs' Evidence, most of the proffered expert opinions are improper and inadmissible.

///

     **E.**    Many of Plaintiffs' additional facts are improper and contain multiple facts within each statement. *See, e.g.,* Plaintiffs' additional fact no. 500. Further, Plaintiffs often use their citation to the allegedly supporting evidence as a way to further argue their case or explain the evidence by burying more facts within the evidence citations. It appears that Plaintiffs have attempted to use their additional facts as a way to insert additional argument into the opposition so as to avoid the 7,000 word limitation set out in Local Rule 11-6.1.

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

Although the Officers believe Plaintiffs' additional material facts are improper and should not be considered by this Court, in an abundance of caution, and without waiving the objections, the Officers respond to Plaintiffs' additional facts as follows:

| Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendant Officers' Response To Cited Fact and Supporting Evidence |
|---|---|
| **1.    Aaron Nguyen Trial & Reversal** | |
| 1.    In May 2020, Aaron's conviction was reversed on direct appeal for insufficient evidence to support his conviction as either an aider and abettor or as a co-conspirator under the natural and probable consequences theory. **Evidence**    Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 23. | 1.    Objection: *See* General Objections, Objections **A**, **C**, **D**. Without waiving this objection, the Officers respond as follows: Undisputed that the state court of appeal stated that "As to Nguyen, the judgment is reversed for insufficient evidence." Exhibit B, Dkt. 77 (p. 88 of the Officers' Compendium). |
| 2.    The decision found there was insufficient evidence to proof that he intended to commit, encourage, or facilitate the commission of the offense of disturbing the peace. **Evidence**    Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 24. | 2.    Objection: *See* General Objections, Objections **A, C, D**. Without waiving this objection, the Officers respond as follows: Undisputed that the state court of appeal stated that "As to Nguyen, the judgment is reversed for insufficient evidence." Exhibit B, Dkt. 77 (p. 88 of the Officers' Compendium). |
| 3.    As the majority observed, the prosecution presented "no evidence, circumstantial or otherwise, that | 3.    Objection: *See* General Objections, Objections **A, C, D**. Also, |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| Nguyen intended to be involved in any confrontation or fight between TRG and its rivals…There was no evidence Nguyen intended to join the fight under any circumstances." **Evidence** Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 24. | the prosecuting attorney was the decision maker regarding what evidence and witnesses to present at the criminal trial, including presenting Nina's drawing. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). Without waiving this objection, the Officers respond as follows: Undisputed that the state court of appeal stated that "As to Nguyen, the judgment is reversed for insufficient evidence." Exhibit B, Dkt. 77 (p. 88 of the Officers' Compendium). |
| 4.      The decision emphasized that "[i]t was undisputed that Nguyen was not a gang member nor affiliated with any gang. Nguyen had no personal interest in TRG's rivalry with POV or others." **Evidence** Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 24. | 4.      Objection: *See* General Objections, Objections **A, C, D**. Without waiving this objection, the Officers respond as follows: Undisputed that the state court of appeal stated that "As to Nguyen, the judgment is reversed for insufficient evidence." Exhibit B, Dkt. 77 (p. 88 of the Officers' Compendium). |
| 5.      The appellate decision noted that "[t]he evidence at trial did **not** show that Nguyen was involved in efforts to box in or trap the victims cars – there was little evidence his car was in the parking lot." | 5.      Objection: *See* General Objections, Objections **A, C, D**. Also, the prosecuting attorney was the decision maker regarding what |

1797161.4

| | |
|---|---|
| **Evidence**     Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 25. | evidence and witnesses to present at the criminal trial, including presenting Nina's drawing. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). Without waiving this objection, the Officers respond as follows: Undisputed that the state court of appeal stated that "As to Nguyen, the judgment is reversed for insufficient evidence." Exhibit B, Dkt. 77 (p. 88 of the Officers' Compendium). |
| 6.     As the appellate decision observed; no prosecution witness testified to seeing Aaron in the parking lot; two prosecution eyewitnesses testified they did *not* see his car. One of the victims (also a prosecution witness) –was familiar with Aaron (as a friendly acquaintance) and did not see his car present. **Evidence**     Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 25. | 6.     Objection:     *See*     General Objections, Objections **A, C, D**. Also, the prosecuting attorney was the decision maker regarding what evidence and witnesses to present at the criminal trial, including presenting Nina's drawing. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). Without waiving this objection, the Officers respond as follows: Undisputed that the state court of appeal stated that "As to Nguyen, the judgment is reversed for insufficient |

1797161.4

| | | |
|---|---|---|
| 1 | | evidence." Exhibit B, Dkt. 77 (p. 88 of |
| 2 | | the Officers' Compendium). |
| 3 | 7.     In fact, as the appellate decision observed, "Nguyen's cell phone records confirmed that when the TRG [aggressor] members were converging on the pool hall around 2:00 a.m., he was several miles away, near a restaurant he and Nina [his girlfriend] claimed to have stayed at because he lost [the group]." **Evidence**     Dkt. 73-2, Ex. 301 (5/15/2020 Appellate Decision), p. 25. | 7.     Objection:     *See*     General Objections, Objections **A, B, C, D**. Also, argumentative as to "in fact." the prosecuting attorney was the decision maker regarding what evidence and witnesses to present at the criminal trial, including presenting Nina's drawing. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | Without waiving this objection, the |
| 14 | | Officers respond as follows: |
| 15 | | Undisputed that the state court of |
| 16 | | appeal stated that "As to Nguyen, the |
| 17 | | judgment is reversed for insufficient |
| 18 | | evidence." Exhibit B, Dkt. 77 (p. 88 of |
| 19 | | the Officers' Compendium). |
| 20 | | |
| 21 | 8.     The prosecution's gang expert, Detective Peter Vi, had been a gang suppression officer for 25 years at the time he testified; he had testified as a gang expert in Orange County Superior Courts 118 times, and had talked to over a thousand gang members, throughout his investigation. **Evidence**     Dkt. 73-2, Ex. 106 (Peter Vi Trial Testimony), p. 729:4 – 729:26. | 8.     Objection:     *See*     General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | 9.     GGPD veteran gang expert, Detective Peter Vi, testified in the 2017 | 9.     Objection:     *See*     General |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| trial that Aaron was not a gang member.<br>**Evidence**     Dkt. 73-2, Ex. 106, Peter Vi Trial Testimony, p. 445:7 – 445:26, 1629:20 – 1629:23. | Objections, Objections **A, C, D**. No evidence has been presented that the Officers ever asserted Aaron was a gang member. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 10.     During deposition in this case, Peter Vi testified that, in making his determination that Aaron was not a gang member, he came across no evidence that Aaron was a gang member.<br>**Evidence**     Battles 10/20/23 Decl., Battles 10/20/23 Decl., Ex. 412, (Peter Vi Deposition Testimony), pp. 216:13 – 216:18. | 10.     Objection:     *See*     General Objections, Objections **A, C, D**. No evidence has been presented that the Officers ever asserted Aaron was a gang member. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 11.     Peter Vi testified that Aaron's cell phone ping near Bolsa and Bushard, was 3.6 – 3.7 miles from the Phi Hong, which he estimated to be a 10-15 minute drive at 2:00 in the morning.<br>**Evidence**     Dkt. 73-2, Ex. 106, Peter Vi Trial Testimony, pp. 1692:7 – 1693:9. | 9.     Objection:     *See*     General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 12.     Skylar Avila, a passenger in the shooter's car, testified he did not see Aaron at the Phi Hong.<br>**Evidence**     Dkt. 73-2, Ex. 109 (Skylar Avila Trial Testimony Tr) p. 1476:14 – 1476:21 (Skylar knew Aaron); p. 1566:5 – 1568:12 (Skylar did not see Aaron at the Phi Hong). | 12.     Objection:     *See*     General Objections, Objections **A, C, D, E**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 13.     Cynthia Sipaseuth, a co-defendant, testifying under grant of immunity, who participated in the caravan of cars on Westminster, testified that she **did not see Aaron's** | 13.     Objection:     *See*     General Objections, Objections **A, C, D**. Without waiving the objections, the |

1797161.4

| | |
|---|---|
| **car at the Phi Hong**.<br>**Evidence**    Dkt. 73-2, Ex. 107 (Cynthia Sipaseuth Trial Testimony Tr.), pp. 1120:3 – 1120:10, 1238:25 – 1239:17. | Officers respond as follows: Undisputed. |
| 14.    Cynthia testified that she paid attention to and was in a position to see other cars in the pool hall parking lot because of where she parked, and because she was the last one to leave.<br>**Evidence**    Dkt. 73-2, Ex. 107 (Cynthia Sipaseuth Trial Testimony Tr.), pp. 1239:4 – 1240:17. | 14.    Objection:    *See*    General Objections, Objections **A, C, D**. Also misstates the evidence. Ms. Sipaseuth testified that there were areas of the parking lot at the poolhall that she could not see. Exhibit KK, Sipaseuth criminal trial testimony, P001708:8-10, (p. 28 of the Officers' Supplemental Compendium). |
| 15.    She also testified that Aaron drove a silver Honda Accord, which she did not identify as being present at the pool hall, even though she was able to identify Puffy and CJ.<br>**Evidence**    Dkt. 73-2, Ex. 107 (Cynthia Sipaseuth Trial Testimony Tr.), pp. 1239:14 – 1239:16, 1241:6 – 1243:7. | 15.    Objection:    *See*    General Objections, Objections **A, C, D**. Also misstates the evidence. Also misstates the evidence. Ms. Sipaseuth testified that the only cars she remembered seeing at the poolhall were her car, Puffy's and C.J.'s but those were not the only three cars in the poolhall parking lot, and also testified that there were areas of the parking lot at the poolhall that she could not see. Exhibit KK, Sipaseuth criminal trial testimony, P001634:4-7, P001706:23-P001707:8, P001707:15-17, and P001708:8-10 (pp. 25-28 of the Officers' Supplemental |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Compendium). |
| 16.    Cynthia also testified that she was familiar with Aaron, as well as several members of TRG and Hellside, and she knew that Aaron was not a gang member.<br>**Evidence**    Dkt. 73-2, Ex. 107 (Cynthia Sipaseuth Trial Testimony Tr.), pp. 1200:18 – 1201:18, 1233:15 – 1234:2. | 16.    Objection:    *See*    General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 17.    Jimmy Nguyen, one of eight individuals in the victims' SUV testified that when they exited the parking lot and fled down Westminster, Jimmy was riding in the back (cargo compartment) of the SUV with his cousin Thai;<br>**Evidence**    Dkt. 73-2, Ex. 108, (Jimmy Nguyen Trial Testimony Tr.) p. 1448:4 – 1448:21. | 17.    Objection:    *See*    General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 18.    Jimmy testified that he and Thai were both facing out of the back window, and were able to identify the driver of the shooter's car, as well as another co-defendant (both of whom admitted being present).<br>**Evidence**    Dkt. 73-2, Ex. 108, (Jimmy Nguyen Trial Testimony Tr.) pp. 1440:17 – 1441:22 (testifying that he and Thai were facing out the back window, in a position to see the cars), 1445:2 – 1445:18 (testifying that he saw a silver lexus), 1445:26 – 1446:14 (and a green car), 1294:1 – 1294:4 (testifying that he recognized one person)<br><br>See also, Dkt. 73-2, Ex. 97 (Wasinger Report re Interviews of Victims Jimmy Nguyen and Son Ton) pp. 4 – 6 (Jimmy identified the Lexus as the shooter's | 18.    Objection:    *See*    General Objections, Objections **A, C, D, E**. Without waiving the objections, the Officers respond as follows: Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objections nos. 17, 25) |

1797161.4

| | |
|---|---|
| vehicle); Dkt. 73-2, Ex. 64 (Peter Vi Rpt.) p. 17 (Jason identified the Lexus as the shooter's vehicle). | |
| 19.    Jimmy did not identify Aaron (although he would have recognized him if he saw him), or his car (despite knowing he drove a silver Honda Accord), as being at the Phi Hong (or anywhere at the time of the incident). **Evidence**    Dkt. 73-2, Ex. 108, (Jimmy Nguyen Trial Testimony Tr.) pp. 1454:17 – 1455:12 (familiarity with Aaron and his silver Honda Accord); 1293:1 – 1294:4 (he recognized a silver Lexus, a dark green car, another car, and one person).<br><br>See also, Dkt. 73-2, Ex. 97 (Wasinger Report re Interviews of Victims John Nguyen, Jimmy Nguyen and Son Ton) pp. 4 – 6 (not identifying Aaron on 03/20/2011). | 19.    Objection: *See* General Objections, Objections **A, C, D, E**. Without waiving the objections, the Officers respond as follows: Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 25) |
| 20.    Jimmy testified that Thai was a member of AF, a rival of TRG. **Evidence**    Dkt. 73-2, Ex. 108 (Jimmy Nguyen Trial Testimony Tr.) pp. 1449:1 – 1449:6, 1449:26 – 1450:4. | 20.    Objection: *See* General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 21.    Jimmy testified that he and Thai knew Aaron. Jimmy had met Aaron at Thai's house. **Evidence**    Dkt. 73-2, Ex. 108 (Jimmy Nguyen Trial Testimony Tr.) pp. 1448:4 – 1448:24. | 21.    Objection: *See* General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Aaron socialized with gang members. |
| 22.    According to Jimmy's testimony, Thai was friends with Aaron and had hung out on many occasions, | 22.    Objection: *See* General Objections, Objections **A, C, D, E**. |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| including shooting pool and getting coffee.<br>**Evidence**    Dkt. 73-2, Ex. 108 (Jimmy Nguyen Trial Testimony Tr.) pp. 1449:12 – 1451:11, 1449:12 – 1449:25, 1450:5 – 1450:12, 1451:6 – 1451:19, 1451:26 - 1452:9.<br><br>*See also*, Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 231:8 – 231:23 (Thai Nguyen was Aaron's friend; they hung out ever weekend or every other weekend). | Without waiving the objections, the Officers respond as follows: Undisputed that Aaron socialized with gang members. |
| 23.    Jimmy testified that he shot pool with Aaron at the 2000 Billiards (Two Thousand Club).<br>**Evidence**    Dkt. 73-2, Ex. 108 (Jimmy Nguyen Trial Testimony Tr.) p. 1455:17 – 1455:23. | 23.    Objection:    See General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Aaron socialized with gang members. |
| 24.    Jimmy testified that he and Thai knew Aaron was not a gang member.<br>**Evidence**    Dkt. 73-2, Ex. 108 (Jimmy Nguyen Trial Testimony Tr.) p. 1449:17 – 1449:21. | 24.    Objection:    *See* General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Aaron is not a gang members. |
| 25.    Jimmy testified that, if Aaron had been affiliated with TRG or Hellside, Thai would not have hung out with him as he did not hang out with gang rivals.<br>**Evidence**    Dkt. 73-2, Ex. 108 (Jimmy Nguyen Trial Testimony Tr.) pp. 1449:1 – 1449:6, 1449:26 – 1450:4. | 25.    Objection:    *See* General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Aaron is not a gang members. |
| 26.    The prosecution presented no witnesses who placed Aaron at the Phi | 26.    Objection:    *See* General |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

1    Hong.

**Evidence**    *See* Dkt. 73-2, Ex. 301
2
(5/15/2020 Appellate Decision), p. 25.
3

Objections,    Objections **A, C, D**.
Further, the prosecuting attorney was the decision maker regarding what evidence and witnesses to present at the criminal trial. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium).

Also, this fact misstates the cited evidence. At page 25 of its opinion, the appellate court stated: "Nina's statements as to whether they were at the pool hall that night were consistently inconsistent; at times she said they were not there that night and other times she said they were or that she had confused that pool hall with another one when she said they were there." Exhibit B, Dkt. 77, p. 25 (p. 71 of the Officers' Compendium). The appellate court then went on to make a credibility determination regarding Nina's testimony and held that "As to Nguyen, the judgment is reversed for insufficient evidence." Exhibit B, Dkt. 77 (p. 88 of the Officers' Compendium).

Finally, this fact ignores Plaintiffs'

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | own admission in response to the Officers' facts that Nina admitted during her trial testimony that she had told the officers that she went to the poolhall in a car driven by Aaron. *See* Officers' fact no. 96. |
| 27.    The prosecution presented cell phone GPS evidence showing that Aaron's phone was near the intersection of Bolsa/Bushard at 1:58; there were no usage events between 1:58 and hours after the shooting occurred.<br>**Evidence**    Dkt. 73-2, Ex. 106, Peter Vi Trial Testimony, p. 1692:7 – 1692:22 (10-15 minute drive); Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, pp. 1282:26 – 1283:2 (Lord knew about it prior to Aaron's interview); Dkt. 73-2, Ex. 102, Bruce Linn Trial Testimony, p. 1598:15 – 1598:22 (no usage events from 1:58 a.m. until hours after the incident). | 27.    Objection:    *See*    General Objections, Objections **A, C, D, E.**<br>Also, misstates the evidence cited. None of Plaintiffs' evidence states exactly what is contained in this alleged fact. Thus, this fact is based on Plaintiffs' interpretation of the evidence, not the actual evidence. For example, in the Linn testimony cited by Plaintiffs, Linn testified that the last usage event for Aaron's cell phone was at 1:58 a.m. but did not testify as to the location of that usage event. Linn also explained that the cell phone map doesn't identify exactly where the phone was at a particular minute and second, but it tells you which tower and which sector the phone utilized in a particular usage event. |
| 28.    The prosecution presented no video surveillance footage to show Aaron's car at the Phi Hong.<br>**Evidence**    See Dkt. 73-2, Ex. 301 | 28.    Objection:    *See*    General Objections, Objections **A, C, D.** Also, misstates the evidence cited. Plaintiffs' |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| (5/15/2020 Appellate Decision), p. 25. | evidence does not state what is contained in this alleged fact. At page 25 of the appellate opinion, the appellate court stated, "Indeed, there was little evidence his car was in the parking lot." Exhibit B, Dkt. 77, p. 25 (p. 71 of the Officers' Compendium). |
| 29.   Nina testified under a grant of immunity (signed 1/12/2017)<br>**Evidence**   Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2016 Trial Testimony), pp. 965:12 – 966:5. | 29.   Undisputed. |
| 30.   Before she testified, DA Investigator, Joe Kim, provided her with a copy of Detective Lord's police report to use for preparing to testify, even though DDA Feldman testified at deposition that he would never have prepared a witness with a report known to contain material misrepresentations.<br>**Evidence**   Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony), pp. 1011:5 – 1011:13, 1012:1 – 1012:13; Battles 10/20/23 Decl., Ex. 400 (Feldman Deposition Tr.) pp. 34:5 – 35:17, 113:24-115:3. | 30.   Objection: *See* General Objections, Objections **A, B, C, D.** Also, argumentative as to "even though."<br><br>Also, the cited evidence does not support the conclusion that Nina was shown Lord's police report "to use for preparing to testify." Also, vague as to meaning of "preparing to testify." DDA Feldman testified in his deposition that Nina was given Lord's police report relating to her interviews to "refresh her recollection." Exhibit N, Feldman depo, 35:19-22, 36:12-37:8 (pp. 368-371 to the Officers' Compendium). Also, this fact misrepresents Feldman's testimony and |

1797161.4

| | |
|---|---|
| | deliberately omits his explanation at pp. 36-37 on this issue: |
| | > [B]ut I have to be very clear here, the word "summary" is the key. So if there's something specific in an interview, we would also sit the witness down and have them listen to it; so there are multiple ways which this could have happened. |
| | > And when I hand someone a police report, yes, the intention is, "Hey, this is something that the officer wrote down. I'm asking you to refresh your recollection." |
| | > I'm basically trying to get -- I'm mean, sorry for the analogy, get them in the ballpark because, as in many cases, this case took years to wrap up, and I don't expect witnesses to remember the detail that they first expressed when they were interviewed; so that's the purpose. |
| | > I believe the documents to be a summary; so accuracy and summary, in my mind, don't really go together. It's just, "Hey, let me just kind of vector you in." |
| | Without waiving the objections, the Officers respond as follows: Undisputed that Nina was given Lord's report *to refresh her recollection*. |
| 31.    Nina had never viewed the interrogation video – in entirety – until several weeks before her deposition in June 2023. | 31.    Objection:    *See*    General Objections, Objections **A, C, D.** Without waiving the objections, the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| **Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 20:23 – 21:9, 26:18 – 27:4. | Officers respond as follows: Undisputed. Nina testified that prior to her deposition she spent four hours with Plaintiffs' attorney reviewing the video tapes of her April 20, 2011 interviews. |
| 32.     During trial testimony, Nina testified that she made statements during her interrogation indicating she was at the Phi Hong. <br> **Evidence**     Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2016 Trial Testimony), pp. 1065:22 – 1065:26, 1066:6 – 1066:13 | 32.     Undisputed that Nina admitted during her criminal trial testimony that she had told Garden Grove police that she and Aaron had been to the Phi Hong poolhall. |
| 33.     Nina testified that she had no memory of being at the Phi Hong. <br> **Evidence**     Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony), pp. 1066:24 – 1066:26, 1054:25 – 1055:9; 1460:8 – 1460:11, 1066:14 – 1066:19 (explaining she made statements indicating they were at the Phi Hong and Westminster "Because I felt like that's what they wanted to hear and they kept asking me repeatedly, and when I say, 'no,' they tell me that I'm lying..") | 33.     Objection: *See* General Objections, Objections **A, E**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina stated during her criminal trial testimony that she had no memory of being at Phi Hong but she also testified that she and Aaron were there. She testified that after the restaurant she remembered Tony told Aaron to go to the poolhall. Exhibit S, Nina's criminal trial testimony, p. P001464 (p. 499 to the Officers Compendium). She also testified at the trial as follows: <br><br> Q. … Ms. Nguyen, did you go to the pool hall in a car driven by your boyfriend at the time, Aaron Nguyen? |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | A. No.<br>Q. Did you tell the officers that you did?<br>A. Yes.<br>Q. Were you lying to the officers?<br>A. No.<br>Q. Who did you see when you got to the pool hall?<br>A. I did not see any -- it was dark. I couldn't see anyone. Exhibit S, Nina's criminal trial testimony, p. P001468 (p. 501 to the Officers Compendium). |
| 34.    Nina testified that, after a sergeant yelled at her, she believed she would go to jail if she didn't tell the detective the things he wanted to hear. **Evidence**    Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony) p. 1059:15 – 1060:6. | 34.    Objection:    *See*    General Objections, Objections **A, C, D**. Also, vague as to "a sergeant yelled at her" and "the detective." Also, misstates the cited testimony. Nina testified she was "afraid to go to jail." The evidence does not show that Nina "believed" she would go to jail or that anyone threatened her with jail. |
| 35.    During trial, Nina testified that she "was under a lot of pressure" and drew the map/diagram "just so [the officers] would stop bothering her. **Evidence**    Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony), pp. 1009:4 – 1010:7.<br><br>See also, Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 129:3 – 130:17 (Nina felt forced to draw the diagram). | 35.    Objection:    *See*    General Objections, Objections **A, C, D, E**. This fact ignores Nina's deposition testimony where she stated that she held the pen and paper and no one at the police station held her hand on a pen and no one made her draw anything specific. (Nina depo, 131:11-20, Plaintiffs' Dkt. 73-2, Ex. 401 at |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| | Dkt. 73-44, p. 761) |
| 36.    Nina only drew "Westminster" on the diagram because police told her to write it.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony) pp. 1072:7 – 1073:18 (Nina's diagram was meant to reflect leaving Stonecress Park; it did not involve Phi Hong Billiards; Nina only drew "Westminster" on the diagram because police were yelling at her to do so); Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 287:2 – 288:9. Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 287:2 – 288:9. Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 287:2 – 288:9 ("he told me to write down 'Westminster' I had no other choice but to write down anything else"). | 36.    Objection:    *See*    General Objections, Objections **A, B, C, D, E.** Also, misstates the evidence. First, the video evidence does not support the claim that the police were "yelling" at Nina to write Westminster on her drawing. In fact, the evidence shows that prior to Nina drawing the picture and writing "Westminster" on it, Nina told the officer (presumably Lord) in her interview that she and Aaron and Tony had been in the parking lot of the poolhall and that they left to go to Tony's house and that when they left the drove on Westminster. Then, after she said they had been on Westminster, Lord said "I want you to draw me a picture. … Of the way that you saw the cars." And Nina said "okay." Lord then said, "Draw Westminster, *just draw a street*." Nina then chose to draw Westminster. As Nina drew the picture, Lord asked, "Are these lanes?" and Nina said "Yeah, sorry." Later in her second interview, Nina said, "I even wrote    Westminster."    Exhibit    W, transcript of Nina interview #2, pp. 22- |

| | |
|---|---|
| | 23, 37, 64 (pp. 693-694, 708, 735 to the Officers Compendium). |
| 37.    Although, when Nina drew the diagram, Lord told Nina to "write Westminster", and to draw lanes, he stated in his report that "she told me she would draw a map," and omitted his instructions.<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 15. | 37.    Objection:    *See*    General Objections, Objections **A, B, C, D, E.** The cited evidence does not support the statement from "Although" through to "draw lanes." Also, misstates the evidence. First, the video evidence does not support the claim that the police were "yelling" at Nina to write Westminster on her drawing. In fact, the evidence shows that prior to Nina drawing the picture and writing "Westminster" on it, Nina told the officer (presumably Lord) in her interview that she and Aaron and Tony had been in the parking lot of the poolhall and that they left to go to Tony's house and that when they left the drove on Westminster. Then, after she said they had been on Westminster, Lord said "I want you to draw me a picture. … Of the way that you saw the cars." And Nina said "okay." Lord then said, "Draw Westminster, *just draw a street*." Nina then chose to draw Westminster. As Nina drew the picture, Lord asked, "Are these lanes?" and |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| | Nina said "Yeah, sorry." Later in her second interview, Nina said, "I even wrote Westminster." Exhibit W, transcript of Nina interview #2, pp. 22-23, 37, 64 (pp. 693-694, 708, 735 to the Officers Compendium). |
| 38.  At trial, Lord testified he did not label the map with the word "Westminster" or "direct her or tell her what to write on [the] map" and DDA Feldman did not correct him.<br>**Evidence**  Dkt. 73-2, Ex. 101, (Lord Trial Testimony Tr.) pp. 1273:1 – 1273:6. | 38.  Objection:  *See*  General Objections, Objections **A, B, C, D, E.** Also, argumentative and assumes facts not in evidence that Lord's trial testimony needed to be corrected. Also, evidence shows that prior to Nina drawing the picture and writing "Westminster" on it, Nina told the officer (presumably Lord) in her interview that she and Aaron and Tony had been in the parking lot of the poolhall and that they left to go to Tony's house and that when they left the drove on Westminster. Then, after she said they had been on Westminster, Lord said "I want you to draw me a picture. … Of the way that you saw the cars." And Nina said "okay." Lord then said, "Draw Westminster, *just draw a street*." Nina then chose to draw Westminster. As Nina drew the picture, Lord asked, "Are these lanes?" and |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Nina said "Yeah, sorry." Later in her second interview, Nina said, "I even wrote Westminster." Exhibit W, transcript of Nina interview #2, pp. 22-23, 37, 64 (pp. 693-694, 708, 735 to the Officers Compendium). |
| 39.    Nina testified that the diagram was intended to depict events as they were passing by Miles Square Park. **Evidence**    *See* Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony) pp. 1021:11 – 1021:22, 1072:7 – 1073:18 (Nina's diagram was meant to reflect leaving Stonecress Park; it did not involve Phi Hong Billiards; Nina only drew "Westminster" on the diagram because police were yelling at her to do so). | 39.    Objection:    *See*    General Objections, Objections **A, B, C, D, E.** Also, misstates the evidence. First, the video evidence does not support the claim that the police were "yelling" at Nina to write Westminster on her drawing. In fact, the evidence shows that prior to Nina drawing the picture and writing "Westminster" on it, Nina told the officer (presumably Lord) in her interview that she and Aaron and Tony had been in the parking lot of the poolhall and that they left to go to Tony's house and that when they left the drove on Westminster. Then, after she said they had been on Westminster, Lord said "I want you to draw me a picture. … Of the way that you saw the cars." And Nina said "okay." Lord then said, "Draw Westminster, *just draw a street*." Nina then chose to draw Westminster. As Nina drew the picture, |

1797161.4

| | |
|---|---|
| | Lord asked, "Are these lanes?" and Nina said "Yeah, sorry." Later in her second interview, Nina said, "I even wrote Westminster." Exhibit W, transcript of Nina interview #2, pp. 22-23, 37, 64 (pp. 693-694, 708, 735 to the Officers Compendium). |
| 40.    During deposition in this case, Nina testified that her trial testimony – that she had no memory of being at the Phi Hong – was truthful.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 277:21 – 277:24.<br><br>See also, Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 152:2 – 152:4, p. 161:15 – 161:20 (During deposition, Nina testified that she and Aaron were not present at the Phi Hong on the night of the shooting, and were not present at the shooting). | 40.    Objection:    *See*    General Objections, Objections **A, E**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said this at her deposition but she also testified at trial that she was being truthful when she told the officers they were at the poolhall. Nina testified at the trial that after the restaurant she remembered Tony told Aaron to go to the poolhall. Exhibit S, Nina's criminal trial testimony, p. P001464 (p. 499 to the Officers Compendium). She also testified at the trial as follows:<br><br>Q. … Ms. Nguyen, did you go to the pool hall in a car driven by your boyfriend at the time, Aaron Nguyen?<br>A. No.<br>Q. Did you tell the officers that you did?<br>A. Yes.<br>Q. Were you lying to the officers? |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| | A. No.<br>Q. Who did you see when you got to the pool hall?<br>A. I did not see any -- it was dark. I couldn't see anyone.<br>Exhibit S, Nina's criminal trial testimony, p. P001468 (p. 501 to the Officers Compendium). |
| 41.    During Nina's trial testimony, the complete video of her interrogation was not played for the jury.<br>**Evidence**    *See* Battles 10/20/23 Decl., Ex. 100 (Nina Nguyen 2017 trial testimony). | 41.    Objection: See General Objections, Objections **A, B**. This appears to be Plaintiffs' counsel's speculation. Plaintiffs have not produced evidence from which this fact can be determined. This fact cannot admitted or denied. Further, the Officers had no control over what evidence was presented or not presented. DDA Feldman, as the prosecuting attorney, was the decisionmaker as to what evidence to present at trial, including deciding what witnesses he called and the presentation of Nina's drawing to the jury. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). |
| 42.    In Aaron's 2017 Trial, DDA Feldman characterized Nina's diagram as depicting Aaron's car boxing in cars near the Phi Hong, rather than getting lost by Miles Square Park. | 42.    Objection:    *See    General* Objections, Objections **A**. Further, the Officers had no control over what |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| **Evidence** Ex. 114 (Feldman Opening) pp. 259:21 – 259:25 ("There were no more phone calls that came out of Aaron Nguyen's phone at that time so **we don't have a cell map, but what we do have is** Nina Nguyen, and Nina Nguyen draws an actual picture, **a map, and shows exactly how they boxed in the victim's vehicle**.") | evidence was presented or not presented. DDA Feldman, as the prosecuting attorney, was the decisionmaker as to what evidence to present at trial, including deciding what witnesses he called and the presentation of Nina's drawing to the jury. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). Also, at the same trial, witness Cynthia Sipaseuth testified about the boxing in or chasing of a car as follows: |

> Q. By Mr. Feldman: Sure. Essentially, so you know exactly what I'm asking about, you've already described to us at great length when you drove out of the pool hall parking lot watching people that you described as your friends chase a car and then hearing what you thought was a shot; right?
> A. Yes.
> Q. My question is: was that the only time that night that any sort of chase happened?
> A. Yes.
> …
> Q. From Stonecress Park to the taqueria, same questions. Did you see anything that looked like a chase?
> A. No.

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | Q. Did you hear any gunshots?<br>A. No.<br>Q. From Stonecress to the taqueria, I don't know if I have that order correctly. When you left Stonecress Park, did you see anything that appeared to be a chase that you've described?<br>A. No.<br>Exhibit KK, Sipaseuth criminal trial testimony, P001709:15-23, P001710:15-24 (pp. 29, 30 of the Officers' Supplemental Compendium). |
| 43. At closing, the prosecution conceded that Nina's testimony was highly inconsistent, yet emphasized that the jury simply could not ignore the map she drew or her description of how they executed the plan. "She goes back and forth about a million things, but it would be a shortcut for you to just discredit her testimony because she went back and forth on other things…You just can't ignore that young woman when she says, 'Here's the map and the way in which we executed this plan.' You just can't write that off."<br>**Evidence**    Dkt. 73-2, Ex. 110, (DDA Feldman Trial Closing Argument), pp. 1880:15 – 1880:24, 1871:5 – 1871:11 ("whatever you think of Nina Nguyen personally, **there was one thing that she never wavered on. That. That map**.") | 43. Objection: *See* General Objections, Objections **A, B, C, D, E.** Further, the Officers had no control over what evidence was presented or not presented. DDA Feldman, as the prosecuting attorney, was the decisionmaker as to what evidence to present at trial, including deciding what witnesses he called and the presentation of Nina's drawing to the jury. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). Also, at the same trial, witness Cynthia Sipaseuth testified about the boxing in or chasing of a car as follows:<br>Q. By Mr. Feldman: Sure. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Essentially, so you know exactly what I'm asking about, you've already described to us at great length when you drove out of the pool hall parking lot watching people that you described as your friends chase a car and then hearing what you thought was a shot; right?

A. Yes.

Q. My question is: was that the only time that night that any sort of chase happened?

A. Yes.

…

Q. From Stonecress Park to the taqueria, same questions. Did you see anything that looked like a chase?

A. No.

Q. Did you hear any gunshots?

A. No.

Q. From Stonecress to the taqueria, I don't know if I have that order correctly. When you left Stonecress Park, did you see anything that appeared to be a chase that you've described?

A. No.

Exhibit KK, Sipaseuth criminal trial testimony, P001709:15-23, P001710:15-24 (pp. 29, 30 of the Officers' Supplemental Compendium).

| | |
|---|---|
| 44.    Aaron's defense attorney made essentially the same point, arguing in closing: "In fact, I think you understand, and [the prosecutor] agrees with this, the only reason we're here today, the only reason we're here today | 44.    Objection: *See* General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: |

27

| | |
|---|---|
| is because of that diagram that Nina drew, and we'll talk a lot about that."<br>**Evidence**    Dkt. 73-2, Ex. 111 (Goldman Trial Closing Argument) pp. 1933:25 – 1934:3. | Undisputed that this was said by Aaron's attorney during closing argument. |
| 45.    In rebuttal, the prosecutor flatly acknowledged that *no one* saw Aaron's car in the parking lot but speculated that perhaps he was not noticed due to poor lighting and the number of cars in the parking lot.<br>**Evidence**    Dkt. 73-2, Ex. 112 (DDA Feldman Trial Rebuttal) pp. 2083:26 – 2084:7. | 45.    Objection:    *See*    General Objections, Objections **A, B, C, D.** Further objection is made to Plaintiffs' characterization of the prosecutor's rebuttal as "flatly acknowledged." Such a characterization is vague, confusing and argumentative and appears to be Plaintiffs' interpretation of an event. Finally,    Plaintiffs'    Exhibit    112 referenced as supporting this fact does not include pages 2083 or 2084. |
| 46.    The prosecution also acknowledged there was no cell phone data to establish that Aaron was at the pool hall. Rather, Aaron's cell phone placed him several miles away – a 10-15 minute drive – at approximately 2:00 a.m., with no evidence that he drove to Phi Hong during that time.<br>**Evidence**    Dkt. 73-2, Ex. 110, (DDA Feldman Trial Closing Argument), p. 1882:9 – 1882:16. | 46.    Objection:    *See*    General Objections, Objections **A, B, C, D.** Further objection is made to Plaintiffs' characterization of that the prosecutor "also    acknowledged."    Such    a characterization is vague, confusing and argumentative and appears to be Plaintiffs' interpretation of an event. Also, misrepresents the prosecutor's closing statement and takes it out of context. DDA Feldman argued:<br><br>These are the cell maps. You will have them so don't worry about squinting your eyes, but this one is Anthony Le's. You see him |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

here at 1:55 and 1:58 right in this area where that Bolsa and Bushard restaurant is. Then from 1:58, his next call event is at 2:17, smack in the middle of Phi Hong, the pool hall. As the detective testified, 10 to 15 minutes. So clearly, Mr. Anthony Le, Cynthia Sipaseuth made it from this location at 1:58 to the pool hall at 2:17.

Then we look at Aaron Nguyen's, and Aaron Nguyen, remember his story of, "we got lost and we never recovered." well, here he is. This is the area of that restaurant where Anthony Le was -- and you'll have these to compare -- at 1:58. There is the pool hall. So if he was here at 1:58, although we don't have a call to detail and show you, he certainly could make it there with 15 minutes to spare at 2:00 in the morning. (Plaintiffs' Dkt. 73-2, Ex. 110, 1882:1-16)

## Preliminary & Follow-up Investigation

| | |
|---|---|
| 47.    The shooting occurred at approximately 2:17 a.m. on 3/20/2011. **Evidence** Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 1 (agreeing with defense police practices expert that, if the time stamps on surveillance video are correct, the shooting appears to have occurred at 2:17 a.m.). | 47.    Objection:    *See*    General Objections, Objections **A, E**. This fact contradicts other evidence presented by Plaintiffs. *See* Dkt. 73-2, Ex. 201, Boan report, Dkt. 73-41, p. 516; and Plaintiffs' Dkt. 73-2, Ex. 301, Appellate opinion, Moore dissenting, Dkt. 73-41, p. 695) (See also the Officers' separately filed Objections to |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | Plaintiffs' Evidence, objection nos. 67, 129) |
|---|---|
| 48.    Within hours, detectives interviewed the survivors from the victims' silver, Lexus SUV, including Thai Nguyen, his brother, Anthony Nguyen, their cousins, Jimmy Nguyen and John Nguyen, and Roger James. **Evidence**    Dkt. 73-2, Ex. 85, (Reynolds report re Shooting (3-25-11)) p. 1, 6 – 8; Dkt. 73-2, Ex. 97 (Wasinger Report re Interviews of Victims John Nguyen and Son) p. 2, 5, 7, 10, 11 – 12. | 48.    Objection:    *See*    General Objections, Objections **A, C, D.** Without waiving the objections, the Officers    respond    as    follows: Undisputed. Plaintiffs' evidence shows that on the day of the shooting, March 20, 2011, detectives interviewed at least 18 witnesses/suspects, including the individuals that were in the victims' car. Dkt. 73-2, Ex. 68. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 24, 25) |
| 49.    Within a day, detectives identified the shooter, the shooter's driver, Puffy (Andrew Tran), and other passengers in the shooter's car. **Evidence**    Dkt. 73-2, Ex. 85, (Reynolds report re Shooting (3-25-11)) p. 5 – 8; Dkt. 73-2, Ex. 97 (Wasinger Report re Interviews of Victims John Nguyen and Son) p. 4 - 5, 10 - 11. | 49.    Objection:    *See*    General Objections, Objections **A, C, D.** Without waiving the objections, the Officers    respond    as    follows: Undisputed. Plaintiffs' evidence shows that on the day of the shooting, March 20, 2011, detectives interviewed at least 18 witnesses/suspects, including individuals that were in the shooter's car. Dkt. 73-2, Ex. 68. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 24, 25) |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| 50.    Based on this preliminary investigation, detectives understood that, near 2:00 a.m. on 3/20/11, the aggressor groups (TRG/Hellside) converged in the parking lot of the Phi Hong where the victim groups (POV, VT) were playing pool inside.<br>**Evidence**    Dkt. 73-2, Ex. 97 (Wasinger Report re Interviews of Victims John Nguyen and Son) p. 4, 9 - 12; Dkt. 73-2, Ex. 64 (Peter Vi Rpt.) pp. 14, 16. | 50.    Objection:    *See*    General Objections, Objections **A, C, D.** Also, vague as to "this preliminary investigation," "detectives" and "understood." Without waiving the objections, the Officers respond as follows: Undisputed that on the day of the shooting, March 20, 2011, detectives interviewed at least 18 witnesses/suspects,    including individuals that were in the victims' and shooter's cars, Dkt. 73-2, Ex. 68, and that Garden Grove police officers quickly determined that the shooting on March 20, 2011 was a gang-related shooting and that prior to the shooting some of the participants (victims and "aggressors") had met up in the parking lot of the Phi Hong poolhall. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objections nos. 17, 25) |
| 51.    Members of the victim group exited at closing and left the parking lot in a Lexus SUV.<br>**Evidence**    Dkt. 73-2, Ex. 97 (Wasinger Report re Interviews of Victims Jimmy Nguyen and Son Ton) pp. 4, 9. | 51.    Objection:    *See*    General Objections,    Objections **A.**    Also, misstates    the    evidence.    Plaintiffs' evidence shows that upon exiting the poolhall and before getting into their vehicle the victim group was verbally |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

31

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | confronted by members of the aggressor group, who began yelling at the victim group and members of the victim group yelled back. (Plaintiffs' Exhibit 97, pp. 2-5, 9.) Without waiving the objections, the Officers respond as follows: Undisputed that members of the victim group exited the poolhall at around closing time and that they eventually got into a car and left the Phi Hong parking lot. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 25) |
| 52.    They were pursued by a Lexus sedan driven by Puffy (Andrew Tran). **Evidence**    Dkt. 73-2, Ex. 85, (Reynolds report re Shooting (3-25-11)) p. 6. | 52.    Objection:    *See*    General Objections, Objections **A.** Also, vague as to "they." (See also Lord's objection to Plaintiffs' evidence, objection no. 12) Without waiving this objection, and assuming "they" refers to the "victim group," the Officers respond as follows: Undisputed that Puffy, among other cars/drivers, followed the victims' car after it left the parking lot. |
| 53.    Puffy approached the victim's SUV from the left lane of Westminster Ave. **Evidence**    Dkt. 73-2, Ex. 72 (GSU Search Warrant Affidavit), p. 12 ("Tran told Investigator Kaiser that as he drove west on Westminster Avenue away | 53.    Objection:    *See*    General Objections, Objections **A, E.** This is not a proper fact. The Officers do not know to which fact, of the many stated here, they should respond. Without |

1797161.4

| | |
|---|---|
| from the pool hall, he saw a dark colored SUV drive past him to his right. Tran explained that he was driving in the far left traffic lane and the dark colored SUV drove past him in the lane immediately to his right. As the dark colored SUV drove past him, Tran heard Ben Nguyen telling him to speed up and slow down in order to drive next to the dark colored SUV. Tran admitted he followed the directions of Ben Nguyen and pulled his car alongside the dark colored SUV"). | waiving the objections, the Officers respond as follows: Undisputed that Puffy approached the victims' SUV from the left lane of Westminster Ave. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 20) |
| 54.    As he pulled next to the driver's side, his front passenger (Ben) fired from the right-side window into the SUV, killing one person and hitting another.<br>**Evidence**    Dkt. 73-2, Ex. 72 (GSU Search Warrant Affidavit), p. 15 (Skylar Avila told police that as Tran approached the Lexus SUV westbound on Westminster Ave, the shooter, Ben, reached out of the right front passenger window and fired several gunshots at the black Lexus SUV). | 54.    Objection:    *See* General Objections, Objections **A, E.** Also, vague as to "he." Further, this is not a proper fact but are multiple facts. The Officers do not know to which fact, of the many stated here, they should respond. Without waiving the objections, the Officers respond as follows: Undisputed that as Puffy pulled next to the victims' SUV, the front seat passenger in his car fired a gun from the right side window, killing one person in the victims' car and wounding another. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 20) |
| 55.    The moment where Puffy's Lexus aligns with the victim's SUV was captured on video surveillance footage from a local business. | 55.    Objection:    *See* General Objections, Objections **A, C, E.** |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| **Evidence**    Ex 315 (surveillance still showing victim/shooter cars aligning); (Vaicaro Rpt. re Anthony Nguyen), p. 19 (identifying Puffy and AF car); Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 1 (agreeing with defense expert that, if time stamps are correct, the moment the shooting occurred is 2:17). | Further, this is not a proper fact but are multiple facts. The Officers do not know to which fact, of the many stated here, they should respond. Without waiving the objections, the Officers respond as follows: Undisputed that Puffy's car and the victim's car were captured on nearby video surveillance. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 129) |
| 56.    At least several cars from the aggressor group followed Puffy from the Phi Hong parking lot, westbound on Westminster Ave.<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Rpt.) p. 31 (Leesa said there were other vehicles behind hers), 49 (surveillance footage captured 13 vehicles) | 56.    Objection:    *See*    General Objections, Objections **A, E.** Further, this is not a proper fact but are multiple facts. The Officers do not know to which fact, of the several stated here, they should respond. Without waiving the objections, the Officers respond as follows: Undisputed that multiple cars from the "aggressor group" chased after and boxed in the victim's car. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 57.    On April 20, 2011, detectives executed search warrants at 14 locations for individuals believed to have been involved (warrants were obtained for 13 of the locations; no warrant was obtained for Aaron's | 57.    Objection:    *See*    General Objections, Objections **A, B, E.** Also, vague as to "detectives." Further, this is not a proper fact but are multiple |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

home).
**Evidence**    Dkt. 73-2, Ex. 70, Gildea 4/20/11 Elvis Doan Interview Report, p. 1; Dkt. 73-2, Ex. 72, GSU Search Warrant Affidavit, pp. 2 – 5 (listing locations up to Location 12, but listing the number "2" twice, as "2A" and "2B", and not including Aaron's residence); Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 1 (consensual search of Aaron Nguyen's address); Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Dep. Tr.), p. 59:1 – 59:21.

facts. The Officers do not know to which fact, of the many stated here, they should respond. Without waiving the objections, the Officers respond as follows:    Undisputed that Aaron's father consented to a search of his house in which Aaron was staying and that Aaron agreed voluntarily to go to the Garden Grove police station to be interviewed. (Plaintiffs' Exhibit 51, Lord 4/20/11 Supp. Report, pp. 1-3) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 20)

58.    Detective Mark Lord led a team of investigators to Aaron Nguyen's parents' home.
**Evidence**    Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Dep. Tr.), p. 59:1 – 59:21.

58.    Objection:    *See*    General Objections, Objections **A, E.** Also, misstates the evidence. The cited testimony does not discuss going to and searching Aaron's parents' home. Danielson testified as follows:

> Q. Do you have any memory of going to Aaron Nguyen's house on April 20th, 2011?
> A No, I do not.
> Q No memory of searching his house?
> A Correct, no memory.

Exhibit M, Danielson depo, 67:8-12, (p. 353 to the Officers Compendium). (See also the Officers' separately filed

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Objections to Plaintiffs' Evidence, objection no. 19) |
| 59.     Before contacting Aaron, they had GPS evidence for his phone. The cell phone ping closest in time to the shooting was 1:58 a.m. and placed him 3.6 miles away at approximately Bolsa and Bushard/Brookhurst.<br>**Evidence**     Dkt. 73-2, Ex. 113 (Maciel Trial Testimony) pp. 818:23 – 819:2; Dkt. 73-2, Ex. 106, Peter Vi Trial Testimony, p. 1692:7 – 1692:22; Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, pp. 1282:26 – 1283:2; Dkt. 73-2, Ex. 102, Bruce Linn Trial Testimony, p. 1598:15 – 1598:22. | 59.     Objection:     *See*     General Objections, Objections **A, C, D.** Also, vague as to who is meant by "they," and misstates the evidence. None of Plaintiffs' evidence states exactly what is contained in this alleged fact. For example, the evidence does not show that Lord had Aaron's cell information before contacting him. Also, while Linn testified that the last usage event for Aaron's cell phone was at 1:58 a.m., he did not testify as to the location of that usage event. As Linn explained, the cell phone map doesn't identify exactly where the phone was at a particular minute and second, but it tells you which tower and which sector the phone utilized in a particular usage event. |
| 60.     As Det. Lord testified at trial, he had cell phone location evidence before he interviewed Aaron and we aware that Aaron's phone placed him near the intersection of Bolsa and Bushard before the shooting.<br>**Evidence**     Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, pp. 1282:26 – 1283:2 | 60.     Objection:     *See*     General Objections, Objections **A, C.** Also, the cited evidence does not support the stated fact that Lord had "cell phone location evidence." Without waiving the objections, the Officers respond as follows: Undisputed that Lord testified |

36

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | at trial as follows:<br><br>Q. It seemed like you actually then found evidence of Mr. Nguyen being at that area of Bolsa and Bushard; correct?<br>A. I knew that prior to doing the interview.<br>(Plaintiffs' Dkt. 73-2, Ex. 101, Lord Trial Testimony, 1282:26–1283:2) |
| 61.     They knew Aaron was 26 years old, had no criminal history, no prior arrests, worked a fulltime M-F job, and likely no gang affiliation.<br>**Evidence**     Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 1. (Lord stating: You know, he's got a .. a job that he works, you know, Monday through Friday, eight to five (8 to 5). I mean he's not ... you know what I mean. He's .. he's one of the guys in the group that actually is working full time and he's been to college and he's ... you can tell that he's a little bit more squared away than the rest of the guys."); Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation, Part 1), p. 5:17 – 5:22; Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 105:15 – 105:19 (Danielson stating that Aaron was 26 years old and had never been arrested); Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 8) (identifying Danielson's voice); Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, pp. (Tr. Page 1283:25 – 1284:5). | 61.     Objection:     *See*     General Objections, Objections **A, C, D, E.** . Also, vague as to "they." Also, Plaintiffs' have miscited their evidence. Ex. 206 is not a report form David Notowitz. Further, this is not a proper fact but are multiple facts. The Officers do not know to which fact, of the many stated here, they should respond. Without waiving the objections, the Officers     respond     as     follows: Undisputed they knew Aaron was 26, had no criminal history, no prior arrests, worked a full time job and appeared to have no gang affiliations. |
| 62.     GGPD had search warrants for each of the other target locations.<br>**Evidence**     Dkt. 73-2, Ex. 72 (GSU | 62.     Objection:     *See*     General Objections, Objections **A, D.** Also, |

1797161.4

| | |
|---|---|
| Search Warrant Affidavit), pp. 2 – 4 (commanding searches of 13 locations, not including Aaron Nguyen's address). | vague as to "other target locations" and as to time. Without waiving the objections, the Officers respond as follows: Undisputed that Garden Grove police obtained multiple search warrants and also undisputed that on April 20, 2011, Garden Grove police conducted a consensual search of Aaron's parents' home and that Aaron voluntarily agreed to go to the Garden Grove police station to answer questions. (Plaintiffs' Exhibit 51, Lord 4/20/11 Supp. Report, pp. 1-3) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 20) |

**Video Surveillance**

| | |
|---|---|
| 63.    On March 25, 2011, GGPD Gang Suppression Detective Peter Vi analyzed video surveillance footage from a business located at the northwest corner of Seaboard/Westminster, including surveillance from a camera facing east, which "captured all of the westbound traffic on Westminster." **Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 49. | 63.    Objection: *See* General Objections, Objections **A, C, D**. Further, there is no page 49 attached to Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 64.    The video surveillance footage captured the entire caravan of cars chasing the victim's SUV on Westminster between 2:16:48 – 2:17:19 | 64.    Objection: *See* General Objections, Objections **A, C, D**. Further, there is no page 49 attached to |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

38

1797161.4

| | |
|---|---|
| on March 20, 2011<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 49 | Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 65.    The video surveillance footage between 2:16:48 – 2:17:19 captured 13 vehicles.<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 49. | 65.    Objection:    *See*    General Objections, Objections **A, C, D.** Further, there is no page 49 attached to Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 66.    Detective Peter Vi created still shots of the cars from the video surveillance footage.<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 49. | 66.    Objection:    *See*    General Objections, Objections **A, C, D.** Further, there is no page 49 attached to Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 67.    During initial interviews, completed by 3/25/2011, GGPD detectives were told that Aaron drove a ~2000 silver Honda Accord.<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 7, | 67.    Objection:    *See*    General Objections, Objections **A, C, D.** Further, there is no page 7 attached to Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to |

1797161.4

| | |
|---|---|
| | Plaintiffs' Evidence, objection no. 17) |
| 68.    During initial interviews, GGPD detectives learned that there was a 2005-2006 Silver Toyota Camry involved in the incident.<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 5, 6, 22 | 68.    Objection:    *See*    General Objections, Objections **A, C, D.** Further, there is no pages 5, 6, or 22 attached to Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 69.    The driver of the 2005-2006 "Silver Camry" was believed to be Kim Anna Nguyen.<br>**Evidence**    Dkt. 73-2, Ex. 64 (Peter Vi Supplemental report), p. 5, 22 | 69.    Objection:    *See*    General Objections, Objections **A, C, D.** Further, there is no pages 5 or 22 attached to Plaintiffs' Exhibit 64. Therefore, the Officers can neither admit nor deny this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 70.    Aaron's car was *not* among the cars chasing the victims' SUV on the video surveillance footage.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 45 – 46; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 8. | 70.    Objection:    *See*    General Objections, Objections **A, C, D.** This fact is not relevant to the issue raised in the Officers' motion. Further, Plaintiffs rely on inadmissible evidence to support this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 68, 129, 130) |
| 71.    Of the cars following the shooter's car, there is one light-colored car (not white); the features of this car | 71.    Objection:    *See*    General Objections, Objections **A, C, D.** This |

1797161.4

| | |
|---|---|
| are consistent with a 2005 Camry, not a 2001 Honda Accord.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 45 – 46; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 8; Dkt. 73-2, Ex. 206 (Report of Parris Ward re Car Comparison). | fact is not relevant to the issue raised in the Officers' motion. Further, Plaintiffs rely on inadmissible evidence to support this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 69, 129, 131, 164, 165) |
| 72.    Detectives later interviewed Kim Anna Nguyen that she drove Sally's vehicle – a tan/gray Toyota Camry – into the parking lot of the Phi Hong and westbound on Westminster Avenue on March 20, 2011 at the time of the shooting.<br>**Evidence**    Dkt. 73-2, Ex. 83 (Report re Kim Anna Nguyen) pp. 1 – 2. | 72.    Objection:    *See*    General Objections, Objections **A, C, D.** Also, vague as to "detectives" and "later." Without waiving the objections, the Officers respond as follows: Undisputed that on July 11, 2011, it appears that Kim Anna Nguyen was interviewed by Detective Vaicaro. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 23) |
| 73.    During deposition in this case, Sally Ngo testified that she owned a gold 2005 Silver Camry, which she drove that night to the parking lot of the Phi Hong and parked near the McDonalds.<br>**Evidence**    Dkt. 73-2, Ex. 410 (Sally Ngo Depo Transcript) p. 18:15 - 18:25. | 73.    Objection:    *See*    General Objections, Objections **A, C, D.** This fact is not relevant to the issue raised in the Officers' motion. Also, misstates the evidence. When asked about her car, Sally Ngo testified that she was "driving" a "gold Toyota Camry, 2004. (Plaintiffs' Exhibit 410, Ngo depo, 18:24-25) |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

| | |
|---|---|
| 74.    Nina and Aaron were sleeping when the officers arrived.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 97:23 – 98:1, 98:5 – 98:7. | 74.    Objection: *See* General Objections, Objections **A, C, D.** Also, vague as to "officers" and as to the alleged date this occurred. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 75.    By the morning of 4/20/2011, GGPD that Aaron Nguyen drove a gray Honda Accord.<br>**Evidence**    Dkt. 73-2, Ex. 58, Farley Report re Alexander Tran Arrest, p. 2, | 75.    Objection: *See* General Objections, Objections **A, C, D.** Also, this statement is not a complete sentence so it is not clear what the purported fact is asserting. It is also confusing because Plaintiffs other facts, e.g., fact no. 67 above and fact no. 76 below, assert that Aaron drove a "silver" Honda Accord. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 14) |
| 76.    GGPD officers confirmed on 4/20/2011 that Aaron Nguyen drove a 2001 silver Honda Accord, which they seized on 4/20/2011 at 12:30 p.m.<br>**Evidence**    Dkt. 73-2, Ex. 53, Impound Report for Aaron's Car, p. 1;<br>See also, Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:17:45 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 11; Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:32:00 – 13:32:06; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 41; | 76.    Objection: *See* General Objections, Objections **A, C, D.** This fact is neither material nor relevant. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II Feldman depo, 64:15-65:10, 105:3-9 (pp. 15-17 to the Officers' Supplemental Compendium). Without waiving the objections, the Officers |

| | |
|---|---|
| | respond as follows: Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 13) |
| 77.    Though GGPD seized Aaron's 2001 Silver Honda Accord on 4/20/2011, there is no photo of the exterior of his vehicle in the homicide file; no photo of the exterior of his car was preserved.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 45. | 77.    Objection:    *See*    General Objections, Objections **A, C, D**. Also, this statement assumes a fact in evidence, i.e., that a photo of the exterior of Aaron's car was taken. Without waiving the objections, the Officers respond as follows: Undisputed that there is no photo of the exterior of Aaron's Honda Accord in Garden Grove's homicide file. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 70) |

**Nina Interrogation Part 1**

**Nina's Timeline (8:11 – 8:42 a.m.)**

| | |
|---|---|
| 78.    Nina's first videotaped interview begins at 8:08 a.m.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation), 8:08 a.m.. | 78.    Assuming Plaintiffs are referring to Nina's interview at the Garden Grove police department on April 20, 2011, the Officers respond as follows: Undisputed. |
| 79.    The videotaped interview session takes place in a windowless room that is 6'x 8' in size.<br>**Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 15. | 79.    Objection:    *See*    General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: |

1797161.4

| | |
|---|---|
| | Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 2, 28) |
| 80.    Nina was questioned without a parent or other interested adult present. **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 21. | 80.    Objection:    *See*    General Objections, Objections **A, C, D**. Also, this    fact    is    based    on    a misrepresentation of the evidence. Nina was told she could call her mom if she wanted to but Nina did not call her mom or anyone else. Exhibit GG, Nina Nguyen depo, 136:14-18 (p. 610 of the Officers Compendium); and Exhibit V, transcript of interview #1 of Nina, p. 2 (p. 610 of the Officers Compendium). Further, when Nina was asked about calling her mother, she told Sgt. Martin that her mom was in Vietnam and a 20-year old cousin, who did not speak much English, was staying with her. Exhibit W, transcript of interview #2 of Nina, pp. 81-82 (pp. 752-753 of the Officers Compendium). (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 2, 29) |
| 81.    At the outset of the interview, Detective Lord advises Nina that she "came down voluntarily." Nina was not | 81.    Objection:    *See*    General Objections, Objections **A, C, D**. Also, |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| Mirandized.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:09 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 1. | argumentative as to "advises." Without waiving the objections, the Officers respond as follows: Undisputed that Nina voluntarily agreed to go to Garden Grove police station and answer questions and that she was not "Mirandized." |
| 82.    Detectives Lord and Danielson did not "Mirandize" Nina.<br>**Evidence**    See Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report); Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation). | 82.    Objection:    *See*    General Objections, Objections **A, C, D.** Without waiving the objections, the Officers respond as follows: Undisputed but misleading and irrelevant. The interview of Nina by Lord and Danielson was a consensual encounter and not a detention.<br><br>Q After having reviewed the two videos of the two conversations with Nina Nguyen, based on your training as a detective, would you characterize those two conversations as consensual encounters or detentions?<br>…<br>THE WITNESS: I would characterize them as consensual encounters.<br>…<br>Q And what is your basis for that characterization?<br>A Well, we told them both they didn't have to talk to us if they didn't want to, and we told them both that they were free to go, that they were there voluntarily. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | That's a consensual encounter. |
| | Q And there was no point during the course of those conversations that you felt like that consensual encounter became a detention? |
| | A Are you asking me what I remember or are you asking me what I interpret from watching the video? |
| | Q What you interpret from watching the video. |
| | A No. |
| | … |
| | Q And your basis for that characterization of those interviews as consensual encounters is because you told them at the inception -- or you told Nina at the inception of the first interview that she was free to leave? |
| | … |
| | THE WITNESS: It's my interpretation it was consensual because, A, we told them at the beginning, but 2 also we repeated it throughout the interview. |
| | Exhibit M, Danielson depo, 154:16-156:2 (pp. 357-359 of the Officers Compendium). |
| 83.    Detective Lord told her she "was not in trouble" and Aaron "was not in trouble." **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:11:29 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 4. | 83.    Assuming that "her" and "she" are referring to Nina, then this fact is undisputed. |
| 84.    Detective Lord advises Nina that she "need[s] to be honest. Because I | 84.    Undisputed. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| already know the truth;" (Nina responds: "If you know the truth, why are you guys asking me...us? **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:11 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 4-5. | |
| 85. At 8:11 a.m., Detective Lord inserts the first mention of any pool hall into the conversation: "Because I know you guys were there." … "And there's people…that already told us that you guys were in the car and you were over at the **pool hall**." **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:11:48 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 5. | 85. Objection: *See* General Objections, Objections **A, D**. Also, argumentative as to the word "inserts." Without waiving the objections, the Officers respond as follows: Undisputed. Undisputed that Lord asked Nina if she and Aaron had been at the poolhall prior to the subject shooting. |
| 86. Detective Lord advises Nina that the police already traced Aaron's and Nina's location from his cell phone. **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:12 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 5. | 86. Undisputed. |
| 87. He then showed Nina a "red book" purporting to contain cell phone data, claiming "this is all the proof. I'll show you certain things, dear. But this is the proof. [the proof that Aaron wants] is all in this red book, that's written." **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:12 a.m., Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 5. | 87. Objection: Vague as to "he." Without waiving the objections, and assuming "he" refers to Lord, the Officers respond as follows: Undisputed |

1797161.4

| | |
|---|---|
| 88.      The "red book" (depicted on the video) as described by Det. Paul Danielson as a briefing packet with cell phone maps, photos and other information generated during the preliminary investigation.<br>**Evidence**      Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Dep. Tr.), pp. 59:7 – 59:9, 59:12 – 59:13, 59:22 – 60:2, 60:11 – 60:15, 61:10 – 61:13; Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, p. 23:6 – 23:9 (the briefing packet included sets of photos of individuals from the suspect/aggressor group and the victim group. The briefing packets also included still shots from the video surveillance footage showing the caravan of cars on Westminster.). | 88.      Objection:  *See*  General Objections, Objections **A, C, D, E**. Also, this fact as phrased appears to be incomplete. As such, the Officers can neither admit nor deny the fact. |
| 89.      Detective Lord represented: "we know where he was. We know who he called. We know who called him…I mean I already know that you guys were over there. And what I'm asking you, is to just be honest about it. I mean, at this point you're not in any trouble."<br>**Evidence**      Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:12 a.m., Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 6. | 89.      Undisputed. |
| 90.      Shortly after, Lord asks if Nina knows what day he is talking about; Nina's response does not indicate that she is oriented to the same day as Lord (when asked if she knows what day he is talking about, she says "Because yeah").<br>**Evidence**      Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:14:30 a.m., Ex. 1(b) (Transcript of | 90.      Objection:  *See*  General Objections, Objections **A, B, C, D**. This statement is speculative as to whether or not Nina is "oriented to the same day as Lord." Prior to this question, Lord asked Nina if she knew why she was there and she responded, |

1797161.4

| | |
|---|---|
| Nina 4/20/11 Interrogation, Part 1), p. 8. | "It … it's about the shooting?" indicating that she was oriented to the same day as Lord. Exhibit V, transcript of Nina's interview #1, p. 4 (p. 612 of the Officers Compendium). |
| 91.    At 8:14 a.m., Detective Lord the notion of a pool hall *a second time*, asking: "Where were you guys at *before* you went to **the poolhall**." (8:14:47).<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:14:45 a.m., Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 8. | 91.    Objection:    *See*    General Objections, Objections **A, D.**. Also, this fact as phrased appears to be incomplete. Assuming Plaintiffs are trying to state that Detective Lord asked Nina where she and Aaron were before they went to the poolhall, and without waiving the objections, the Officers    respond    as    follows: Undisputed. |
| 92.    In responding, Nina appeared visibly confused and said "Sir, I have a really bad memory, do you know **what** pool hall? Two Thousand, right?"? (8:14:50 – 8:14:54 a.m.).<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:14:50 – 8:14:54 a.m.<br>*[this statement does not appear on the transcript prepared by the District Attorney's Office]* | 92.    Objection:    *See*    General Objections, Objections **A, B, D.** This statement is argumentative and is speculative as to whether or not Nina appears "visibly confused." Simply asking someone to clarify question does not mean a person is "visibly confused."    Without    waiving    the objections, the Officers respond as follows: Undisputed that Nina asked for clarification. |
| 93.    Lord responds: "at Harbor and Westminster," to which Nina asks – again - (8:14:58) "Is it, Two Thous..?" | 93.    Undisputed that Lord asked Nina about being at the poolhall located at |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:14:54 – 8:14:58 a.m. | Harbor and Westminster. |
| 94.    The fact that Nina *twice* references Two Thousand when asked about being at a poolhall should have been a significant red flag to detectives – from the outset of the interview - that to the extent she remembered being at a poolhall, she remembered being at the Two Thousand Club, not the Phi Hong, and that she was associating "pool hall" with a day different than the shooting day.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 15. | 94.    Objection:    *See*    General Objections, Objections **A, B, C, D**. This is not a statement of fact but is an unsupported    opinion    and    is argumentative.  This  opinion  is  not relevant  to  the  issue  raised  in  the motion.  (See  also  the  Officers' separately    filed    Objections    to Plaintiffs' Evidence, objection nos. 67, 71) |
| 95.    After saying Two Thousand twice, Nina says she does not remember where they were before "the poolhall."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:14:54 – 8:15:09 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 8. | 95.    Objection:    *See*    General Objections,  Objections  **A,  C,  D**. Without  waiving  this  objection,  the Officers    respond    as    follows: Undisputed that after being asked about the poolhall located at Westminster and Harbor Nina initially stated she did not remember  where  she  was  before  the poolhall, that she did not remember being  at  the  party  and  did  not remember Julie being in Aaron's car with  her.  Exhibit  V,  transcript  of Nina's interview #1, pp. 8-9 (pp. 616-617 of the Officers Compendium). |
| 96.    Nina tells Lord that, on the day of the shooting, they were waiting for "those guys" at a Vietnamese | 96.    Objection:    *See*    General Objections,  Objections  **A,  C,  D**. |

1797161.4

| | |
|---|---|
| restaurant.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:16:16 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 9. | Without waiving this objection, the Officers respond as follows: Undisputed but incomplete. |
| 97.    Nina explained that they were "chilling there" waiting for "someone's call to meet up" because they "really didn't have anything to do and [they] didn't want to go home yet." They were "sitting there" while they were "finding somewhere to go."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation), 8:17:25, 8:18:40 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 10-11, 12. | 97.    Objection: *See* General Objections, Objections **A, C, D.** Without waiving this objection, the Officers respond as follows: Undisputed but incomplete. |
| 98.    Nina told detectives that Aaron drove a silver Honda Accord, which was the car at his house.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:17:45 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 11. | 98.    Objection: *See* General Objections, Objections **A, C, D.** Without waiving this objection, the Officers respond as follows: Undisputed. |
| 99.    At 8:20 a.m., Lord inserts his assumption they were at a poolhall *a third time*, without clarifying which poolhall, despite Nina's previous reference to Two Thousand: "Look, Nina, I know you guys went to the poolhall. I know you guys were in the parking lot."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:19:46 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 12. | 99.    Objection: *See* General Objections, Objections **A, B, C, D.** Argumentative as to the word "inserts" and "his assumption." Without waiving the objections, the Officers respond as follows: Undisputed. Undisputed that Lord asked Nina if she and Aaron had been at the poolhall prior to the shooting. |
| 100.    Lord represented the police had video surveillance footage showing | 100.    Undisputed Lord told Nina this. |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

| | |
|---|---|
| Aaron's car in the parking lot of "the poolhall." **Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:20 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 12-13. | |
| 101.   When Detective Lord asks where they went after the Vietnamese restaurant, Nina said she thought they went to Aaron's friend's Tony's house. **Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:20:35 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 13. | 101.   Undisputed. |
| 102.   Nina acknowledged that they had gone to a party at Puffy's house earlier on the night of the shooting (before they were at the Vietnamese restaurant). **Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:21:00 – 8:21:45 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 14. | 102.   Undisputed that Nina eventually recalled going to a party at Puffy's house and told Lord this.. |
| 103.   When Lord asks again where they went after the Vietnamese restaurant, Nina says she thinks everyone split up and went home. **Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:21:00 – 8:21:45 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 14. | 103.   Undisputed that Nina said this in contradiction to her prior statement that they went to Tony's house. (See Plaintiffs' additional fact 101.). |
| 104.   In response to her answer, Detective Lord tells her that he "know[s]" that she didn't go home because she was seen in the car, with Aaron, at "the pool hall." **Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) | 104.   Undisputed. |

1797161.4

| | |
|---|---|
| 8:21:54 a.m.- 8:22:05; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 14 - 15. | |
| 105. Detective Lord raised his voice at Nina when he insisted that she didn't go home; she was seen in the car, with Aaron at the poolhall.<br><br>**Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:21:54 a.m.- 8:22:05; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 14 - 15. | 105. Objection: *See* General Objections, Objections **A, B, C, D.** Argumentative as to "insisted." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 106. When Nina denies being present at the shooting, Detective Danielson interjects: "Well, Aaron was there," *falsely* stating Aaron had already admitted to being present during the shooting.<br><br>**Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:22:35 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 15. ("Well, Aaron was there… He's already told us that. That was already discussed.") | 106. Objection: *See* General Objections, Objections **A, C, D.** This fact is irrelevant – Danielson is not a defendant in this action. Also, misstates the evidence – Nina did not deny being present at the shooting. At one point she says she didn't remember and another she said she didn't see it, but she did not unequivocally deny being present. Without waiving the objections, the Officers respond as follows: Undisputed.. |
| 107. The detectives insists that "lying about this could be a problem, so don't." "It is not a crime to be there" "but it is a crime to lie to us"<br><br>**Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:22:39 – 8:22:58 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 15. | 107. Objection: *See* General Objections, Objections **A, B, C, D.** Argumentative as to "insists" and vague as to "detectives." Without waiving the objections, the Officers respond as follows: Undisputed.. |
| 108. When Nina said she was trying to be honest, Detective Danielson said | 108. Objection: *See* General |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

53

1797161.4

| | |
|---|---|
| "no" "don't try, succeed" and "just tell us what *you really know. So we can get you home and get you done.*" **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:22:58 – 8:23 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 15-16.[1] | Objections, Objections **A, C, D.** This fact is irrelevant – Danielson is not a defendant in this action. Without waiving the objections, the Officers respond as follows: Undisputed.. |
| 109.    Detective Lord emphasizes "the quicker you tell me what happened, Nina, the quicker you can go home. Okay, so stop beating around the bush…the quicker you just tell the truth about what happened, the quicker we can get you out of here." **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:23 – 8:23:36 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 16. | 109. Objection:    *See*    General Objections, Objections **A, B, C, D.** Argumentative as to "emphasizes" as that is a characterization by Plaintiffs' counsel. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 110.    Detective Lord emphasized a third time: "And the quicker you guys just say the truth, we'll get you out of here." **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:23:37 – 8:23:44 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 17. | 110. Objection:    *See*    General Objections, Objections **A, B, C, D.** Argumentative as to "emphasized" as that is a characterization by Plaintiffs' counsel. Also, the cited evidence does not support counsel's argument that this was the "third time." Without waiving this objection, it is undisputed that Lord said this to Nina. |
| 111.    Detective Lord asked if Nina went to a park; Nina acknowledged that, yes, they did go to a park. **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) | 111.    Undisputed that it was only when Lord directly asked Nina if she had been to a park the night of the |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

---

[1] Transcript is incorrect.

| | |
|---|---|
| 8:24:18 – 8:24:50; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 18. | shooting that Nina admitted they had been to a park. |
| 112.    When the detectives asked what the guys were discussing at the park, Nina told the detectives that she felt "nervous" explaining "I don't want to tell you guys the wrong…tell you guys something and you don't believe me and you're blaming me for lying to you."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:26:48 – 8:27:03; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 19 - 20. | 112.   Objection:   *See*   General Objections, Objections **A, C, D.** Also, vague as to who is meant by "Detectives." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 113.    Detective Danielson admonished "We know what the truth sounds like…just tell us the truth."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:27:06 – 8:27:10; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 20. | 113.   Objection:   *See*   General Objections, Objections **A, B, C, D.** This fact is irrelevant – Danielson is not a defendant in this action. Also argumentative as to "admonished." This is simply Plaintiffs' descriptive and not a fact. Without waiving the objections, the Officers respond as follows:  Undisputed that Danielson said this. |
| 114.    Nina explained: they were waiting at the Vietnamese restaurant; "we were waiting for someone 'cause we were…going to follow them but we **lost** them so we just stopped…to the Vietnamese restaurant."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:28:05 – 8:28:30; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), | 114.   Undisputed. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| p. 20. | |
| 115.    Nina remembered that they were following someone – chasing after someone – she thinks they were following CJ; she said she didn't know why.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:28:31 – 8:29:05; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 21. | 115.    Undisputed that Nina initially said "she didn't know why" but she later said that when they left the park they were out looking for POV. Exhibit V, transcript of Nina's interview #1, pp. 25-26 (pp. 533-634 of the Officers Compendium). |
| 116.    Detectives admonish Nina again to "tell the truth" because she "is not the one in trouble."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:29:33 – 8:30:14; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 22. | 116.    Objection:    *See*    General Objections, Objections **A, B, C, D.** Also argumentative as to "admonish" and vague as to "detectives." This is simply Plaintiffs' descriptive and not a fact. Without waiving the objections, the    Officers    respond    as    follows: Undisputed that Nina was told to tell the truth. |
| 117.    Nina explains again that they **lost** the group: We were near the Mile Square Park. We were following them. I mean, we I think…we lost them and then me, Tony, Alex, we were waiting at the Vietnamese restaurant for their call. To call back."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:30:15 - 8:30:32; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 23. | 117.    Undisputed. |
| 118.    She believed they were waiting for CJ or Puffy to call.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); | 118.    Undisputed. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 8:30:32; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 23. | |
| 119.    After the Vietnamese restaurant, she thinks they went back to Tony's house.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:30:46 – 8:31:11; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 23. | 119. Objection:    *See*    General Objections, Objections **A, D.** Vague as to "she." Assuming Plaintiffs mean Nina, the Officers respond as follows: Undisputed that Nina again stated that they went to Tony's house sometime on the night of the shooting. |
| 120.    At 8:31 a.m., after Nina explained that they went to Tony's after the Vietnamese restaurant, Lord interjected his assumption – **a fourth time** – that they went to a pool hall: "Is this before or after you went to the pool hall…But when you went to the poolhall, who called you guys to go to the pool hall?"<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:31:11 – 8:31:29; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 23. | 120. Objection:    *See*    General Objections, Objections **A, B, D.** Also, argumentative re "interjected his assumption." This is not supported by the evidence cited. Also, the cited evidence does not support counsel's argument that this was the fourth time. Without waiving the objections, the Officers respond as follows: Undisputed that Lord continued to ask Nina about when she and Aaron went to the poolhall. |
| 121.    At no point prior in the conversation had Nina indicated they had gone to a poolhall on the night of the shooting.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation, 8:08 – 8:30 a.m., Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), pp. 1-23. | 121. Objection:    *See*    General Objections, Objections **A, C, D.** Also, this fact is not supported by the evidence cited. For example, the transcript of Nina's interview, part one, shows that Nina said she did not know where they were that night before the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | poolhall and also that they went to Tony's house "after" the pool[hall]. Exhibit V, transcript of interview #1 of Nina, pp. 8, 23 (pp. 616, 631 of the Officers Compendium). |
| 122.   When Lord asked about looking for enemies, she disclosed that they were like "Just follow us, we're have to do something." Like go find someone. And she knew they were looking for POV.<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:32:40 – 8:33:41; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 25-26 | 122.   Undisputed that Nina said that when they left the park they were out looking for POV. Exhibit V, transcript of interview #1 of Nina, pp. 25-26 (pp. 633-634 of the Officers Compendium). |
| 123.   Detective Lord circles back to where they went after the park; Nina explains again that they "**lost**" them."<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:33:50 – 8:34:24; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 26. | 123.   Objection:    *See*    General Objections, Objections Also, vague as to the meaning of "circles back." Undisputed that Nina continued to claim that they "lost" CJ. |
| 124.   When Detective Lord asks where the plan was made to look for enemies, Nina says *"I think it was at the park."*<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:34:45 – 8:34:55; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 27-28. | 124.   Undisputed. |
| 125.   Nina said she knew they "were looking for them to beat 'em up."<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:36:00; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 29 | 125.   Undisputed. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| 126. Nina told detectives she did not hear the shooting; she was unaware that a shooting had occurred until the next day.<br>**Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:36:05 – 8:36:22; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 29 | 126. Objection: *See* General Objections, Objections **A, D**. Also, vague as to who is meant by "Detectives" and if Plaintiffs are intending to reference Lord, Reynolds or Martin in this fact. Also, this "fact" contradicts other statements by Nina that she heard about the shooting a couple hours [after it happened]. Exhibit V, transcript of interview #1 of Nina, p. 53 (p. 661 of the Officers Compendium). |
| 127. Regarding a plan to attack enemies, what Nina heard was something along the lines of "go get 'em' or something."<br>Detectives told Nina that if she were only one not talking, she would look like the "hard core one."<br>**Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:38:50-8:39:02; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 31 | 127. Objection: *See* General Objections, Objections **A, C, D**. Vague as to "detectives" and may not be relevant if the fact is not referencing the Officers. Also, this contradicts Nina's other statements to Lord that "[t]hey were looking for them to beat 'em up." Exhibit V, transcript of interview #1 of Nina, p. 29 (p. 637 of the Officers Compendium). |
| 128. Lord asks again where they went after leaving the park: Nina explains that Aaron's car was following the group and **lost** them near a Walgreen's near Miles Square Park shortly before they "passed by the restaurant," where they stopped and waited; after the restaurant; they went to Tony's house. This is the **fourth** | 128. Objection: *See* General Objections, Objections **A, D, E**. This is an improper fact that contains multiple statements and contains counsel's argument. Also, the cited evidence does not support counsel's argument |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| **time she told detectives they lost the group and went to a restaurant.**<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:39:02 – 8:39:50; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 31-32. | that this is the fourth time Nina said they lost the group and went to a restaurant. Without waiving the objections, the Officers respond as follows: Undisputed that sometimes when Nina was asked where she and Aaron went after the park, she said they went to a restaurant. |
| 129.    Detectives told her they didn't believe her: "Okay. This is where I have a hard time believing that."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:39:50; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 32. | 129.    Objection: Vague as to who is meant by "Detectives." May be irrelevant to the extent it was not the Officers who is referenced in this asserted fact. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told by different detectives at different times that they did not believe her. |
| 130.    Nina asked: "Can you tell me the truth and see if I recall?"<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:39:52; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 32. | 130.    Undisputed. |
| 131.    Lord insisted: "you need to tell me the truth. **Because I know for a fact that you and Aaron were there.**"<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:39:54 – 8:40:03; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 32. | 129.    Objection:    *See*    General Objections, Objections **A, D.** Also argumentative as to "insisted." Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told by different detectives at different times that they did not believe |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | | |
|---|---|---|
| 1 2 | | her and that Lord said he knew she and Aaron were there.. |
| 3 4 5 6 7 | 132.    Nina says again she did not hear a shooting. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:40:03 – 8:40:09; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 32. | 132.    Undisputed. |
| 8 9 10 11 12 13 14 15 16 17 18 | 133.    Detectives insist that she must have gone somewhere after the Vietnamese restaurant; Nina recalls that they went to a donut shop. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:40:10 – 8:40:40; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 32-33. | 133.  Objection:    *See*  General Objections, Objections **A, D.** Also argumentative as to "insisted" and vague as to who is meant by "Detectives." Without waiving the objections, the Officers respond as follows:  Undisputed that Nina at various times said they went to Tony's house after the restaurant and also said they may have gone to M&M's, a donut shop. |
| 19 20 21 22 23 24 25 26 27 28 | 134.    Detectives represent they have video surveillance footage (showing them at the billiard hall at Harbor and Westminster). **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:40:40 – 8:41:09; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 33. | 134.  Objection:    *See*  General Objections, Objections **A, D.** Also vague as to who is meant by "Detectives." Also, misstates the cited evidence.  Without waiving the objections, the Officers respond as follows:  Undisputed that someone made the following statement to Nina during her interview: "You … you're saying you didn't go to the billiard hall |

WOODRUFF & SMART ATTORNEYS AT LAW COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | at Harbor and Westminster? Because you know we have surveillance video?" Exhibit V, transcript of interview #1 of Nina, p. 33 (p. 641 of the Officers Compendium). |
| 135.    Detectives represent they have cell phone location evidence (showing them at the billiard hall at Harbor and Westminster).<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:40:40 – 8:41:09; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 33. | 135.  Objection:  *See*  General Objections, Objections **A, D.** Also, vague as to who is meant by "Detectives." Also, misstates the cited evidence.  Without waiving the objections, the Officers respond as follows:  Undisputed that someone made the following statement to Nina during her interview: "And we have cell phone things. And your phone and his phone. So I'm going to ask you straight out, were you .at the billiard hall at Brook ... at Harbor and Westminster?" To which Nina replied: "Yes we were" Exhibit V, transcript of interview #1 of Nina, p. 33 (p. 641 of the Officers Compendium). |
| 136.    She acknowledges that they were at the Vietnamese restaurant; acknowledges they received a call; denies they went to the park after the restaurant and offers that she thinks they went to M&M's (donut shop) after the restaurant.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); | 136:  Objection: Vague as to who is meant by "she" but assuming the reference is to Nina, then it is undisputed that she said this and that she also mentioned going to M&M's sometime after the shooting. |

1797161.4

| | |
|---|---|
| 8:41:09 – 8:41:28; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 33-34. | |
| 137.    Nina insists she is trying to remember and describe everything that happened "I don't want to give you guys a hard time, I'm trying to remember everything clearly, whatever happened." <br> **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:41:28-8:41:36; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 34. | 137.    Objection:    *See*    General Objections, Objections **A, D**. Also argumentative    as    to    "insists." Undisputed that Nina said this during her interview. |
| 138.    Detectives Danielson and Lord accuse her of lying: "It really doesn't take that long to remember things. It takes time to make up a story…You don't need to not tell us the truth, alright? … And I don't understand why you are trying to make up a story." <br> **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:41:36 – 8:42:03; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 34 | 138.    Objection:    *See*    General Objections,    Objections    **A,    D.** Argumentative    as    to    the    word "accused." Also, this misrepresents what    was    said    to    Nina    and    is misleading    because    of    the    use    of ellipses    and    it    combines    different statements    made    by    different persons. For example, first, one detective said: <br><br> It really doesn't take that long to remember things. It takes time to make up a story. If you've got to think about the story you want to make up. It doesn't take time to remember, you just think about it and you remember. <br><br> Then another detective said: <br><br> You don't need it. You don't need to not tell us the truth, alright?" |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | And then Nina was told:<br><br>I already told you that you're not in trouble, okay? And I [don't] understand why you try and make up a story. You're not getting anybody-in trouble, they already know who everybody was in there.<br><br>Without waiving the objections, the Officers respond as follows: Undisputed that the above statements were made to Nina during her interview. Exhibit V, transcript of interview #1 of Nina, p. 34 (p. 642 of the Officers Compendium). |
| 139.    Detectives insist that she's "not in trouble."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:42:00; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 34 | 139.    Objection: Argumentative as to the word "insist" and vague as to "detectives. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told that she was not in trouble. |
| **TwoThousand** | |
| 140.    Detectives insist: "So *tell me what* happened when you went over to the pool hall. '**Cause I know you guys went over there**. **I know you did**." <br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:42:07 – 8:42:18; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 34.<br><br>[note, this portion of the transcript is incorrect]. | 140.    Objection: Argumentative as to the word "insist" and vague as to "detectives. Without waiving the objections, the Officers respond as follows: Undisputed that during her interviews Nina was asked about being at the poolhall. |

1797161.4

| | |
|---|---|
| 141.    In response, Nina describes being "at the poolhall" when Puffy's car was parked next to them.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:42:18; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 34. | 141.    Undisputed that Nina described being at the poolhall at the same time as Puffy, Skyler and Leesa (spelled "Lisa" in the transcription. Exhibit V, transcript of interview #1 of Nina, pp. 35-36 (pp. 643-644 of the Officers Compendium). |
| 142.    This was the first mention of any maneuver to "block cars –came from Danielson. (Danielson says he knew the cars "were blocked in the guys that left" so they could only go out one way).<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:42:34; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 1-35. | 142.    Objection:    *See*    General Objections, Objections **A, C, D.** Vague as to "this." Also, this fact is misleading and misrepresents the evidence. Prior to Danielson mentioning blocking cars, Nina told the officers that they were trying to "trap" a car. She said, "Oh yeah, we were supposed to trap someone, I think." and "It looked like they were trapping him…" Exhibit V, transcript of interview #1 of Nina, pp. 33, 34 (pp. 641, 642 of the Officers Compendium). |
| 143.    When Lord admonishes Nina to be honest, she says "I'm trying to 'cause…I'm not lying to you guys. I could take a lie detector test…"<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:43:10; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 35. | 143.    Objection:    *See*    General Objections, Objections **A, D.** Also, argumentative as to the word "admonishes." This is an improper characterization. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told she needed to be honest. |

1797161.4

| | |
|---|---|
| 144.    Detective Danielson points out that Nina was inconsistent in that she had first said she had not been at the pool hall but then said they were at the pool hall; Nina attempted to clarify that she had a memory of being at a pool hall but she was struggling to remember when they were there.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:43:13 – 8:43:32; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 35. | 144.  Objection:    *See*    General Objections, Objections **A, C, D.** Without waiving the objections, the Officers    respond    as    follows: Undisputed that this was just one of many inconsistencies with what Nina told the officers. |
| 145.    Nina described people in Puffy's car that contradicted what detectives knew about the night of the shooting: she said Skylar was in Puffy's car (front passenger seat); two girls were in Puffy's car, including a girl named "Lisa." Detectives were aware that, on the night of the shooting, there was only one girl in Puffy's car (not two) and Puffy was not in the front passenger seat.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 31; Dkt. 73-2, Ex. 61 (Skyler Avila Arrest Report) p. 4 (Benjamin Nguyen was in Puffy's front passenger seat and the only woman in Puffy's car was Skylar's aunt [Leesa Huynh]); Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:43:13 – 8:44:02; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 35-36. | 145.  Objection:    *See*    General Objections, Objections **A, C, D, E.** Without waiving the objections, the Officers    respond    as    follows: Undisputed. (But see also the Officers' separately    filed    Objections    to Plaintiffs' Evidence, objection nos. 16, 67, 72) |
| 146.    Nina also included details about being at "the poolhall" that contradicted her earlier description of who was in the car on the night of the shooting, indicating she was talking about ***two different days***: Nina said that, on the night they were at a pool | 146.  Objection:    *See*    General Objections, Objections **A, B, C, D, E.** Everything after "indicating she" in this fact constitutes improper argument and speculation by Plaintiffs' counsel. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

hall, both Alex *and* his brother Dice were in Aaron's car; Julie was not in the car; the inclusion of "Dice" among the passengers in Aaron's car, and exclusion of "Julie," contradicted what detectives knew about the night of the shooting, and what Nina had previously disclosed about the occupants of Aaron's car on the night of the shooting.

**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:44:18 – 8:45:11; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 37-38; Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), pp. 15 – 16 (It was apparent that she was describing a day other than the shooting, since she had earlier indicated that, on the day of the shooting, Julie was in the car; she had not mentioned Dice).

This also is an improper conclusion and is not a proper fact. Without waiving the objections, the Officers respond as follows: Undisputed that Nina at times answered questions about and described being at the Phi Hong poolhall. Also, when Nina was asked by Lord if she was at the poolhall on the same day Puffy was there (which was the night of the shooting) she said she was and also that Skyler and Leesa (misspelled Lisa in the transcript) were with Puffy, which they were with Puffy on the night of the shooting. Exhibit V, transcript of interview #1 of Nina, pp. 35-36 (pp. 643-644 of the Officers Compendium); see also Exhibit y, transcript of Leesa interview, pp. 4, 5, 7-8, 14, 39, 89-90, 102, 113, 116-117, 120, 122, 202 (pp. 814, 815, 817-818, 849, 899-900, 912, 923, 926-927, 930, 934, 1012 of the Officers Compendium) (Leesa confirms she is in the parking lot with Sky and Puffy and Aaron and Nina also are there with Julie and Alex). (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67,

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | 72, 73) |
| 147.   At 8:45 a.m., Nina attempted to clarify that she was mixing up memories of the day she was at the pool hall and the day of the shooting: "I think…I think I'm getting these…these things all mixed up. The things that I remember…I think I'm getting that day mixed up with another…the day of the shooting."<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:45:25 – 8:45:58; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 38. | 147. Objection:     *See*     General Objections, Objections **A, B, D.** Also, argumentative and speculation regarding "attempted to clarify." Without waiving the objections, the Officers respond as follows: Undisputed that Nina made the statements attributed to her in this fact; however, the argument about the meaning of these statements is improper. |
| 148.   Nina attempts to clarify whether Lord is asking about the time "at the restaurant, right" indicating that her memory of being at the Vietnamese restaurant was not the same day as her memory of being at a pool hall.<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:46:00 – 8:46:11; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 39. | 148. Objection:     *See*     General Objections, Objections **A, B, D.** Also, argumentative and speculation regarding "attempts to clarify" and "indicating that her memory of being at the Vietnamese restaurant was not the same day as her memory of being at a pool hall." Plaintiffs improperly insert speculation, argument and supposition into this fact Without waiving the objections, the Officers respond as follows: Undisputed that Nina made the statements attributed to her in this fact; however, the argument about the meaning of these statements is improper. |

1797161.4

| | |
|---|---|
| 149.   When Detective Lord makes clear he is interested in her memory of "the pool hall" – on the day they met up with Puffy and parked next to him – Nina states that they met up at Two Thousand (2000) pool hall "with Ty."; Nina confirms again that "Ty" (i.e. Thai) was there, as well as his cousins, and that they went to someone's house afterwards so that Roger[s] could talk to Alex.<br>**Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:46:11 – 8:46:33, 8:47:01 – 8:47:28; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 39, 40. | 149.  Objection:   *See*   General Objections, Objections **A, B, C, D, E.** Plaintiffs' insertion of argument into this fact is improper. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said Ty was at the poolhall and that they went to someone's house afterwards, which she also said they did on the night after the shooting. ("I believe we went to TONY'S house.") Exhibit V, transcript of interview #1 of Nina, p. 32 (p. 640 of the Officers Compendium). |
| 150.   Nina's reference to Two Thousand Club was a clear indication that she was talking about a day different from the shooting day.<br>**Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), pp. 15 – 16; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 3. | 150.  Objection:   *See*   General Objections, Objections **A, B, C, D, E.** This is not a fact but is Plaintiffs' argument, which is improper. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 74, 129, 132) |
| 151.   Nina's reference to "Ty" (a.k.a. Thai and Jason) someone known to be in the victims' SUV, and interviewed by police on the day of the shooting, presented a red flag to detectives that she and Aaron had spent time with Ty close in time to the shooting.<br>**Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 44; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 3. | 151.  Objection:   *See*   General Objections, Objections **A, B, C, D, E.** This is not a fact but is Plaintiffs' argument, which is improper. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 75, 129) |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | | |
|---|---|---|
| 1 | 152.  Detective Lord told Nina he didn't believe her: "And I think that you're trying to tell us stuff that you think…I mean, this sudden loss of memory, it's just like my partner said 'If you remember stuff, you just know it and you just say it. And instead, you're sitting here trying to make stuff up so we don't find out who people are." | 152.  Undisputed that Lord said this to Nina. |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | **Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:46:33 –8:47:08; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 39. | |
| 9 | | |
| 10 | | |
| 11 | Acc Lying | |
| 12 | 153.  Nina's reference to a conversation between Roger and Alex confirmed that she was talking about a different day. (Roger, like Thai, was in the victim's SUV – there is no plausible scenario in which they met up with Roger after the shooting to have a conversation, especially given that Roger James had been shot in the neck). | 153.  Objection:     *See*     General Objections, Objections **A, B, C, D, E.** This is not a fact but is Plaintiffs' argument, which is improper. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 75, 129, 135) |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | **Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 44; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 3. | |
| 20 | | |
| 21 | | |
| 22 | 154.  Detectives knew that Roger James and Thai Nguyen were both occupants of the victim's SUV; Nina's reference to spending time with Thai and Roger potentially indicated that they were not rivals and was information that any reasonable detective would have explored. | 154.  Objection:     *See*     General Objections, Objections **A, B, C, D, E.** This is not a fact but is Plaintiffs' argument, which is improper. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 76, 129, 136) |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | **Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 44; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) | |
| 28 | | |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| p. 11. | |
| 155.   Nina indicated that Julie was not in the car when they were at "the pool hall", further indicating to detectives that she remembered being at a poolhall on a day different than the shooting day (because she previously said that Julie was in their car on the day of the shooting). **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), pp. 15 – 16. Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:47:28 – 8:48:15; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 40-41. | 155.   Objection:    *See*    General Objections, Objections **A, B, C, D, E.** This is not a fact but is Plaintiffs' argument, which is improper. Without waiving the objections, the Officers respond as follows: Undisputed that at one point Nina said Julie was not in the car when they were at the poolhall. The remainder of this fact is improper argument and speculation. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 77) |
| 156.   According to Nina, after Puffy drove away, Aaron and Alex were drinking in the car; their car stayed in the same spot the entire time they were there; Aaron, Alex and Nina were playing pool inside of the pool hall. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:49:06 – 8:49:54; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 41-42. | 156.   Undisputed that this is one of different versions that Nina told. |
| 157.   Detectives knew that Nina's description of playing pool inside of the pool hall was entirely inconsistent with descriptions of what transpired at the Phi Hong immediately before the shooting. **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 16. (As detectives knew before the interview, the shooting was precipitated by gang members | 157.   Objection:    See    General Objections, Objections **A, B, C, D, E**. Also, vague as to "detectives" and argumentative as to "knew" and "entirely inconsistent." This statement makes    unsupported    conclusions Further, this is not a proper fact but is |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

71

1797161.4

confronting their rivals in the parking lot of the Phi Hong (the rivals – i.e. the victim group – were playing pool inside of the Phi Hong). At no point were the two groups playing pool together inside of the poolhall; indeed, no one from the shooters' group was playing pool inside of the poolhall.)

argument and is based on an inadmissible expert opinion. Also, the undisputed evidence shows that while some of the things that Nina said were inconsistent with what the Officers knew, a lot of things Nina said were consistent. Finally, the evidence cited does not support this purported fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 78)

158.  When Nina mentioned playing pool inside the pool hall, Detectives accused Nina of changing her story and lying, even though she had explained that she was referring being at a pool hall on a different day than the shooting, and being at Two Thousand (not Phi Hong).

**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:49:54 – 8:51:08; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 42-43. ("Because you already told us two different stories. You keep changing your story. You tell us something and then you change your story….Which of the five versions of the events do you want me to believe?..."You tell us one story, then five minutes later, you tell us something different. Then you tell us something different again. And then, what's the truth?.. Which of the three stories is the truth? … When you get three different stories which one are we

158.  Objection:  See  General Objections, Objections **A, B, C, D, E.** Also, argumentative as to "accused" and vague as to "detectives." This is an improper fact and includes multiple facts. Also, the statements quoted in Plaintiffs' evidence are deceptive and misleading. These statements were not made by one individual and Plaintiffs have omitted some of the statements through use of ellipses. In fact, when Lord asked Nina, "When we get three (3) different stories, which one are we supposed to believe, NINA?" Nina replied, "Well, you guys wouldn't know which one to believe." Nina also acknowledged she understood why

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| supposed to believe?" "And it makes me feel like you're not telling the truth.") | they weren't believing what she was saying:<br><br>LORD: Exactly. And it makes me feel like you're not telling me the truth.<br>NGUYEN: Okay<br>LORD: Do you understand that?<br>NGUYEN: Yes, I understand that.<br>LORD: Does it make sense?<br>NGUYEN: Yes, it does.<br><br>Exhibit V, transcript of interview #1 of Nina, p. 43 (p. 651 of the Officers Compendium).<br><br>Based on the above, and without waiving the objections, the Officers respond as follows: Undisputed that Lord told Nina she was telling different stories, which Nina acknowledged she was doing, and that he was having trouble believing her. |
| 159.   When Nina disclosed that they may have gone to a park after going to someone's house, Detective Danielson *interjected* that they went "to the billiard hall" after the park.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:51:55 – 8:52:00; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 44. | 159. Objection:   See   General Objections, Objections **A, B, C, D**. Also, misstates the evidence cited and is argumentative regarding the word "interjected." Without waiving the objections, the Officers respond as follows: Undisputed that Detective Danielson said, "Went to the billiard hall," but it appears from the cited evidence that Detective Danielson was |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | attempting to jog Nina's memory. |
| 160.   In response to Detective Danielson's reference to the "billiard hall," Nina told him she was referring to Two Thousand Club, near Korea Plaza.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:52:00 – 8:52:26; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 44. | 160.  Objection:       See       General Objections, Objections **A, D**, Without waiving the objections, the Officers respond as follows: Undisputed. . |
| 161.   Detective Danielson accused her of feigning loss of memory regarding the night of the shooting.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:52:26 – 8:52:44; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 44 ("do people get killed around you all of the time..it seems to me like it would be a pretty significant thing to occur in a person's life. You would remember where you were when it happened.") | 161.  Objection:       See       General Objections, Objections **A, B, D, E**. Also, argumentative as to the use of the word "accused." This is Plaintiffs' interpretation and argument about what Danielson said to Nina. Without waiving the objections, the Officers respond as follows: Undisputed that Detective Danielson asked Nina if people getting killed around her are such a common event in her life that she forgets where she was when it happened, and Nina responded that "they get shot at." |
| 162.   When Detective Danielson re-directed the conversation back to Nina's whereabouts at the time of the shooting - Nina said all she remembered was following CJ and losing him, consistent with her previous statements.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); | 162.  Objection:       See       General Objections, Objections **A, B, C, D**. Also, argumentative as to the phrase "consistent with her previous statements." Without waiving the objections, the Officers respond as |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

| | |
|---|---|
| 8:52:44 – 8:52:55; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 44 | follows: Undisputed that the following discussion occurred between Nina and Detective Danielson:<br><br>NGUYEN: Uh huh. All I remember is, we were following CJ, and then I...that's it, we just turned a\*\*\*\* and we lost him.<br>UNKNOWN: You followed him out onto Westminster Avenue, when they came out onto the street?<br>NGUYEN: Yeh .. yes.<br><br>Exhibit V, transcript of interview #1 of Nina, pp. 44-45 (pp. 652-653 of the Officers Compendium). |
| 163.   Detective Danielson interjects "you followed him out onto Westminster?" This was the fourth time detectives interjected "Westminster" into the conversation; at no previous point had Nina said the word "Westminster."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:52:54; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 44-45; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 8, 33 (twice), 44. | 163. Objection:    See General Objections, Objections **A, B, C, D**. Also, vague as to "detectives" and argumentative as to the words "interjects" and "interjected." Also, argumentative regarding the claim that this was the "fourth" time a detective said "Westminster." For example, at one point Nina asked where the poolhall was located: "Do you know what pool hall?" and Lord responded to her questions, saying: "Yeah, the Harbor ... Harbor and Westminster." Exhibit V, transcript of interview #1 of Nina, p. 8 (p. 616 of the Officers Compendium). Also, the claim that "at |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

no previous point had Nina said the word "Westminster" is irrelevant, misleading and argumentative. Wp Without waiving the objections, the Officers respond as follows: Undisputed that the following discussion occurred between Nina and Detective Danielson:

> NGUYEN: Uh huh. All I remember is, we were following CJ, and then I...that's it, we just turned a**** and we lost him.
> UNKNOWN: You followed him out onto Westminster Avenue, when they came out onto the street?
> NGUYEN: Yeh .. yes.

Exhibit V, transcript of interview #1 of Nina, pp. 44-45 (pp. 652-653 of the Officers Compendium).

**Photo of Phi Hong**

164.    At 8:53 a.m., detectives showed Nina a photo of the Phi Hong sign and asked: "Is that the pool hall?". In viewing the photos, she stated **twice** – clearly – that she wasn't there.

**Evidence:**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:53:00- 8:53:25; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 45 ("Are you serious…I don't remember being there…Are you sure I was in the car? I don't remember being there.")

[note, transcript is incorrect. It states

164.    Objection:    See General Objections, Objections **A, B, D, E**. Plaintiffs have improperly included multiple statements in this fact. Also, argumentative as to the word "clearly" and misstates the evidence. At no time did Nina clearly state that she wasn't at there. Instead, as Plaintiffs' cited evidence shows, Nina equivocally stated she *did not remember* being

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| "I'm sure I was in the car" instead of "Are you sure I was in the car." See 8:53:20] | there. Without waiving the objections, the Officers respond as follows: Undisputed Nina at times during the interviewed stated she did not remember being at Phi Hong. |
| 165.    Attached to Det. Lord's report is the photo he showed to Nina. (GG01289). The words on the "Phi Hong Billiards" sign are clearly visible. **Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 23 (GG1289). | 165.  Objection:   See   General Objections, Objections **A, D**. Also, argumentative as to the word "clearly." Without waiving the objections, the Officers    respond    as    follows: Undisputed. |
| 166.    The moment when Detective Lord showed Nina this photo was the first time the words "Phi Hong" entered the conversation during the interview. **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 35 (the first mention of Phi Hong occurred only after Detective Lord showed her a photograph of the Phi Hong exterior (and a sign with the words "Phi Hong Billiards"). | 166.  Objection:   See   General Objections, Objections **A, D, E**. This fact is based on inadmissible evidence. (See also the Officers' separately filed Objections    to    Plaintiffs'    Evidence, objection nos. 27, 30) |
| 167.    Visibly confused by the photo of the Phi Hong, Nina asks "can I just stop talking for a sec?" **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:53:37; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 45 | 167.  Objection:   See   General Objections, Objections **A, B, D**. Also, argumentative    as    to    the    phrase "[v]isibly confused by the photo." This is    solely    Plaintiffs'    interpretation, which interpretation does not appear to be    supported    by    the    context    of    the interview.    Without    waiving    the objections,    the    Officers    respond    as |

| | |
|---|---|
| | follows: Undisputed that Nina asks "can I just stop talking for a sec?" |
| 168.    Lord redirects the conversation back to the day they are in the parking lot of the pool hall; Nina confirms that Puffy left after saying he had to do something; Nina confirms that she was referring to Two Thousand Club (2000), *not* Phi Hong.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:54:11 – 8:55:05; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 46-47 ("no, we weren't at the Phi Hong, we were at Two Thousand"). | 168.    Objection:    See    General Objections, Objections **A, B, D**. Also, argumentative    as    to    the    word "confirms."    Without    waiving    the objections, the Officers respond as follows: Undisputed. |
| 169.    In response to Lord's question, Nina denies that they went to Phi Hong after Two Thousand (2000); emphasizing that she did not remember going to Phi Hong<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:55:05 – 8:55:18; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 47 | 169.    Objection:    See    General Objections, Objections **A, B, D**. Also, argumentative    as    to    the    word "emphasizing" and also misconstrues the evidence – Nina did not deny going to Phi Hong after 2000 but stated she didn't remember going to Phi Hong. Without waiving the objections, the Officers    respond    as    follows: Undisputed that Nina said she did not remember going to Phi Hong. |
| 170.    Nina and the detectives discuss that Two Thousand is located on Garden Grove Boulevard, about 5 miles from the Phi Hong.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:55:18 – 8:55:36; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 47 | 170.    Undisputed. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| 171.   The detectives tell Nina they have cell records proving where she was; they show her the records so she will start "telling the truth."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:55:36 – 8:55:51; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 47 | 171. Objection: The explanation included in this fact '' "so she will start 'telling the truth'" – is counsel's improper conclusion/argument. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told they have cell records and that Lord asked, "Maybe you'll start telling the truth?" |
| 172.   Detective Lord shows Nina maps with cell phone tower information, telling her: "So are you going to tell me what's up or not? We already know. I already told you."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:55:51; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 48. | 172.   Undisputed. |
| 173.   After looking at the cell phone maps, Nina denies she was there.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:55:51 – 8:55:36; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 48 ("Can I please tell you why I know I wasn't in that car?"); Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 293:5 – 293:14 (By, "can I tell you how I know I wasn't in that car?" Nina meant "Because I don't remember being at the Phi Hong" and it was the "fifth time" she said she didn't remember being there). | 173. Objection: See General Objections, Objections **A, D, E**. Plaintiffs' cited evidence does not support the fact stated. The interview evidence does not show that Nina denied being there. And Nina's after the fact evidence adduced at her deposition that she "meant" she didn't remember being at Phi Hong is (1) irrelevant and (2) not a denial. |
| 174.   Lord represents he knows "Aaron was at the pool hall," and both Lord and Danielson emphasize "The Phi Hong, not the Two Thousand." | 174. Objection: See General Objections, Objections **A, B, D**. |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:57:05 – 8:57:14; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 49.<br><br>[note, transcript is incorrect] | Argumentative as to "represents" and "emphasize." These are Plaintiffs' descriptives not supported by the evidence. Without waiving the objections, the Officers respond as follows: Undisputed that this was said to Nina. |
| 175.    Detective Danielson represents (again) that Aaron's cell phone records show him being present at the Phi Hong at the time of the shooting: "he was there and you were with him."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:57:14 – 8:57:15; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 49. | 175. Objection:    See    General Objections, Objections **A, B, D**. Also, argumentative as to "represents." This is Plaintiffs' improper descriptive. Without waiving the objections, the Officers    respond    as    follows: Undisputed that this was said to Nina. |
| 176.    Nina explains again that she and Aaron were at the Vietnamese restaurant when the shooting happened; detectives tell Nina she is "wrong" about being at the Vietnamese restaurant.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:57:15 – 8:57:31; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 49. | 176.    See    General    Objections, Objections **A, D**. Also misstates the cited evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina asked, "I thought that at the time of the shooting we were at the ... at the Vietnamese restaurant?" |
| 177.    When Nina says she did remember anyone getting shot, and heard no gunshots, detectives lecture her about lying, leaving out some truth, partial honesty, and selective bad memory.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:57:31 – 8:59:18; Ex. 1(b) (Transcript | 177. Objection:    See    General Objections, Objections **A, B, D**. Also, vague    as    to    "detectives"    and argumentative as to "lecture." Without waiving the objections, the Officers respond    as    follows:    Undisputed    that |

| | | |
|---|---|---|
| | of Nina 4/20/11 Interrogation, Part 1), p. 49 – 51 | Nina was told she needed to tell the whole truth, not just part of the truth. |
| | 178.   Lord insists again: "I know you guys were in the parking lot of the Phi Hong."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:59:18 – 8:59:26; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51<br>[transcript is incorrect] | 178.   Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative as to "insists." This is Plaintiffs' unsupported descriptive. Without waiving the objections, the Officers respond as follows: Undisputed that Lord said: "But I know you guys were in the parking lot of *****." [Note: As explained in the "Legend" located on page 1 of the transcription, the transcript uses asterisk's to denote the transcriber didn't understand what was said but on the video, it appears that Lord said "Phi Hong."] Exhibit V, transcript of interview #1 of Nina, pp. 1, 51 (pp. 609, 659 of the Officers Compendium). |
| | 179.   In response to the lecture about lying, Nina tells them again, that she remembers being at Two Thousand, but does **not** remember being at Phi Hong.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:59:18 – 8:59:36; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51.<br><br>[transcript is incorrect] | 179.   Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative as to "[i]n response to the lecture about lying" and misconstrues the cited evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina stated, "I'm trying to remember if we were there. I |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | don't I don't recall. I thought we were at Two Thousand (2,000), I didn't remember us being at [Phi Hong.]" Exhibit V, transcript of interview #1 of Nina, p. 51 (p. 659 of the Officers Compendium). |
| 180.   Nina offers that perhaps she was sleeping because she "had no clue" they were at the Phi Hong. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:59:36 – 8:59:54; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51. | 180.   Undisputed. |
| 181.   Detective Lord redirected the conversation to Roger (on the day Nina had been at a poolhall with Thai); Nina clarified that the conversation between Roger and Alex was the day before the shooting, or sometime before the shooting, but not the day of the shooting. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:00 – 9:00:32; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 52. | 181.   Objection:    *See*    General Objections, Objections **A, D**. Also, misstates the cited evidence, which contains no reference to Thai and seems to imply that Lord brought up Roger, which he did not. Without waiving the objections, the Officers respond as follows: Unable to admit or deny because Plaintiffs' fact is not supported by the cited evidence. |
| 182.   When Detectives ask again whether Nina was at the Phi Hong, and who went inside the Phi Hong, she told them again that she never knew they were there. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:03:21 – 9:04:04; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55. | 182.   Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "detectives." Without waiving the objections, the Officers respond as follows: Undisputed that Nina, after first answering questions |

1797161.4

| | |
|---|---|
| | about being at Phi Hong, again stated she did not remember being there. Exhibit V, transcript of interview #1 of Nina, pp. 55-56 (pp. 663-664 of the Officers Compendium). |
| 183.   Nina told detectives, again, that when she described Puffy's car at the pool hall, she was referring to a different day at Two Thousand Club, not the day of the shooting and not Phi Hong.<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:04:04 – 9:04:19; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55. | 183.   Objection:     *See*     General Objections, Objections **A, D**. Also, vague as to "detectives." Without waiving this objection, Lord responds as follows: Undisputed. |
| 184.   When detectives claim they don't understand, Nina tries to explain again that she does not remember being at the Phi Hong, she only remembers being at Two Thousand.<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:04:19 – 9:04:43; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55-56. | 184.   Objection:     *See*     General Objections, Objections **A, B. D**. Also, vague as to "detectives" and argumentative as to "claim." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 185.   Nina confirms that – on the night of the shooting – she and Aaron went to Puffy's party, went to the park, knew that CJ's group was going to beat up POV, followed CJ leaving the park, lost CJ, and sat in the parking lot of a Vietnamese restaurant.<br>**Evidence**     Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:04:43 – 9:05:38; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 56-57. | 185.   Objection:     *See*     General Objections, Objections **A, D**. Also, vague as to "detectives." Without waiving the objections, the Officers respond as follows: Undisputed that Nina eventually recalled these listed events occurring but then said, "I forgot where we went after that." |

1797161.4

| | |
|---|---|
| | Exhibit V, transcript of interview #1 of Nina, p. 57 (p. 665 of the Officers Compendium). |
| 186.   Detectives claim again that they have cell phone evidence establishing that Aaron was at the Phi Hong. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:05:38 – 9:05:46; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 57 | 186. Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "detectives." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 187.   Detectives accuse her of concealing information and being dishonest. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:06:10 – 9:06:42; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 57-58 ("It's a decision on your part to conceal information from us, It's not "you don't remember: …I really don't want [you] to use the word honestly in that sentence because that's not what you're being….I'd rather you tell me [you don't want to get Aaron in trouble] than beat around the bush.") | 187. *See*    General Objections, Objections **A, B, D**. Also, vague as to "detectives" and argumentative as to "accuse."    Without    waiving    the objections, the Officers respond as follows: Undisputed. |
| 188.   Detective Lord insisted "the quicker you tell me…then you can get out of here." **Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:06:42 – 9:06:51; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 58. | 188. Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative    as    to    Plaintiffs' descriptive "insisted." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 189.   Detectives continue to accuse Nina of "making up stories," and having "a selective bad memory," and lying. **Evidence**    Dkt. 73-2, Ex. 1(a) (Video | 189. Objection:    *See*    General Objections, Objections **A, B, D**. Also, vague    as    to    "detectives"    and |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| #1 of Nina Nguyen Interrogation); 9:06:42 – 9:07:55; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 58-59. | argumentative as to Plaintiffs' descriptive "continue to accuse." Without waiving the objections, the Officers respond as follows: Undisputed that when Nina said she had a bad memory, another detective (not Lord) added "selective" bad memory and then states his belief Nina is making up stories. Exhibit V, transcript of interview #1 of Nina, p. 58 (p. 666 of the Officers Compendium). |
| 190.   Detectives said: For "stop it, stop this game, stop this "I don't know, I can't remember, I've got a bad memory." Just tell us what happened for God sakes. You can tell us the truth and I'll be done asking you questions in like five minutes."<br>**Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:07:55 – 9:08:10; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59. | 190.   Objection:   *See*   General Objections, Objections **A, D**. Also, vague as to "detectives." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 191.   Detective Danielson acknowledges that Nina admitted to nothing during the first interview: "Instead we've wasted at least an hour and we don't know any more now then when we started this interview."<br>**Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:08:10 - 9:08:29; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59. | 191.   Objection:   *See*   General Objections, Objections **A, B, C, D**. The statement that anyone "acknowledge[d] that Nina admitted nothing during the first interview" is not supported by the evidence and is improper argument inserted into what is supposed to be a statement of facts. Without waiving the objections, the Officers respond as |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | | |
|---|---|---|
| | | follows: Undisputed that Danielson said to Nina, "You can tell us the truth, and I'll be done asking you questions in five (5) minutes. … But instead we've wasted at least an hour and we don't know anymore now than when we started this interview." |
| | 192. Lord asks Nina again whether she was at the Phi Hong: Nina responds: "I don't remember being at Phi Hong."<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:08:29 – 9:08:32; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59. | 192. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| | 193.    Nina insists she is telling the truth<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:08:32 – 9:09:00; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59-60. | 193. Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative as to "insists." Without waiving the objections, the Officers respond as follows: Undisputed. |
| | 194.    Nina understood these statements to mean that the detectives did not believe her.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 254:8 – 254:24. | 194. Objection:    *See*    General Objections, Objections **A, C, D**. Also, vague as to "these statements" and is not supported by the cited evidence. At 254:8-254:24, Nina testifies that during the first interview detectives told her over a dozen times they didn't believe her or that she was lying. Nina does not testify about what she "understood these statements to mean." |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| 195.    During the first period of video-taped questioning (8:07 – 9:11), Nina consistently maintained that she had no memory of being at the Phi Hong Billiard hall on the night of the shooting and did not remember being there.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:07 - 9:11. | 195.  Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative as to "consistently maintained" and not supported by the evidence presented. This evidence shows that at times Nina said she was at Phi Hong and at other times said she did not remember being at Phi Hong. She never unequivocally denied being at Phi Hong. Nina also said she knew they didn't go home after the restaurant. In fact, the appellate opinion states:<br><br>Nina's statements as to whether they were at the pool hall that night were consistently inconsistent; at times she said they were not there that night and other times she said they were or that she had confused that pool hall with another one when she said they were there.<br><br>Exhibit B, p. 25 (p. 71 of the Officers Compendium). |
| 196.    Between 8:52 and 9:11 a.m., Nina stated, at least ten times, that she had no memory of being at the Phi Hong on the night of the shooting. (all omitted from Lord's report)<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:52 - 9:11.<br><br>1 & 2) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:53:00- | 196.  Objection:    *See*    General Objections, Objections **A, B, D, E**. Also, this statement improperly includes multiple parts and multiple alleged facts. These facts ignore other evidence that shows that although Nina said several times she did not |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

8:53:25; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 45 ("Are you serious…I don't remember being there…Are you sure I was in the car? I don't remember being there.")

3) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 47 (denying that they went to Phi Hong after Two Thousand and stating that she does not remember going to Phi Hong).

4) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 48 ("Can I please tell you why I know I wasn't in that car?); Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 293:5 – 293:14 (By, "can I tell you how I know I wasn't in that car?" Nina meant "Because I don't remember being at the Phi Hong").

5) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51 (Nina says she remembers being at the Two Thousand, not the Phi Hong).

6) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51 (Nina says she "had no clue" they were at the Phi Hong).

7) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (when Lord asks who went into the Phi Hong, Nina says she "never knew we were there.").

8) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (explaining that when she referenced Puffy's car being in the parking lot, she was talking about the day at the Two Thousand [not Phi Hong])

9) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55-56

remember if she was at Phi Hong. The evidence also shows, however, that at times Nina said she was at Phi Hong In fact, the appellate opinion states:

> Nina's statements as to whether they were at the pool hall that night were consistently inconsistent; at times she said they were not there that night and other times she said they were or that she had confused that pool hall with another one when she said they were there.

Exhibit B, p. 25 (p. 71 of the Officers Compendium).

1797161.4

| | | |
|---|---|---|
| 1<br>2<br>3 | (explaining she doesn't remember being at the Phi Hong, she only remembers being at the Two Thousand) | |
| 4<br>5<br>6 | 10) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59 ("I don't remember being at Phi Hong.") | |
| 7 | None appear in Lord's report, Ex. 51 (Lord 4/20/11 Supp. Report). | |
| 8<br>9<br>10<br>11 | 197.   The videotape of Nina's first videorecorded interrogation shows Nina leaving the interview room at 9:11 a.m.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 9:11. | 197.   Undisputed. |

| Alexander Tran & Aaron Interrogation | | |
|---|---|---|
| 13<br>14<br>15<br>16<br>17<br>18 | 198.   Alex Tran was interviewed by Farley between 8:06 a.m. and 9:10 a.m.<br>**Evidence**    Dkt. 73-2, Ex. 59 (Report re Alexander Tran Interrogation) pp. 1, 3. | 198.  Objection: Vague as to date of the interview. Undisputed that Alex Tran was interviewed on April 20, 2011. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 15) |
| 19<br>20<br>21<br>22 | 199.   Alex was interrogated again between 2:22 p.m. and 2:58 p.m.<br>**Evidence**    Dkt. 73-2, Ex. 68 (Chart of Interview Tapes), p. 2; Dkt. 73-2, Ex. 59 (Report re Alexander Tran Interrogation) p. 5. | 199. Undisputed. (But see also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 15) |
| 23<br>24<br>25<br>26<br>27<br>28 | 200.   Consistent with Alex and Nina, Alex explained that they got lost and ended up in the parking lot of a Vietnamese restaurant at the time of the shooting, not at the Phi Hong.<br>**Evidence**    Dkt. 73-2, Ex. 59 (Report re Alexander Tran Interrogation) pp. 5 – 6; Dkt. 73-2, Ex. 9(b) (Alexander | 200.  Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative    as    to    Plaintiffs' descriptive    "consistent    with    Alex [sic?] and Nina." Also, ignores the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| Tran Post Miranda Interrogation, PM) p. 4, 5-6, 8, 10, 11, 12, 17, 14, 17 | evidence that Alexander Tran admitted to driving up and down Westminster with Aaron on the night of the shooting. (Plaintiffs' Exhibit 59, pp. 2-3) Further ignores the evidence that Alex Tran, who was criminally charged for the murder and who was originally being tried as a co-Defendant with Aaron Nguyen, pleaded guilty to one charge stemming from the events occurring on March 20, 2011. Exhibit LL, criminal docket relating to Alex Tran, pp. 1, 2, 13, 31, 34 and 35 (pp. 31-33, 38-40 to the Officers Supplemental Compendium); (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 15) Without waiving the objections, the Officers respond as follows: Undisputed Alex initially denied being at Phi Hong. |
| 201.   He disclosed that he went inside the restaurant to use the restroom. **Evidence**    Dkt. 73-2, Ex. 9(b) (Alexander Tran Post Miranda Interrogation, PM) p. 4, 5-6. | 201. Objection:  *See*    General Objections, Objections **A, D**. Also, Plaintiffs' Exhibit 9(b) goes from page 3 to page 7 to page 18, so it appears that the pages referenced by Plaintiffs in this fact are not part of Exhibit 9(b). |
| 202.   Alex urged detectives to go to | 202. Objection:  *See*    General |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| see if there was video of him at the restaurant.<br>**Evidence**    Dkt. 73-2, Ex. 9(b) (Alexander Tran Post Miranda Interrogation, PM) p. 4, 5-6. | Objections, Objections **A, B, D**. Also, argumentative as to "urged." Further, Plaintiffs' Exhibit 9(b) goes from page 3 to page 7 to page 18, so it appears that the pages referenced by Plaintiffs in this fact are not part of Exhibit 9(b). |
| 203.    Aaron's videotaped interrogation begins at 9:27 a.m.<br>**Evidence**    Dkt. 73-2, Ex. 3(a) (Video of Aaron Nguyen Interrogation). | 203.    Undisputed that Aaron's 4/20/11 interview began at around 9:27 a.m.. |
| 204.    Aaron said they went to Puffy's party and afterwards followed some cars around looking for another party.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 10:7 – 11:1. | 204.    Undisputed. |
| 205.    Aaron initially denied going to the park, but then admitted to hanging out at Stonecress Park with several people from the party.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 17:21 – 17:22, 23:18 – 24:20. | 205.    Undisputed. |
| 206.    Aaron estimated there were 5-7 cars at the park from the party.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 17:6-17:8. | 206.    Undisputed. |
| 207.    Aaron told officers he got lost; after he got lost, he parked in front of the Thanh My restaurant, located at Bolsa and Bushard, where he remained for a long time waiting for others.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation, Part 1), p. 8:14-8:17, 10:13 – 11;1, 12:17-12:18, 28:1-28:4, | 207.    Undisputed. |

1797161.4

| | |
|---|---|
| 30:8 – 31:2, 39:12 – 39:15. | |
| 208.   Aaron said – three times - they were waiting at the restaurant for a long time.<br>**Evidence**     Ex. Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), 10:13 – 11:1, 30:12 – 30:14, 31:1 – 31:2. | 208.   Undisputed   Aaron   said   they were at a restaurant. |
| 209.   Detective Lord acknowledged during the interview that the cell phone evidence corroborated that Aaron was near Bolsa/Bushard.<br>**Evidence**     Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p.; 30:8 – 31:2. | 209.   Undisputed. |
| 210.   Aaron encouraged officers to look for camera footage outside of the restaurant.<br>**Evidence**     Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 10:7 – 11:1; 30:11 – 30:15. | 210.   Objection:     *See*     General Objections, Objections **A, D**. The cited evidence does not support that Aaron "encouraged" officers to do anything; he simply said, "I'm sure they have a camera that you guys can check or something" (Plaintiffs' Exhibit 3(b), 30:11-14) |
| 211.   Aaron explained that he was not a gang member and was not involved in gang business.<br>**Evidence**     Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 3:9-3:11, 16:2-16:3, 49:22 – 50:3. | 211.   Undisputed. |
| 212.   Aaron explained that gang members were secretive and did not share information with him and Nina because they were not in their gang.<br>**Evidence**     Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 49:22 – 50:3. | 212.   Undisputed. |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| 213.    Aaron said he would never back up gang members.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 9:23 – 10:3. | 213.    Undisputed. |
| 214.    Aaron told detectives that the gang members "only talk to [their] little clique about what they're gonna do" and they would not tell him.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 50:11 – 50:19. | 214.    Undisputed. |
| 215.    Aaron repeatedly denied being at Phi Hong; he never admitted to being there.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 13:9 – 13:11, 15:4 – 15:5, 17:1 – 17:2, 24:25, 33:17- 33:24, 39:12 – 39:13. | 215.    Undisputed. |
| 216.    Detectives acknowledge that Aaron has a job and "has his shit together."<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 20:6 – 20:9. | 216.    Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "detectives." Without waiving the objections, the Officers respond as follows: Undisputed that a detective told Aaron, "you kind of got your shit together." |
| 217.    At the end of Aaron's interview, Detective Lord asked who called Aaron and told him about the shooting. Aaron said he texted Thai's girlfriend; she said she was at the police station (at the time of the text exchange); one person had died and two were in the hospital. Aaron identified her as Jenny and told Lord he was sure Jenny was interviewed.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) | 217.    Objection:    *See*    General Objections, Objections **A, D, E**. Plaintiffs have improperly included multiple facts in this statement. Also, vague as to "end of Aaron's interview" and argumentative as to "critical to the investigation." Plaintiffs have not |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| (Transcript of Aaron 4/20/11 Interrogation), p. 47:8 – 48:6; Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 31 (omission of Jenny Do reference was critical to the investigation because of the relationship to the victims). | attached a copy of the entire interview but only select portions of it. Without waiving the objections, the Officers respond as follows: Undisputed that at one point in his interview Aaron said this. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 79) |
| 218.   Lord acknowledged that Jenny had been at the police station.<br>**Evidence**    Dkt. 73-2, Ex. 3(b) (Transcript of Aaron 4/20/11 Interrogation), p. 47:8 – 48:6; see also, Dkt. 73-2, Ex. 98, p. 2 (3/29/2011 M. Reynolds report re interview of Jenny Do). | 218.    Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative as to the descriptive "acknowledged." Without waiving the objections, the Officers respond as follows:  Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 26) |
| **Hallway Conversation** | |
| 219.   According to Detective Lord's report, at one point, he exited the interview, had a conversation with Detectives Loffler, Vaicaro and Gildea – then resumed the interview with Aaron, while Sergeant Martin spoke to Nina Nguyen.<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report) | 219.    Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "the interview." Plaintiffs do not identify what interview is referenced in this fact. Further, Plaintiffs' assumption that the conversation amongst Lord, Loffler, Vaicaro and Gildea occurred at the same time that Martin spoke with Nina is not supported by any evidence. Without waiving the objections, the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Officers respond as follows: Undisputed that at some point during Lord's interview of Aaron, he exited the interview room and had a conversation with Detectives Loffler, Vaicaro and Gildea. The remainder of Plaintiffs' purported fact is unsupported by the citation to any evidence. |
| 220.  The video of Aaron's interrogation shows Detective Lord (and Aaron) continuously present in the interview room until 10:23 a.m. **Evidence**   Dkt. 73-2, Ex. 3(a) (Video of Aaron Nguyen interrogation). | 220.   Undisputed that Aaron and Lord are in an interview room together when the time on the video reads 10:23. |
| 221.  This demonstrates that Detective Lord could not have left the room to have a conversation with Vaicaro, Loffler and Gildea until after 10:23; **Evidence**   Dkt. 73-2, Ex. 3(a) (Video of Aaron Nguyen interrogation). | 221.  Objection:   *See*   General Objections, Objections **A, B, C, D**. Also, vague as to "this." Plaintiffs do not identify what "this" references. Further, this does not appear to be a fact but is Plaintiffs' argument or assumption. |
| 222.  The video/report also demonstrates that the resumed interview of Aaron (after the conversation) was **not** video-taped (including the portion, referenced above, where Lord apparently "confronted Aaron" with information learned from other officers). **Evidence**   Dkt. 73-2, Ex. 3(a) (Video of Aaron Nguyen interrogation). | 222.  Objection:   *See*   General Objections, Objections **A, B, D**. Also, vague as to "the video/report" and as to the entire portion in parentheses, i.e., "(including the portion, referenced above, where Lord apparently 'confronted Aaron' with information learned from other officers.)." Because |

1797161.4

| | |
|---|---|
| | Plaintiffs' purported fact is incomprehensible, the Officers are unable to admit or deny this fact. |
| 223.  On 4/20/11, Officer Vaicaro conducted an interview of another suspect, Anthony Nguyen (not to be confused with Thai's brother, Anthony Nguyen).<br>**Evidence**    Dkt. 73-2, Ex. 69 (Vaicaro 4/20/11 Rpt.), p. 2-3. | 223. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 18) |
| 224.  The audio recording file stamp (label) indicates that it began at 9:54 a.m.<br>**Evidence**    Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview). | 224. Objection:    *See*    General Objections, Objections **A, D**. Also vague as to "the audio recording." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 225.  Starting at 59 minutes into the recording, Detective Vaicaro leaves the interview with Anthony Nguyen and begins a meeting with other law enforcement officers.<br>**Evidence**    Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 58:30 – 59:18. | 225. Objection:    *See*    General Objections, Objections **A, D**. Also vague as to "the recording." Without waiving the objections, the Officers respond as follows: Undisputed that at some point during his interview of Anthony Nguyen, Detective Vaicaro left the interview room. |
| 226.  Assuming the time stamp on the file label of 9:54 a.m. is correct, the meeting with other officers begins at approximately 10:53 a.m.<br>**Evidence**    Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded | 226. Objection:    *See*    General Objections, Objections **A, B, C, D**. Also vague as to "the time stamp on the file label." This is an improper fact |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| interview), 58:30 – 59:18. | but is Plaintiffs' speculation or theory. Because the Officers are unable to determine if Plaintiffs' assumption is correct or incorrect, they are unable to admit or deny this fact as phrased. |
| 227.  At approximately **10:53 a.m**. (one hour after the interview begins), Officer Vaicaro exits the interview room and has a conversation with various officers, including Sgt. Martin, Mark Lord, and Paul Danielson. **Evidence**   Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 58:30 – 59:18 (unidentified voices); Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 1-14); Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Deposition Tr.), pp. 103:16 -104:7, 107:7 – 108:23, 112:9 – 113:11 (identifying the voices of Vince Vaicaro, Mark Lord, Mike Martin and himself); Battles 10/20/23 Decl., Ex. 412 (Peter Vi Dep. Tr.), pp. 224:23 – 227:12. | 227.  Objection:    *See*    General Objections, Objections **A, B, D, E**. Also, vague as to "the interview." Also, Plaintiffs' cited evidence seems to be incorrect. Plaintiffs' Exhibit 206 is not a report of Notowitz. Further, it cannot be determined from this evidence when the meeting occurred for which Danielson identified some voices and if it is the same meeting addressed in Vi's deposition. Because the Officers are unable to determine if Plaintiffs' assumption is correct or incorrect regarding who is talking to whom and when, they are unable to admit or deny this fact as phrased. |
| 228.  Also present for the conversation is Deputy District Attorney Daniel Feldman. **Evidence**    Battles 10/20/23 Decl., Ex. 400 (Feldman Deposition Tr.) pp. 57:21 – 58:22, 61:7 – 61:12 (identifying his voice during the hallway conversation). | 228.  Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "the conversation." Without waiving this objection, the Officers respond as follows: Undisputed that DDA Feldman was present in the Garden Grove police |

1797161.4

| | |
|---|---|
| | department on 4/20/11 while the interviews of various witnesses/suspects were occurring and that he identified his voice as participating in conversations with various detectives on April 20, 2011. |
| 229.    During this conversation, at approximately 10:56 a.m., Sgt. Martin asks if anything puts Aaron at the Phi Hong besides his phone? Lord answers "no." Martin asks: "Well, why would we go to his house, then?"<br>**Evidence**    Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 103:09 – 103:16; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 5). | 229. Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "this conversation." Also, Plaintiffs' cited evidence seems to be incorrect. Plaintiffs' Exhibit 206 is not a report of Notowitz. Also, misstates the cited evidence. Someone asks if anything puts "him" at the Phi Hong but it does not appear that anyone asks if anything puts "Aaron" at the Phi Hong. Also, there is no evidence submitted that identifies who is speaking and what each individual said. |
| 230.    During this conversation, Det. Lord reports that Aaron told Sgt. Martin that Aaron said he was at the park, he was following CJ, lost CJ, pulled over at a Vietnamese restaurant for an hour and waited for a call.<br>**Evidence**    Dkt. 73-2 Ex. 7(a) (Anthony Nguyen audio-recorded interview), 103:17 – 103:59; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 5-6). | 230. Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "this conversation." Also, Plaintiffs' cited evidence seems to be incorrect. Plaintiffs' Exhibit 206 is not a report of Notowitz. Also, misstates the cited evidence. There is no evidence submitted that identifies who |

1797161.4

| | | |
|---|---|---|
| 1 2 | | is speaking and what each individual said. |
| 3 4 5 6 7 8 9 10 11 12 | 231.  DDA Feldman asks "Did he say who he was with at the Vietnamese restaurant? Lord responds: His girlfriend, Tony, Alex, and a girl named Julie.<br>**Evidence**   Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 103:59 – 104:23; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 6-7). | 231.  Objection:   *See*   General Objections, Objections **A, D**. Also, Plaintiffs' cited evidence seems to be incorrect. Plaintiffs' Exhibit 206 is not a report of Notowitz. Also, misstates the cited evidence. While it is undisputed that these or similar words were spoken, there is no evidence presented with this fact as to who said them or to whom they were said. |
| 13 14 15 16 17 18 19 20 21 22 | 232.  Lord reports that he talked to Aaron's girlfriend and "She said the same thing."<br>**Evidence**   Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 103:59 – 104:23; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 6-7). | 232.  Objection:   *See*   General Objections, Objections **A, D**. Also, Plaintiffs' cited evidence seems to be incorrect. Plaintiffs' Exhibit 206 is not a report of Notowitz. Also, misstates the cited evidence. While it is undisputed that these or similar words were spoken, there is no evidence presented with this fact as to who said them or to whom they were said. |
| 23 24 25 26 27 28 | 233.   At this point in the hallway conversation, detectives and DDA Feldman strategize ways to elicit an admission from Aaron. DA Feldman asks "Have you hit him up and said that his girlfriend puts him there, that we cracked her, that she just came clean because she doesn't want to go down for a murder…." [Lord | 233.  Objection:   *See*   General Objections, Objections **A, D, E**. Also, vague as to "at this point," "the hallway conversation" and "detectives." Also, Plaintiffs' cited evidence seems to be incorrect. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| apparently responds in affirmative] and Feldman responds: "And he was stone faced, stuck to it? Shiiit." Lord tells them again: "He's like, I don't know what they were talking about." DDA Feldman suggests they put Aaron and Nina in the same room. **Evidence**   Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 104:23 – 105:15; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 7). | Plaintiffs' Exhibit 206 is not a report of Notowitz. Also, misstates the cited evidence, which does not support the claim that the "detectives" and DDA Feldman "strategize[d] ways to get an admission from Aaron." Finally, this is an improper facts as it includes several facts, most of which are not supported by the cited evidence. Without waiving the objections, the Officers respond as follows:    Undisputed    that    DDA Feldman was present at the Garden Grove police department on April 20, 2011 during the time both Aaron and Nina were being interviewed, that he was informed of the information the police were learning during these interviews and that he suggested putting Aaron and Nina in a room together.  Exhibit N, Feldman depo, 43:2-44:13,  44:18-20,  47:4-14,  74:4-75:15  (pp. 374-378 to the Officers Compendium). |
| 234.   During the conversation, Danielson interjects that Aaron is 26 years old and has never been arrested. They discuss how detectives have already searched Aaron's parents' house. They decide to get a warrant for his car. | 234. Objection:   *See*   General Objections, Objections **A, D, E.** Also, vague as to "the conversation" and "detectives." Also, Plaintiffs' cited evidence   seems   to   be   incorrect. |

| | |
|---|---|
| **Evidence**    Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 105:15 – 105:19; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 8). | Plaintiffs' Exhibit 206 is not a report of Notowitz. Also, misstates the cited evidence, which does not support the claim that the "detectives" decided to get a warrant for "his" car. No evidence has been submitted to identify who is talking or what each individual said. |
| 235.    DDA Feldman advises that they might have enough evidence against Aaron if they have cell phone evidence and statements of three other witnesses, "realizing that they might have to flip someone." <br><br> **Evidence**    Dkt. 73-2, Ex. 7(a) (Anthony Nguyen audio-recorded interview), 107:33 – 107:45; Dkt. 73-2, Ex. 206, David Notowitz Rpt., audio comparison pp. 3, (Ex. A, pp. 11); Battles 10/20/23 Decl., Ex. 400 (DDA Dan Feldman Dep. Tr.), pp. 59:16 – 60:2, 74:15 – 75:15 (identifying his own voice for the statement "Realizing that you might have to flip someone.") | 235.    Objection:    *See*    General Objections, Objections **A, D, E.** Also, vague as to "they." Further, Plaintiffs' cited evidence seems to be incorrect. Plaintiffs' Exhibit 206 is not a report of Notowitz. Finally, misstates the cited evidence, which does not support the claim. Aaron's name is not mentioned in the recorded conversation and there is no evidence submitted as to who the "flip" comment was about. There also is no evidence presented as to the identify of who is speaking and what each individual is saying. Without waiving the objections, the Officers respond as follows: Undisputed that DDA Feldman was present at the Garden Grove police department on April 20, 2011 during the time both Aaron and Nina were being |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | interviewed, that he was informed of the information the police were learning during these interviews, and that he suggested "flip[ping] someone and putting Aaron and Nina in a room together. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium). |
| 236.  DDA Feldman testified that "flipping someone" means "granting use immunity."<br>**Evidence**    Battles 10/20/23 Decl., Ex. 400 (DDA Dan Feldman Dep. Tr.), pp. 75:16-75:18. | 236. Objection:    *See*    General Objections, Objections **A, C, D.** Also, Plaintiffs' fact is an incomplete statement of the supporting evidence. As the evidence shows, DDA Feldman stated that "in that context" the term flipping someone meant granting use immunity.    Without    waiving    the objections, the Officers respond as follows: Undisputed. |
| 237.  Sergeant Martin testified in his deposition that the term "flip" meant to get one defendant to roll over on another defendant, which would get them consideration with the District Attorney.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 409(b) (Martin Dep.) 281:19 – 282:2. | 237. Objection:    *See*    General Objections, Objections **A, C, D.** Also, Plaintiffs' fact is an incomplete statement of the supporting evidence. As the evidence shows, Martin defined the term phrase "flip someone" based on his experience working in the Crimes Against Persons Unit. With that clarification, and without waiving the |

1797161.4

|  | objections, the Officers respond as follows: Undisputed. |
|---|---|
| **Nina Unrecorded Conversation** | |
| 238. According to detective Lord's police report, after he concluded his interview of Aaron, he "was contacted by Sergeant MARTIN and told he had spoken to Nina NGUYEN while I was in the process of interviewing Aaron NGUYEN. Sergeant MARTIN told me Nina NGUYEN had admitted to him she had not told me the entire truth about what she knew about this incident during the first interview." **Evidence** Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 11. | 238. Undisputed. |
| 239. During her deposition, Nina testified that she did not tell the sergeant that she had been at the Phi Hong Billiard Hall; "All that was said was him screaming at me saying that I'm lying and you better start telling the truth." I didn't say anything, I just started crying because he was in my face." **Evidence** Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 268:25 – 269:20. | 239. Objection: *See* General Objections, Objections **A, C, D.** Without waiving the objections, the Officers respond as follows: Undisputed. |
| 240. Sergeant Martin did not video-record or audio record his conversation with Nina. **Evidence** Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Report) p. 10 ("One of the most significant omissions from the police reports in this case is the conversation Sergeant Martin had with Nina off-camera and outside of a wired room. By failing to record the conversation, Sergeant Martin failed to preserve critically important evidence concerning his interactions with Nina | 240. Objection: *See* General Objections, Objections **A, D, E.** Vague as to "his conversation." Plaintiffs have not identified what conversation is referenced in this fact. The evidence shows that Martin participated in the first and second interviews of Nina, which were audio/video recorded. |

1797161.4

| | |
|---|---|
| Nguyen. (Based on the interview of Anthony Nguyen, 4/20/11, there seems to be no question that officers had the ability to record interviews on their cell phones even when a wired room was not available). Beyond failing to record the conversation, Martin did not attempt to summarize the conversation in a report.") <br><br> Dkt. 73-2, Ex. 407, Reynolds 5/8/23 Dep. Tr., pp. 207:1 – 207:5 (aware of no reason why conversation between Martin and Nina was not recorded). | Also, this is not a proper fact. It contains multiple elements, many of them are argumentative and are improper conclusions. This fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. Further, the cited deposition testimony of Reynolds does not support the fact stated. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 129, 137) |
| 241.    Sergeant Martin did not write a police report summarizing the unrecorded conversation with Nina Nguyen. <br> **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 20 (referring to conversation as "unrecorded). <br><br> Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Report) p. 10. Beyond failing to record the conversation, Martin did not attempt to summarize the conversation in a report.") | 241. Objection: *See* General Objections, Objections **A, D, E.** Vague as to "the unrecorded conversation." Plaintiffs have not identified what conversation is referenced in this fact. The evidence shows that Martin participated in the first and second interviews of Nina, which were audio/video recorded. Also, this is not a proper fact as it contains multiple statements. This fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 80, 129, 138) |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 242.    The scientific community is of one mind that video recording full interrogations, from start to finish, is necessary so that factfinders can observe the pressures exerted on suspects and the information communicated to suspects in assessing the voluntariness and reliability of confessions.<br>**Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 42. | 242.  Objection:  *See*  General Objections, Objections **A, D.** This is not a fact but is an improper conclusion that is not supported by admissible evidence.  (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 31) |
| 243.    According to Detective Lord's police report, he found Nina in a conference room and noticed that she was crying.<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 11. | 243.  Undisputed. |
| 244.    According to Detective Lord's police report, Nina requested to continue her interview and he immediately began a second session of video-recorded interview.<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report) (Lord 4/20/11 Supp. Report), p. 11-12. | 244.  Undisputed. |
| 245.    When the second videotaped session resumes at 12:39 p.m., Nina Nguyen can be seen and heard crying in an interview room.<br>**Evidence**    Dkt. 73-2, Ex. 2(a), Video of Nina Interview #2, 12:39 p.m. – 12:45 p.m. | 245.  Undisputed. |
| 246.    Nina appears to be crying and visibly distressed through at least 12:45 p.m.<br>**Evidence**    Dkt. 73-2, Ex. 2(a), Video of Nina Interview #2, 12:39 p.m. – 12:45 p.m. | 246.  Objection:  *See*  General Objections, Objections **A, D.** Plaintiffs' descriptive of "visibly distressed" is vague.  Assuming that by "visibly distressed," Plaintiffs mean that Nina |

1797161.4

| | |
|---|---|
| | was crying, and without waiving the objections, the Officers respond as follows: Undisputed that Nina can be seen crying for several minutes on the video of her second interview. |
| 247.    During the second videorecorded interview, at 12:57 p.m., Nina tells Detective Lord that the reason she was crying was because the sergeant was in her face pointing at her.<br>**Evidence**    Ex. 2, Video of Nina Interview #2, 12:57:23 – 12:57:44; Ex. 2(b) (Transcript of Interview #2), pp. 15-16. | 247.  Objection:  *See*  General Objections, Objections **A, D.** Also, this statement does not accurately reflect what Nina said. During her taped interview, Nina was crying and was asked why she was upset to which she said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Without waiving the objections, the Officers respond as follows: Undisputed. |
| 248.    During her deposition, Nina testified that, what she meant by "I was crying because he was pointing in my face" was: "I was crying because I was scared. He pulled me out of this interview room and he pulled me into his office and he started screaming at me. He had his leg on my chair, I don't know, to scare me or something. And he screamed and put it in my face, like | 248.  Objection:  *See*  General Objections, Objections **A, C, D.** What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Plaintiffs have presented no evidence that the Officers were aware of Nina's |

1797161.4

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

this far from my face. [gesturing]. He was screaming from the top of my – his lungs and telling me that I'm not telling the truth and just top fucking lying or else I'll get in really deep trouble, so I started to believe him that I was, in fact lying to him."

**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 268:2 – 268:17; see also 185:11 – 187; 289:21 – 289:24.

previously unexpressed meaning, feelings or beliefs, which is the only relevant inquiry. Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Six years later, at the criminal trial, Nina testified that Martin was telling her "Just tell the truth" or else she would get in more trouble, repeating she was a liar and pointing at her face. Exhibit S, Nina's criminal trial testimony, pp. P001506-P001507

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | (pp. 539-540 of the Officers Compendium). |
| 249. During her deposition, Nina explained that the officer screaming at her pushed her to a point where she could do nothing else but cry ("the reason why I was crying [in the interview room] was because I came back from the officer screaming at me in my face, telling me if I don't tell the truth – and at that time I was already exhausted. I was telling the truth the whole entire time and I was helpless at that point. I didn't know what else to tell them, other than the truth, and they kept telling me I was lying, so there was nothing else I could do but cry because I was so stressed at that point."). **Evidence** Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 145:8 – 145:19 | 249. Objection: *See* General Objections, Objections **A, C, D.** What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Plaintiffs have presented no evidence that the Officers were aware of Nina's previously unexpressed meaning, feelings or beliefs, which is the only relevant inquiry. Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, |

| | |
|---|---|
| | transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Six years later, at the criminal trial, Nina testified that Martin was telling her "Just tell the truth" or else she would get in more trouble, repeating she was a liar and pointing at her face. Exhibit S, Nina's criminal trial testimony, pp. P001506-P001507 (pp. 539-540 of the Officers Compendium). |
| 250.    Nina was not crying for any other reason than the officer screaming in her face.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 146:1 – 146:3; see also, pp. 185:11 – 186:24 (Nina was crying because she was "screamed at…repeatedly called a liar and was just stressed out because no one would believe me.." | 250.  Objection:    *See*    General Objections, Objections **A, C, D.** What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Plaintiffs have presented no evidence that the Officers were aware of Nina's previously unexpressed meaning, feelings or beliefs, which is the only relevant inquiry. Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Further, at the criminal trial, Nina's testified to being scared just by being in the police station and being asked questions:

> Q. What was your -- did you feel comfortable and calm being there with the police? What was your demeanor?
> A. I was very frightened, scared.
> Q. Why were you frightened and scared?
> A. Because they were interrogating me.

Exhibit S, Nina's criminal trial testimony, p. P001486 (p. 519 of the Officers Compendium).

| | |
|---|---|
| 251.    During deposition, Nina testified that she remained "scared for the rest of the time [she] was at the police department;" she was scared that she wasn't going to be able to go home. **Evidence**    Dkt. 73-2, Ex. 401 (Nina | 251. Objection:    *See*    General Objections, Objections **A, C, D.** Further,    this    contradicts    Nina's criminal trial testimony: |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| Nguyen Dep. Tr.), 289:21 – 290:9. | Q. What was your -- did you feel comfortable and calm being there with the police? What was your demeanor?<br>A. I was very frightened, scared.<br>Q. Why were you frightened and scared?<br>A.     Because    they    were interrogating me.<br>Exhibit   S,   Nina's   criminal   trial testimony, p. P001486 (p. 519 of the Officers Compendium).<br><br>    What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Plaintiffs have presented no evidence that the Officers were aware of Nina's previously  unexpressed  meaning  or feelings,  which  is  the  only  relevant inquiry. |
| 252.     Later on 4/20/2011, at 1:49 p.m., Nina says on tape (to Aaron) that she was "crying so much" because the older police officer was yelling at her, in her face, pointing at her, accusing her of lying ("**you do not ever fucking lie to me**") even though, she said, she hadn't lied.<br>**Evidence**    Ex. 2 (a), Video of Nina Interview #2; 13:49:03 – 13:49:44; Ex. 2(b) (Transcript of Interview #2), p. 58 ("That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever | 252.   Objection: Plaintiffs miscite the evidence. The transcript shows that when  Nina  and  Aaron  were  alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He  was  pointing  at  my  face.  He  was like,  you  do  not  ever  fucking  lie …" and Aaron told her to cry if she had to. Exhibit T, transcript of Nina/Aaron's |

1797161.4

| | |
|---|---|
| fucking lie to them. But, I wasn't lying. I wasn't.").[2] | conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). |
| 253.    During her deposition, Nina Nguyen confirmed that she remembered the officer pointing his finger in her face, screaming "you do not ever fucking lie to them [the officers]."<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 283:1 – 283:16; see also, 187:10 – 187:20 ("If you don't fucking tell the truth, you are going to get in a lot of trouble, so you better tell the truth or you're going to be"…"or you're" I felt like I was stuck there at that point, and I wasn't allowed to leave until I was going to tell the truth, to them what was the truth."). | 253. Objection:    *See*    General Objections, Objections **A, C, D, E.** Without waiving the objections, the Officers    respond    as    follows: Undisputed. |
| 254.    During Aaron Nguyen's 2017 trial, Nina Nguyen testified that there was period between her first and second video-recorded interviews when a Garden Grove Sergeant came in to speak with her.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 100, Nina Nguyen 2017 Trial Testimony, pp. 1056:13-1057:11. | 254.    Undisputed. |
| 255.    During trial, she described the sergeant pointing in her face and repeatedly accusing her of lying.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 100, Nina Nguyen 2017 Trial Testimony, pp. 1056:13-1057:11. | 255. Objection:    *See*    General Objections, Objections **A.** Also, vague as to "trial" and "she." Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was    crying    cuz    he |

---

[2] The transcript does not fully capture the portion of the exchange where Nina says she "was crying so much."

112

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

[Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Six years later, at the criminal trial, Nina testified that Martin was telling her "Just tell the truth" or else she would get in more trouble, repeating she was a liar and pointing at her face. Exhibit S, Nina's criminal trial testimony, pp. P001506-P001507 (pp. 539-540 of the Officers Compendium). Without waiving the objections, the Officers respond as follows: Undisputed that six years later, at the criminal trial, Nina testified that Martin was "telling [her] 'Just tell

113

| | |
|---|---|
| | the truth' or else [she] would get in more trouble, repeating [she] was a liar and pointing at [her] face." |
| 256.    During trial, she estimated that he was pointing in her face and accusing her of lying for about 30 minutes.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 100, Nina Nguyen 2017 Trial Testimony, pp. 1056:13-1057:11. | 256. Objection:    *See*    General Objections, Objections **A.** Also, vague as to "trial" and "she." Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Six years later, at the criminal trial, Nina testified that Martin was telling her "Just tell the truth" or |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | else she would get in more trouble, repeating she was a liar and pointing at her face. Exhibit S, Nina's criminal trial testimony, pp. P001506-P001507 (pp. 539-540 of the Officers Compendium). Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's criminal trial testimony. |
| 257.     Nina testified at trial that the sergeant's conduct – yelling at her and accusing her of lying – made Nina so upset that she was crying.<br>**Evidence**     Battles 10/20/23 Decl., Ex. 100, Nina Nguyen 2017 Trial Testimony, pp. 1059:18 – 1060:6. | 257. Objection: *See* General Objections, Objections **A.** Also, vague as to "trial." Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Without waiving the objections, the Officers respond as follows: Undisputed. |
| 258.     Nina testified at trial that she was so upset that she continued to cry for longer than 10-15 minutes after the sergeant left.<br>**Evidence**     Battles 10/20/23 Decl., Ex. 100, Nina Nguyen 2017 Trial Testimony, pp. 1059:18 – 1060:6 | 258.   Objection:   *See*   General Objections, Objection **A.** Also, vague as to "trial" and "she." Also, as noted in fact number 247 above, when Lord asked why she was crying Nina said, "I'm not lying to you sir" and later explained "I was crying cuz he [Martin] was in my face. He was pointing at me, he was, I don't know, and then." Exhibit W, transcript of interview #2 of Nina, pp. 1, 15 (pp. 1001, 1015 of the Officers Compendium). Further, when Nina and Aaron were alone together, Nina told Aaron that Martin was in her face, stating: "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie …" and Aaron told her to cry if she had to. Exhibit T, transcript of Nina/Aaron's conversation on 4/20/11, p. 8 (p. 603 to the Officers Compendium). Six years later, at the |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | criminal trial, Nina testified that Martin was telling her "Just tell the truth" or else she would get in more trouble, repeating she was a liar and pointing at her face. Exhibit S, Nina's criminal trial testimony, pp. P001506-P001507 (pp. 539-540 of the Officers Compendium). Without waiving the objections, the Officers respond as follows: Undisputed. |
| 259.    Because of what the sergeant did, Nina was very worried that she would go to jail if she didn't tell Detective Lord what he wanted to hear, even though she was innocent.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 100, Nina Nguyen 2017 Trial Testimony, pp. 1059:18 – 1060:6 (Q: What did you think would happen to you during the second interview if you didn't tell Detective Lord what you thought he wanted to hear? A: I was – I just thought I was in big trouble and afraid to go to jail even though I knew that I was innocent."). | 259. Objection:    *See*    General Objections, Objection **A**.    Also, misstates the evidence. Nina did not testify she thought she would go to jail, she testified that she "thought [she] was in big trouble." |
| 260.    During her deposition in this case, Nina testified that, about two hours after she arrived at the police station, an officer took her from the interrogation room, walking her to an office 20 steps away.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 27:11 – 27:13, 27:23 – 28:17, 29:16 - 30:4, 30:10 – 33:2, 34:7 - 37:12, 37:20 – 38:2, 268:2 – 268:17, 283:1 – 283:16 (Q: "How | 260. Objection:    *See*    General Objections, Objection **A, E.** Without waiving the objections, the Officers respond as follows: Undisputed that this was Nina's deposition testimony. |

1797161.4

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | long had you been at the police station when this occurred – 'this' meaning this interaction with this officer in the office." A: "It was about two hours in.") | |
| 5<br>6<br>7<br>8<br>9<br>10<br>11 | 261.    Inside of the office, she sat in one of two chairs; the officer was sitting in the other chair.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 30:10 – 31:5. | 261.  Objection:    *See*    General Objections, Objection **A.** Also vague as to "the office" and "she" and "the officer."    Without    waiving    the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 12<br>13<br>14<br>15<br>16<br>17<br>18 | 262.    The door to the office was closed behind her; she did not know if it was locked.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 36:22 – 37:2. | 262.  Objection:    *See*    General Objections, Objection **A.** Also vague as to "the office" and "she" and "her." Without waiving the objections, the Officers    respond    as    follows: Undisputed this was Nina's deposition testimony. |
| 19<br>20<br>21<br>22<br>23<br>24<br>25 | 263.    The officer positioned himself next to her, with his foot on her chair, and finger pointing in his face while he screamed *in her face*, repeatedly calling her a liar and telling her she would be in a lot of trouble if she didn't "tell the truth."<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 30:10 – 32:22. | 263.  Objection:    *See*    General Objections, Objection **A.** Also vague as to "the officer" and "she" and "her." Without waiving the objections, the Officers    respond    as    follows: Undisputed this was Nina's deposition testimony. |
| 26<br>27<br>28 | 264.    The sergeant used profanity and called Nina names like "God damned liar" and "you're a fucking liar."<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina | 264.  Objection:    *See*    General Objections, Objection **A.** Also vague as to "the sergeant." Without waiving the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| Nguyen Dep. Tr.), pp. 32:2 – 32:22. pp. 283:1 – 283:16. | objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 265.    He screamed in her face " 'If you don't tell the fucking truth, you will be in deep shit'" or "if you don't tell the fucking truth, you are going to get in a lot of trouble." **Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 34:11 – 36:5, pp. 283:1 – 283:16.. | 265. Objection:    *See*    General Objections, Objection **A.** Also vague as to "he." Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 266.    The officer raised his voice so much it "sounded like he was screaming at the top of his lungs." **Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 34:17 – 36:5. | 266. Objection:    *See*    General Objections, Objection **A.** Also vague as to "the officer." Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 267.    The officer was screaming so loudly Nina Nguyen saw his face become red. **Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 34:11 – 36:1 ("He screamed in my face and his face got red screaming at me."). | 267. Objection:    *See*    General Objections, Objection **A.** Also vague as to "the officer." Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 268.    Nina was terrified by the officer screaming in her face. **Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 34:11 – 35:8 ("…but he really screamed into my face and it was – it terrified me"); 289:7 – 289:20 ("I was extremely fearful and I thought I wasn't going to be able to go home, so I had to tell them what they wanted me to say in | 268. Objection:    *See*    General Objections, Objection **A.** Also vague as to "the officer." Also, what Nina said she felt more than 10 years after the fact is irrelevant. The evidence does not show that the Officers were aware Nina was "terrified." Without waiving |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| order for me to go home"). | the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 269.     Nina testified that, by "terrified," she meant she "was very scared for [her] life.<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 38:22 – 39:3; 138:25 – 139:5 (when the officer started to "get in my face and yell at me. That's when I started to get intimidated and scared."). | 269. Objection:  *See*  General Objections, Objection **A.** Also, what Nina said she felt more than 10 years after the fact is irrelevant. The evidence does not show that the Officers were aware Nina was "terrified." Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 270.     Nina testified that, "Even though [she knew she] was telling the truth the whole entire time, he relentlessly screamed at [her] telling [her] that [she] was a liar."<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 38:22 – 39:3. | 270. Objection:  *See*  General Objections, Objection **A.**  Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 271.     Nina was crying while she was in the office where the sergeant yelled at her.<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 145:2 – 145:7. | 271. Objection:  *See*  General Objections, Objection **A.**  Without waiving the objections, the Officers respond as follows: Undisputed this was Nina's deposition testimony. |
| 272.     DDA Daniel Feldman saw a young girl at the police station several times on April 20, 2011; he saw her multiple times throughout the day as she was being moved between rooms at GGPD.<br>**Evidence**     Battles 10/20/23 Decl., Ex. 400 (Feldman Dep. Tr.), pp. 97:16 – 97:21; 98:5-98:22. | 272. Objection:  *See*  General Objections, Objection **A.**  Without waiving the objections, the Officers respond as follows: Undisputed. |

1797161.4

| | |
|---|---|
| 273.      DDA Feldman does not know if the young woman was Nina Nguyen. **Evidence**    Battles 10/20/23 Decl., Ex. 400 (Feldman Dep. Tr.), pp. 97:16 – 97:21. | 273.  Objection:  *See*  General Objections,  Objection  **A.**  Without waiving the objections, the Officers respond as follows: Undisputed. |
| 274.      On 4/20/2011, Nina Nguyen was the only girl (or woman) who was interviewed at GGPD in connection with the Phi Hong shooting. **Evidence**    Dkt. 73-2, Ex. 68 (listing all interviews conducted on 4/20/11). | 274.  Objection:  *See*  General Objections,  Objection  **A.** This fact appears to be based on the unsupported assumption that the only investigation being conducted at the Garden Grove police department on April 20, 2011 was related to the Phi Hong shooting. Plaintiffs' present no evidence to support this assumption. Also, Plaintiffs misrepresent the proffered evidence, which is titled "GARDEN GROVE POLICE DEPARTMENT INTERVIEW TAPES." This list does not purport to be a list of "all interviews" conducted on 4/20/11, but is a list of interview tapes relating to the Phi Shooting investigation. |
| 275.      What stands out in DDA Feldman's mind is that she was visibly upset and crying. **Evidence**    Battles 10/20/23 Decl., Ex. 400 (Feldman Dep. Tr.), pp. 97:16 – 97:21; 98:5-98:22. | 275.  Objection:  *See*  General Objections, Objection **A.** Vague as to "she." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 276.      DDA Feldman did not ask why she was upset. **Evidence**    Battles 10/20/23 Decl., | 276.  Objection:  *See*  General Objections, Objection **A.** Vague as to |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| Ex. 400 (Feldman Dep. Tr.), pp. 98:23 – 99:1. | "she." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 277.    DDA Feldman had "no idea" why she was upset.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 400 (Feldman Dep. Tr.), pp. 111:21 – 112:3. | 277. Objection: *See* General Objections, Objection **A.** Vague as to "she." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 278.    When asked about any concerns regarding the voluntariness of witness interviews, DDA Feldman said the only thing that stands out in his mind is the girl who was crying at the police station (though he cannot say her crying independently indicated her statements were involuntary). Feldman testified that he **lacked sufficient information to raise a voluntariness concern, much less to draw a conclusion about voluntariness**.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 400 (Feldman Dep. Tr.), pp. 99:12-100:14; 110:22 – 112:20. | 278. Objection: *See* General Objections, Objections **A, E.** Without waiving the objections, the Officers respond as follows: Undisputed but irrelevant. Aaron's defense counsel raised the issue of voluntariness during the criminal trial. *See* Exhibit Q, Excerpts from the criminal proceedings where Aaron's criminal defense counsel objected to and the issue of the voluntariness of Nina Nguyen's statements to the Garden Grove police officers were voluntary, Bates Stamped: P000379-380, P000547-550, P002738, P002746 and P003066 (pp. 441-449 to the Officers Compendium); Exhibit LL, criminal docket relating to Alex Tran, pp. 21, 24 (pp. 36-37 to the Officers Supplemental Compendium) |
| 279.    Detective Danielson testified | 279. Objection: *See* General |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| in his deposition that the detective section of the Garden Grove Police Department was a bullpen with cubicles for detectives.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Deposition Tr.) pp. 68:18 – 69:3. | Objections,    Objection  **A.**    Without waiving the objections, the Officers respond as follows: Undisputed. |
| 280.    There were two offices in the detective area section. One office belonged to Sergeant of Crimes Against Persons (who was Sergeant Martin at the time); the other office belonged to the Property Crimes Sergeant.<br>**Evidence**    Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Deposition Tr.) pp. 69:4 – 70:20 | 280.  Objection:    *See*    General Objections,    Objection  **A.**    Without waiving the objections, the Officers respond as follows: Undisputed. |
| 281.    Detective Danielson described the office of the CAP Sergeant. It had a desk with two chairs facing the desk as Nina described.<br>**Evidence** Battles 10/20/23 Decl., Ex. 402 (Paul Danielson Deposition Tr.) pp. 70:17 – 71:20. | 281.  Objection:    *See*    General Objections,    Objection  **A.**    Without waiving the objections, the Officers respond as follows: Undisputed. |
| **Nina Interrogation Part 2** | |
| **12:39 – 1:02** | |
| 282.    Nina's second video-taped interrogation session began at 12:39 p.m.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:39; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.1. | 282.  Objection:    *See*    General Objections, Objections **A, D.** Also, misstates the cited evidence. The referenced video tape shows that the interview did not resume until after 12:41. Without waiving the objections, the Officers respond as follows: Undisputed that Nina's second interview began at around 12:41. |

1797161.4

| | |
|---|---|
| 283.      Nina is crying because Sgt. Martin yelled at her and called her a liar.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:39; Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 185:11 – 186:24 (Nina was crying because she was "screamed at…repeatedly called a liar and was just stressed out because no one would believe me.."). | 283. Objection: *See* General Objections, Objections **A, D, E.** Without waiving the objections, the Officers respond as follows: Undisputed. |
| 284.      At 12:41, Sergeant Martin enters the room. Nina says: "I am not lying to you sir." Sergeant Martin tells her to calm down and "be honest."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:41:40; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.1. | 284. Objection: *See* General Objections, Objections **A, D.** Without waiving the objections, the Officers respond as follows: Undisputed. |
| 285.      At 12:42, Detective Lord enters and says: "So what's the deal? Are you going to tell me what really happened now?<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:42; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.1. | 285. Objection: *See* General Objections, Objections **A, D.** Without waiving the objections, the Officers respond as follows: Undisputed. |
| 286.      Detective Lord tells Nina that she lied before (I don't know why you didn't think this was a serious matter before…But you didn't tell me the truth.")<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:42:49; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.2. | 286. Objection: *See* General Objections, Objections **A, D**. Also, misstates the cited evidence, which shows that Lord did not tell Nina she "lied before" but said "you didn't tell me the truth." Without waiving the objections, the Officers respond as follows: Undisputed that the words in quotes were spoken by Lord. |

1797161.4

| | |
|---|---|
| 287.    Nina re-confirmed they attended Puffy's Party with Julie and Alex.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:43:12 – 12:44:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.2. | 287. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina agreed with Lord when he summarized that she had been at Puffy's party with Alex and Julie. |
| 288.    At this point in the interview (12:43 – 12:44), Nina is still crying so hard she has difficulty speaking.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:43:12 – 12:44:00. | 288. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was still crying between 12:43 and 12:42 but Plaintiffs' interpretation that it was "so hard she had difficulty speaking" is not supported by the cited evidence because the video shows that Nina was answering questions during this time period. |
| 289.    At 12:45 p.m., while describing Puffy's party, Nina is still crying.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:45:00 – 12:45:30. | 289. Objection:    *See*    General Objections, Objections **A, D**. Also, misstates the cited evidence, which shows that Nina is no longer crying from 12:45:00 to 12:45:30 but is occasionally sniffling and wiping her eyes. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was still sniffling between 12:45:00 and 12:45:30. |

1797161.4

| | |
|---|---|
| 290.    Nina was asked to describe cars at the park; she said: she saw [them] "following us a white Honda car," but she did not know if the white Honda was part of Aaron's friends' group or POV.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:47:40 – 12:48:10; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.7. | 290.  Objection:    *See*    General Objections, Objections **A, D**. Also, misstates the cited evidence. While Nina was asked about the cars that went to the park, she described a white Honda; however, when asked for clarification if they were following the white Honda from Puffy's house to the park, she could not remember. (Plaintiffs' Exhibit 2(a), 12:48:18-12:48:24)  Without waiving the objections, the Officers respond as follows: Undisputed that Nina did not know if the white Honda she described was part of Aaron's friend group or part of POV. |
| 291.    They went to the park because they were just follow[ing] "the crew."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:48:53 – 12:49:01; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.7.<br><br>[transcript is incorrect] | 291.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 292.    Nina didn't realize they were going to follow anyone until Nina heard CJ yell out, "Oh everyone follow me" or something similar.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:49:01 – 12:49:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.8. | 292.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| [transcript is incorrect] | |
|---|---|
| 293.    Tony got in their car at the park.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:49:07 – 12:49:31; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.8. | 293.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 294.    They left to find POV.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:49:31 – 12:49:40; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.8. | 294.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 295.    Nina stayed in the car the whole time.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:50:24; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.9. | 295.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 296.    Nina reiterated that CJ called out to Tony that they should follow him and chase someone.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:50:24 – 12:50:40; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p.9. | 296.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that CJ told everyone to follow him from the park to go chase someone. |
| 297.    Nina confirmed that the persons in Aaron's car, leaving the park, included Aaron, **Tony**, Alex, Julie and herself.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:51:18 – 12:51:45; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 9-10. | 297.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 298.    They were following one of the other cars that had been at the park<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video | 298.  Objection:    *See*    General Objections,  Objections  **A,  D**.  This |

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 12:51:50 – 12:52:26; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 10 (follow them – agreeing it was one of the cars at the park). | entire fact is vague and without context. Without waiving the objections, the Officers respond as follows: Undisputed that this is what Nina said. |
| 299.    Aaron was following CJ. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:52:55; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 11. | 299.   Objection:    *See*    General Objections, Objections **A, D**. This entire fact is vague and without context. Without waiving this objection, and assuming Plaintiffs are talking about what Nina said they were doing after they left the park, the Officers respond as follows: Undisputed that this is what Nina said. |
| 300.    Tony told Aaron to follow. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:52:55 – 12:53:21; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 11. | 300.   Objection:    *See*    General Objections, Objections **A, D**. This entire fact is vague and without context. Without waiving this objection, and assuming Plaintiffs are talking about what Nina said they were doing after they left the park, the Officers respond as follows: Undisputed that this is what Nina said. |
| 301.    They followed and lost the group near Miles Square Park, possibly near New Hope or Euclid. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:53:17 – 12:53:32; Ex. 2(b) (Transcript of Nina 4/20/11 | 301.   Objection:    *See*    General Objections, Objections **A, D**. This entire fact is vague and without context. Without waiving this objection, and assuming Plaintiffs are |

128

| | |
|---|---|
| Interrogation, Part 2), p. 11. | talking about what Nina said they were doing after they left the park, the Officers respond as follows: Undisputed that this is what Nina said. |
| 302.    After they lost the group, they went to the Vietnamese restaurant.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:53:32 – 12:54:05; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 12. | 302. Objection:    *See*    General Objections, Objections **A, D**. This entire fact is vague and without context. Without waiving this objection, and assuming Plaintiffs are talking about what Nina said they were doing after they left the park, the Officers respond as follows: Undisputed that this is what Nina said. |
| 303.    Nina estimated they were at the Vietnamese restaurant for "like an hour, an hour or less. I don't think more than an hour."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:54:05 – 12:54:44; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 12. | 303. Objection:    *See*    General Objections, Objections **A, D**. This entire fact is vague and without context. Without waiving this objection, and assuming Plaintiffs are talking about what Nina said they were doing after they left the park, the Officers respond as follows: Undisputed that this is what Nina said. |
| 304.    Nina acknowledged they were waiting for a call; Nina didn't know whether CJ or Puffy called Aaron or Tony; when pressed she said "Oh, I'm just guessing."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:55:07 – 12:55:41; Ex. 2(b) (Transcript of Nina 4/20/11 | 304. Objection:    *See*    General Objections, Objections **A, B, D**. Also, argumentative regarding Plaintiffs' descriptive of "when pressed." Without waiving this objection, the Officers respond as follows: Undisputed that |

1797161.4

| | |
|---|---|
| Interrogation, Part 2), p. 13. | this is what Nina said. |
| 305.     Phone records established that CJ did not call Aaron or Tony Do; phone records established that Puffy did not call Aaron or Tony Do.<br>**Evidence**     Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), pp. 58 – 59 (No calls to/from Puffy or CJ to Anthony Do; Likewise, cross-referencing Tony's number with all targets for whom cell data existed confirms there were no calls/texts between any targets and Tony DO; no calls/messages between CJ/Puffy and Alexander Tran between 1:58 and 2:21 (after the shooting occurred); Dkt. 73-2, Ex. 408 (Daniel Camara Dep. Tr., GGPD 30(b)(6) re Cell Phone Evidence), pp. 65:22 – 66:22); Dkt. 73-2, Ex. 154, p. 2, lines 83-84 (Aaron's cell phone records showing no calls between 1:58 a.m. and 4:06 a.m.); | 305.  Objection:  *See*  General Objections, Objections **A, D, E**. This fact is partially supported by inadmissible evidence. Without waiving the objections, the Officers respond as follows: Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 81) |
| 306.     After they got a phone call, they left the restaurant and went to either Tony's house, or someone else's house or to M&M donuts – Nina was not sure, but she knew they met back up with the group.<br>**Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:56:15 – 12:57:01; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 14. | 306.  Undisputed that Nina told Lord, "I think we went to Tony's or someone house or [they] went to some M&M's to meet up with them. To someone's house, I don't know who's house it was. Either Tony's or some other person's house." (Plaintiffs' Exhibit 2(b), p. 14) |
| **12:57 -1:02** | |
| 307.  Lord tells Nina, that after they went to someone's house, they "went to the poolhall. You already told my sergeant you went to the pool hall. That is why you are crying." | 307.  Objection:  *See*  General Objections, Objections **A, D**. Misstates the evidence. Nina is the one that said |

1797161.4

| | |
|---|---|
| **Evidence**  Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:57:06 – 12:57:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 14-15. | they went to someone's house and Lord asked her where they went afterwards: "You went to the pool hall." Without waiving this objection, Lord responds as follows: With the above correction, undisputed. |
| 308.  Lord accuses Nina of changing her story: "And now you are telling me you didn't go to the pool hall. Even though you told my sergeant you did. And he said, you didn't tell me the truth before and now you wanted, you understand how serious the situation is. And you wanted to talk to me again. You did go to the pool hall because, guess what? Other people who were at the pool hall … saw you and Aaron parking his car by the McDonalds. It's in the same parking lot.' **Evidence**  Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:57:32 - 12:58:16; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15. | 308.  Objection:  *See*  General Objections, Objections **A, B, D**. Argumentative as to Plaintiffs' descriptive "accuses." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 309.  At 12:57, Nina again denied any memory of being at the Phi Hong: Q: "And now you are telling me you weren't there?" A: "I didn't know I was there." **Evidence**  Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:58:16 – 12:58:23; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15. | 309.  Objection:  *See*  General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said she did not remember being at Phi Hong. |
| 310.  In response to her denial, Lord calls Nina a liar (four times): "You are ridiculous. You are a liar"; Nina | 310.  Objection:  *See*  General Objections, Objections **A, D**. Without |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

131

1797161.4

| | |
|---|---|
| protests: "I am honest", and Lord again says "You are a liar;" Nina asks "why would I lie straight to your face when you ask me *over and over again*," to which Lord responds: "You're a liar. You and Aaron are liars."<br>**Evidence**  Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:58:23 – 12:58:46; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15-16. | waiving the objections, the Officers respond as follows: Undisputed. |
| 311.   Nina testified in deposition, that, at this point in the interview, when the detective repeatedly called her "ridiculous" and a "liar,", she could not help but to feel like "I'm delusional or stupid or something. That I wasn't telling the truth."<br>**Evidence**  Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 269:22 – 271:3. | 311.  Objection:  *See*  General Objections, Objections **A, C, D**. Argumentative regarding Plaintiffs' descriptive of "when pressed." Without waiving this objection, Lord responds as follows: Undisputed that this is what Nina said in her deposition. |
| 312.   Nina insists: "I promise you, just please believe me. I promise you. Okay, if we were there, the I was there. But I don't remember turning into the place and going to the park and parking at the McDonalds. I was sleeping…me and him were just sitting in the car and waiting for them to be ne with whatever they were doing."<br>**Evidence**  Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:59:07 – 12:59:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 16. | 312.  Objection:  *See*  General Objections, Objections **A, D**. Argumentative regarding Plaintiffs' descriptive of "insists." Without waiving this objection, Lord responds as follows: Undisputed that this is what Nina said. |
| 313.   At 12:59 p.m., as Nina is explaining that she does not remember going to the parking lot near McDonalds, she is **crying**.<br>**Evidence**  Dkt. 73-2, Ex. 2(a) (Video | 313.  Objection:  *See*  General Objections, Objections **A, D**. Without waiving the objections, the Officers |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 12:59:07 – 12:59:32. | respond as follows: Undisputed. |
| 314.  At 12:59 p.m., Nina is **crying** so much it is difficult to understand what she is saying.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:59:07 – 12:59:32. | 314.  Objection:    *See*    General Objections, Objections **A, D**. Further, this is Plaintiffs' description of the event, which is not supported by the video evidence. While Nina is crying, she is not crying so hard that it is difficult to understand her. Without waiving the objections, the Officers respond as follows: Undisputed that Nina is crying. The remainder of this fact is not supported by the evidence. |
| 315.   Nina tells Detective Lord that she is not trying to protect Aaron because she knows he "doesn't want to have anything to do with this."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:00 – 13:00:14; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 16. | 315.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 316.  Detective Lord continues to insist she is lying: "But you need to tell the truth because the more you lie…the more you are going to get yourself in trouble. You are digging a hole for yourself."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:00:31 – 13:00:44; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 17. | 316.  Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative regarding Plaintiffs' descriptive "continues to insist." Without waiving the objections, the Officers respond as follows: Undisputed that Lord said this. |
| 317.  At 1:00, Nina asked if she could "just admit everything? But I don't know anything about the shooting." | 317.  Objection:    *See*    General Objections, Objections **A, D**. Misstates |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

133

| | |
|---|---|
| **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:00:44 – 13:00:56; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 17. | the evidence. Nina did not say "I don't know anything about the shooting" in the cited portion of the interview. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said, "I don't know anything." And Lord then said, "I didn't say that you knew anything about the shooting…" (Plaintiffs' Exhibit 2(a), 13:00:44-13:01) |
| 318.   Nina testified in deposition that she meant: "Can I just say that I was there because I was so tired at that point because I just wanted to leave already, and I just wanted to tell them exactly what they wanted [] to hear because what I was explaining to them was not something that they wanted me to say, so it was just going in circles."<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 272:11 – 272:23. | 318.   Objection:   *See*   General Objections, Objections **A, C, D**. Nina's hidden meaning, disclosed more than a decade after the interview, is irrelevant to the issue raised in this matter. Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |
| 319.   At 1:00, Nina was crying.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 273:3 – 273:10. | 319.   Objection:   *See*   General Objections, Objections **A, D**. Plaintiffs' evidence to support this fact is Nina's deposition testimony. That testimony does not reflect that Nina was crying at 1:00 (or 13:00:00, which would be the time stamp on the video). Plaintiffs' other evidence, the video of Nina's interview, also does not show that she |

| | |
|---|---|
| | was crying at 1:00. Therefore, because of the lack of supporting evidence, the Officers can neither admit nor deny this fact. |
| 320.  Detective Lord tells Nina she is lying about where she was, insisting that people saw Nina at the poolhall, "in the car with Aaron" and she was awake, not asleep.<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:00:56 – 13:01:28; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 17-18. | 320.  Objection:   *See*    General Objections, Objections **A, D**. Also, argumentative regarding Plaintiffs' descriptive "insisting." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 321.  At this point, 1:00, Nina felt frustrated because she "repeatedly told him I wasn't there, but then he's telling me that I was there, so he is obviously not believing me, so that's why I was crying, because I was frustrated.<br>**Evidence**   Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 273:3 – 273:21. | 321.  Objection:   *See*    General Objections, Objections **A, D**. Nina's hidden meaning, revealed over a decade after the interview, is irrelevant to the single issues raised in this matter. Without waiving this objection, the Officers respond as follows: Undisputed that this is Nina's deposition testimony, but disputed as to the truth because Nina told Lord at the time that she didn't remember being at the Phi Hong. |
| 322.  At this point in the interview, Nina believed she was "not going to go home any time soon if I kept telling them that I wasn't there, so I felt like I needed to tell them that I was there in order [] to go home."<br>**Evidence**   Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 273:23 – 274:9. | 322.  Objection:   *See*    General Objections, Objections **A, D**. Nina's hidden meaning, disclosed more than a decade after the interview, is irrelevant to the issues raised in this matter. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |
| 323. By 1:01 p.m., Nina had told detectives **twelve times** that she did not remember being at the Phi Hong. **Evidence** Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 290:10 - 297:10.<br><br>1 & 2) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:53:00- 8:53:25; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 45 ("Are you serious…I don't remember being there…Are you sure I was in the car? I don't remember being there.")<br><br>3) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 47 (denying that they went to Phi Hong after Two Thousand and stating that she does not remember going to Phi Hong).<br><br>4) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 48 ("Can I please tell you why I know I wasn't in that car?"); Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 293:5 – 293:14 (By, "can I tell you how I know I wasn't in that car?" Nina meant "Because I don't remember being at the Phi Hong" and it was the "fifth time" she said she didn't remember being there).<br><br>5) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51 (Nina says she remembers being at the Two Thousand, not the Phi Hong).<br><br>6) Ex. 1(b) (Transcript of Nina 4/20/11 | 323. Objection: *See* General Objections, Objections **A, D, E**. This is not a proper fact but is many, many facts. Plaintiffs' effort to bury facts within evidence citations is improper. The evidence shows, some of which Plaintiffs set out above, that at times Nina said she was at Phi Hong and at other times said she did not remember being at Phi Hong. She never unequivocally denied being at Phi Hong. In fact, the appellate opinion attached as Plaintiffs' states:<br><br>> Nina's statements as to whether they were at the pool hall that night were consistently inconsistent; at times she said they were not there that night and other times she said they were or that she had confused that pool hall with another one when she said they were there.<br><br>Exhibit B, Dkt. 77, p. 25 (p. 71 of the Officers' Compendium).<br><br>Without waiving this objection, the Officers respond as follows: Undisputed that Nina had stated she |

1797161.4

| | |
|---|---|
| Interrogation, Part 1), p. 51 (Nina says she "had no clue" they were at the Phi Hong). | did not remember being at Phi Hong. |
| 7) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (when Lord asks who went into the Phi Hong, Nina says she "never knew we were there."). | |
| 8) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (explaining that when she referenced Puffy's car being in the parking lot, she was talking about the day at the Two Thousand [not Phi Hong]) | |
| 9) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55-56 (explaining she doesn't remember being at the Phi Hong, she only remembers being at the Two Thousand) | |
| 10) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59 ("I don't remember being at Phi Hong.") | |
| 11) Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15 ("I didn't know I was there.") | |
| 12) Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 16 (explaining that she does not remember being in the parking lot with the McDonalds). | |
| 324.  At 1:01 p.m., Nina insists "okay, okay," I was there, *but I don't remember*," pointing at her head as she insists: "I don't remember seeing Phi Hong in the parking lot where McDonald's was. Okay, I was there, but I don't remember. I wouldn't want | 324.    Undisputed. |

1797161.4

| | |
|---|---|
| to lie to you and, and making myself in bigger trouble." **Evidence** Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:01:28 – 13:01:50; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 18. | |
| 325. At 1:01 p.m., Nina was **crying** when she told Lord "okay, I was there but I don't remember," explaining that she didn't see McDonalds or Phi Hong. **Evidence** Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:01:28 – 13:01:50; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 18. | 325. Objection: *See* General Objections, Objections **A, D**. This fact is not supported by the cited evidence. The video shows that Nina is sniffling, not that she is crying. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was sniffling. |
| 326. During deposition, Nina testified that she was telling the truth when she told detectives she did not remember being in the parking lot of the Phi Hong or McDonalds. **Evidence** Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 275:1 – 275:9. | 326. Objection: *See* General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |
| 327. During deposition, Nina explained that she was crying and frustrated because she "repeatedly told him I wasn't there, but then he's telling me that I was there, so he is obviously not believing me." **Evidence** Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 273:3 – 273:21; p. 194:9 – 195:21 ("I said – because that time I was fed up. I remember telling the, "I don't remember being there, but I guess I was since you kept telling me that I was there, but I don't recall being there. That's how frustrated I was."). | 327. Objection: Disputed. While it appears *See* General Objections, Objections **A, D**. Nina's hidden meaning, disclosed more than a decade after the interview, is irrelevant. Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 328.    At this point in the questioning, Nina believed that she "was not going to go home any time soon if [she] kept telling them that [she] wasn't there, so [she] felt like [she] needed to tell them that [she] was there in order to go home."<br><br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 273:3 – 274:9. | 328.  Objection:    *See*    General Objections, Objections **A, D**. Nina's hidden meaning, disclosed more than a decade after the interview, is irrelevant. Without waiving the objections, the Officers    respond    as    follows: Undisputed    that    this    is    Nina's deposition testimony. |

**1:02 p.m.**

| | |
|---|---|
| 329.    At 1:02 p.m., immediately after she said she did not remember being at the Phi Hong, Detective Lord asked what happened after they came to the Phi Hong parking lot and Nina said: "I don't remember being at…" yet describes Tony stepping out of the car to talk to his TRG friends; she explained that "Aaron [was] not one of those gang members," and stayed in the car with Alex, Julie (and Nina).<br><br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:01:50 – 13:02:18; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 18. | 329.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that at or around 1:02 p.m. Nina described to Lord events that she said took place at the Phi Hong parking lot. |
| 330.    Nina's first admission of being at the Phi Hong occurred at 1:02 p.m.<br><br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) through 1:02 p.m. | 330.  Objection:    *See*    General Objections, Objections **A, D**. Vague as to "first admission." Also, misstates the evidence. In her first interview Nina admitted that they were at the poolhall with Puffy and others but then tried to backtrack and say it was a different day or was a different poolhall. Exhibit V, |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

| | |
|---|---|
| | transcript of interview #1 of Nina, pp. 34-38 (pp. 642-646 of the Officers Compendium). |
| 331.   In deposition, Nina was asked why, one minute, she would say she didn't remember being there, then immediately afterwards, attempt to describe something that happened at the Phi Hong; she responded: "It is because he totally disregarded my answer and kept asking questions; "I didn't know what else to say."<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 276:4 – 277:7. | 331. Objection:     *See*     General Objections, Objections **A, D**. Nina's hidden meaning, disclosed more than a decade after the interview, is irrelevant. Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |
| 332.   Nina finally agreed she was at the Phi Hong because she felt like she had no choice but to tell the detectives what they wanted to hear.<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 194:9 – 195:25 ("So I just decided yeah, I was there. Since you are telling me that I was there, okay, then I guess I was, but I repeatedly told you that I was not there.") | 332. Objection:     *See*     General Objections, Objections **A, D, E**. This is an improper fact because it contains multiple fact. Nina's hidden meaning, disclosed more than a decade after the interview, is irrelevant. Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |
| 333.   By the time Nina made the admission at 1:02 p.m., detectives had falsely claimed, at least 8 times, that they had irrefutable proof that Nina had been at the pool hall in the form of video surveillance, cell phone data, and statements from other witnesses (Aaron).<br>**Evidence**     1) Dkt. 73-2, Ex. 1(a); 8:40:40 – 8:41:09; Ex. 1(b), p. 33 (Detectives represent they have cell phone location evidence (showing | 333. Objection:     *See*     General Objections, Objections **A, D, E**. Also, Plaintiffs have improperly attempted to bury multiple facts within the cited evidence. All of those improper facts should be disregarded. Also, vague as to "detectives." Without waiving the objections, the Officers respond as |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

140

them at the billiard hall at Harbor and Westminster)..

2) Dkt. 73-2, Ex. 1(a) 8:55:36 – 8:55:51; Ex. 1(b), p. 47 (they show her the records so she will start "telling the truth.").

3) Dkt. 73-2, Ex. 1(a); 8:55:51; Ex. 1(b), p. 48 ("So are you going to tell me what's up or not? We already know. I already told you.")

4) Dkt. 73-2, Ex. 1(a); 8:57:14 – 8:57:15; Ex. 1(b), p. 49 (Danielson represents (again) that Aaron's cell phone records show him being present at the Phi Hong at the time of the shooting: "he was there and you were with him.")

5) Dkt. 73-2, Ex. 1(a); 9:05:38 – 9:05:46; Ex. 1(b), p. 57 (Detectives claim again that they have cell phone evidence establishing that Aaron was at the Phi Hong).

6) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:20 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 12-13 (Lord represented the police had video surveillance footage showing Aaron's car in the parking lot of "the poolhall.");

7) Dkt. 73-2, Ex. 1(a) 8:40:40 – 8:41:09; Ex. 1(b), p. 33 (Detectives represent they have video surveillance footage (showing them at the billiard hall at Harbor and Westminster)

8) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:22:35 a.m.; Ex. 1(b) (Transcript of Nina

follows: Undisputed that at various times during Nina's two interviews, Lord and other Garden Grove detectives had told Nina they had video evidence, cell evidence and witness statements putting she and Aaron at the Phi Hong poolhall.

1797161.4

| | |
|---|---|
| 4/20/11 Interrogation, Part 1), p. 15. ("Well, Aaron was there... He's already told us that. That was already discussed.") | |
| 334.   When Detective Lord asked what happened next, Nina said: "I don't remember being at ... well, I am trying to remember where we went after the Phi Hong." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:02:59 – 13:03:23; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 19. | 334.   Undisputed. |
| 335.   Detective Lord asked what happened when Tony got back in the car and Nina responded: "I think Tony just tells Aaron, let's just go to my house. As in Tony's house." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:03:54 – 13:04:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 20. | 335.   Undisputed. |
| 336.   After that, Nina thought they went to either M&M's or Tony's house. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:04:07 – 13:04:31; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 20. | 336.   Undisputed. |
| 337.   Nina did not know there were POV (rival gang members) at the Phi Hong. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:04:58 – 13:05:09; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 21. | 337.   Undisputed. |
| 338.   Nina could not describe where they were parked in the parking lot. | 338.   Undisputed. |

1797161.4

| | |
|---|---|
| **Evidence**      Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:05:09 – 13:05:30; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 21-22. | |
| 339.   When Detective Lord asked whether they turned on Harbor or Westminster, Nina replied; "I think Harbor. **Evidence**      Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:05:30 – 13:05:35; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 22. | 339.   Undisputed that she said this in response to that particular question; however, a few questions later she admitted to driving on Westminster after leaving the parking lot of the poolhall: <br><br> GGPD: Okay, but you never drove on Westminster to, out of the parking lot? <br><br> Nguyen: I don't think so. Westminster is by where, ah, I think we went that way to go to Tony's house. <br> Exhibit W, transcript of interview #2 of Nina, p. 22 (p. 693 of the Officers Compendium). |
| 340.   Lord asked and Nina reported that they did not follow cars out of the pool hall parking lot; she referenced her earlier statement about following cars to find POV (after leaving the park). **Evidence**      Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:05:35 – 13:06:02; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 22. | 340.   Objection: *See*      General Objections, Objections **A, D**. Also, misstates the evidence. Nina did not reference her earlier statement and did not reference the park. Nina stated: <br><br> GGPD: Okay, did you follow, follow the cars out of the parking lot down on Westminster. <br><br> Nguyen: Just to find the POV but not, after the pool hall, I don't think so. |

1797161.4

| | |
|---|---|
| 341.    In response to Lord's question, Nina stated a second time that they did not follow cars out of the parking lot of the pool hall.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:06:02; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 22. | 341.    Objection:    *See*    General Objections, Objections **A, D**. Also, vague as to "Lord's question." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 342.    She told Lord that she thought **they never drove on Westminster**, then retracted and said "ah, I think we went that way to Tony's house," explaining she thought they drove on Westminster to the freeway.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:06:02 – 13:06:33; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 22. | 342.    Objection:    *See*    General Objections, Objections **A, D**. Vague as to "she." Assuming Plaintiffs are referring to statements made by Nina, without waiving the objections, the Officers respond as follows: Undisputed that Nina said they drove on Westminster to get to Tony's house. |
| 343.    Lord asked a third time, and Nina stated a **third time** that they did not follow cars out of the parking lot.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:06:33 – 13:07:02 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 23. | 343.    Objection:    *See*    General Objections, Objections **A, D**. Misstates the evidence. In the cited portion of Nina's interview, Nina told Lord that "maybe" they followed a car out of the parking lot, but she didn't remember them saying they had to follow them. |
| 344.    Lord asks if she is "sure" because "it is real important;" Lord asks a **fourth** time whether they followed anybody out of the parking lot, such as "a car load of guys who were in car?"<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:06:33 – 13:07:02 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 23. | 344.    Objection:    *See*    General Objections, Objections **A, D**. Misstates the evidence. In the cited portion of Nina's interview, Nina told Lord that "maybe" they followed a car out of the parking lot, but she didn't remember them saying they had to follow them. |

1797161.4

| | |
|---|---|
| 345.   Nina offers: "Maybe, but I don't remember seeing, seeing following them or anything."<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:06:33 – 13:07:02 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 23. | 345.   Objection: *See* General Objections, Objections **A, D**. Vague as to "offers." Without waiving the objections, the Officers respond as follows: Undisputed that Nina said this. |
| 346.   Lord asks when they were driving on Westminster whether there were any other cars from the group of people who were at the park and wen to the Phi Hong: "Were there any other cars on the road when you were driving down the road?"<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:07:02 – 13:07:13; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 23. | 346.   Undisputed. |
| 347.   All she could remember was CJ driving the "opposite way."<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:07:13 – 13:07:28; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 24. | 347.   Objection: *See* General Objections, Objections **A, D**. Vague as to "she." Without waiving the objections, the Officers respond as follows: Undisputed that initially Nina said that CJ was driving the opposite way but later said there was a black car driving next to them and she thought it was CJ:<br><br>GGPD: Okay, but when you are driving down Westminster, is there any other cars driving down Westminster with you?<br>…<br>GGPD: Right by the side of you, by the back of you, the front of you? On the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| driver side.<br>…<br>NGUYEN: Uh-huh. I think one car but, I was,*** , I'm not sure if it was them.<br>GGPD: Okay, who was in that car?<br>NGUYEN: I think it was, I remember it was a black car. I think it was CJ's car.<br>Exhibit W, transcript of interview #2 of Nina, pp. 23-24 (pp. 694-695 of the Officers Compendium). | |
| 348.   Detective Lord asks a second time if there were "any other cars on the road," to which Nina responds: "I didn't see them. No."<br>**Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:07:22 – 13:07:28; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 23-24. | 348.   Undisputed; but see also, Lord's response to fact no. 347, above. |
| 349.   Lord asks a **third** time: "right by the side of you, by the back of you, the front of you? On the driver side? … Friends of friends?" Nina responds: ….I think one car, but …I'm not sure if it was them."<br>**Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:07:28 – 13:07:45; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 24. | 349.   Undisputed; but see also, Lord's response to fact no. 347, above. |
| 350.   Nina thought maybe she saw a black car that was CJ's.<br>**Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:07:45 – 13:07:55; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 24. | 350.   Undisputed that Nina remembered seeing CJ's car. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

146

1797161.4

| | |
|---|---|
| 351.   Detective Lord shows Nina a photo of the victim's SUV; she did **not** recognize it.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:08:22- 13:08:48; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 24-25 (indicating she did not see a "van" or anything). | 351. Objection:    *See*    General Objections, Objections **A, D**. Assumes facts not in evidence. Plaintiffs' cited evidence does not support their stated fact that Lord showed Nina a picture of the victim's SUV. Without waiving the objections, the Officers respond as follows: Undisputed that Lord showed Nina pictures of different cars and the only one she was able to identify was Puffy's car. |

**Farley Participated in Questioning (1:13)**

| | |
|---|---|
| 352.   At 1:13 p.m., Detective Farley takes over the questioning.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:13:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 30. | 352. Objection:    *See*    General Objections, Objections **A, C, D**. Without waiving the objections, the Officers respond as follows: Undisputed that a little after 1:13 p.m. Detective Farley asked Nina some questions. |
| 353.   Detective Farley asks Nina whether they left the poolhall on Harbor Boulevard; Nina responded "something…"<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:13:10 – 13:13:22; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 30. | 353. Objection:    *See*    General Objections, Objections **A, D**. Also, this mischaracterizes the evidence, which shows that Nina nods as though in agreement and says "Something like that …" (Plaintiffs' Exhibit 2(a), 13:13:10-13:13:25) |
| 354.   Detective Lord interjected: well, then she said Westminster.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video | 354. Objection:    *See*    General Objections, Objections **A, D**. Without |

147

1797161.4

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 13:13:22 – 13:13:26; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 30. | waiving the objections, the Officers respond as follows: Undisputed that Lord clarified that Nina, after saying they went down Harbor, then said they went down Westminster. |
| 355.    Detective Farley asks Nina whether they went out on Westminster: Nina paused (without answering); Farley asked if she knew where Westminster was and Nina answered "I am bad at my streets; I don't …". **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:13:39 – 13:13:55; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 31. | 355. Objection:    *See*    General Objections, Objections **A, D**. Also, misstates the evidence, which shows that when Farley asked Nina if she knew where Westminster was, she said "yeah." She then said, "I'm really bad at my streets …. But, yeah I think." (See Plaintiff's Exhibit 2(a), 13:13:39-13:14:00) |
| 356.    Farley tells Nina" I know where you guys were going. I know you guys were going West on Westminster." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:14:05 - 13:14:18; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 32 | 356: Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 357.    Even though Nina had just said she didn't know if Alex was making phone calls, Farley asked who he was calling, admonishing her: "don't even think about lying" … "you know who he called **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:14:18 – 13:14:41; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 32 | 357: Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to "even though" and misstates the evidence. When Farley said "don't even think about lying" Nina said, "I think he called" and then trailed off. Farley then said, "You know who he called" and Nina said, "I |

| | |
|---|---|
| | think he called CJ or one of those guys." Without waiving the objections, the Officers respond as follows: Undisputed that Farley said the cited words to Nina, but the fact omits what Nina said in between those words. |
| 358.   Even though Nina had previously said she didn't know if Alex was on the phone, she answered Farley: "I **think** CJ or one of those guys." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:14:18 – 13:14:41; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 32 | 358: Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to Plaintiffs' opening phrase "Even though Nina had previously said she didn't know if Alex was on the phone." Further, ignores the evidence that when Lord asked her, "Why did you leave that part out?" Nina explained, "I didn't remember." (See Plaintiffs' Exhibit 2(a), 13:14:50-13:14:53)    Without    waiving    the objections, the Officers respond as follows:    Undisputed that after first denying knowing Alex was on the phone, she then amended her answer and said he talked to CJ or one of those guys. |
| 359.   Lord asks Nina if they drove around a car that had a bunch of people in it, admonishing her to "*just be honest*,"; Nina said "Oh yeah, we were supposed to trap someone, I think." Lord asks: so what's the deal with trapping somebody? Nina answers, "So | 359: Objection:    *See*    General Objections,    Objections **A,    D**. Argumentative    as    to    Plaintiffs' descriptive    "admonishing    her." Without waiving the objections, the |

149

1797161.4

| | |
|---|---|
| they can't get away." **Evidence** Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:15:57 – 13:16:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 33. | Officers respond as follows: Undisputed. |
| 360.   Lord asked Nina to clarify the plan for trapping someone and Nina responded based on what she *observed* not what she *heard*: "it *looked* like they were trapping him because I seen cars, they drove here and they drove to the left." **Evidence** Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:16:08 – 13:16:25; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 34. <br><br>(Emphasis added; transcript is incorrect) | 360.   Objection: *See* General Objections, Objections **A, B, D**. Plaintiffs' argument that Nina's statement about the "trapping" was based on what she observed, not what she heard is not supported by the evidence. In responding to follow up questions Nina said that CJ told Tony about the plan and that she heard it when Tony was talking on the phone with someone. (See Plaintiffs' Exhibit 2(a),   13:16:08-13:17:05)   Without waiving the objections, the Officers respond as follows: Undisputed that Nina said she saw the cars trapping another car. |
| 361.   Nina emphasized – again – that she believed they were trying to trap a White Honda, *not* the Silver Lexus that Lord showed her in a photo. **Evidence** Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:17:06 – 13:17:28 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 35. | 361.   Objection: *See* General Objections, Objections **A, D**. Argumentative as to Plaintiffs' descriptive "emphasized – again." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 362.   When asked how she knew | 362.   Undisputed. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| which car to follow, Nina explained: CJ told Aaron to follow the black car. And that black, ah, **trapped the white car**. And then we, yeah, after that we lost them. And then we went to the Vietnamese restaurant.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:17:28 – 13:18:00 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 35. | |
| 363.    Nina stated that they "were just following CJ;" she twice denied they participated in trapping a car or moving into place to trap a car.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:18:20 – 13:18:48; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 36.<br><br>(Note, transcript is incorrect – see video). | 363.    Undisputed that Nina stated they were not part of the trapping but they were behind the car that was being the trapped. (See Plaintiffs' Exhibit 2(a), 13:18:20-13:18:53) |
| **Nina Draws A Diagram:** | |
| 364.    At 1:19 p.m., Detective Lord asks Nina to draw a picture of the way she saw the cars trapping the car.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:19:09 – 13:19:20; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | 364.    Undisputed that at 13:19:09, Lord said, "I want you to do me a favor." To which Nina replied, "Uh huh." Lord then said, "I want you to draw me a picture." And Nina again said, "Uh huh." Lord said, "Of the way you saw the cars." Nina again said, "Uh huh." Lord continued, "Trapping in the car." And Nina again said, "Uh huh." (See Plaintiffs' Exhibit 2(a), 13:19:09-13:19:19) |

1797161.4

| | |
|---|---|
| 365.    Before Nina began to draw, Detectives Lord told Nina to "draw Westminster" on the paper; she writes Westminster.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:19:19; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | 365.    Objection:    *See*    General Objections, Objections **A, D**. Misstates the evidence. Lord said, "Draw Westminster. Just draw a street." And Nina said, "uh huh" and then drew a line on the paper. Nina chose to draw Westminster. (See Plaintiffs' Exhibit 2(a), 13:19:19-13:19:25) |
| 366.    Nina wrote Westminster to comply with Detective Lord's instruction.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 126:22 – 127:9; 131:21 – 131:23; 163:9 – 163:15 (Q: And nobody forced your hand onto the page to draw the picture; is that right? A: "No, but Detective Lord did tell me to draw down 'Westminster' and draw down streets. He told me to write down 'Westminster,' so I complied and I drove – I drew these two lines, two – for the streets."); pp. 287:2 – 288:9 ("he told me to write down 'Westminster' I had no other choice but to write down anything else"). | 366.    Objection:    *See*    General Objections, Objections **A, D.** What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Also, misstates the evidence. Lord said, "Draw Westminster. Just draw a street." And Nina said, "uh huh" and then drew a line on the paper. (See Plaintiffs' Exhibit 2(a), 13:19:19-13:19:25) Nina chose to draw Westminster. It also ignores the fact that prior to this drawing Nina had said they had been on Westminster and they were on Westminster when they left the poolhall to go to Tony's house. (See Plaintiffs' Facts 339 and 342) |
| 367.    As she is drawing, Nina indicates where CJ's car and Aaron's car is.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video | 367.    Undisputed. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 13:19:20 – 13:19:52; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | |
| 368. Detective Lord inquires about lanes ("are these the lanes?") and she draws lanes.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:19:20 – 13:19:52; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | 368. Undisputed that Lord points to Nina's drawing and asks, "Are these the lanes?" Nina replies, "Yeah," and then draws some lines. |
| 369. As she is drawing, she explains "I think this …was Puffy" and "the white car was in front of us," and "CJ went further and then after we just lost them."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:19:52 – 13:20:13; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | 369. Undisputed. |
| 370. As she is drawing, she indicates "**and then the restaurant is somewhere over here,**" indicating that her drawing is intended to depict a street near where they turned into the restaurant parking lot.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:20:13 – 13:20:18; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | 370. Objection: *See* General Objections, Objections **A, D**. Argumentative as to Plaintiffs' descriptive phrase "indicating that her drawing is intended to depict a street near where they turned into a restaurant parking lot." Also, Plaintiffs have presented no evidentiary support for their interpretation. Without waiving the objections, the Officers respond as follows: Undisputed that Nina stated, "and then the restaurant is somewhere over here" while gesturing with her |

1797161.4

| | |
|---|---|
| | hand. |
| 371.   When Nina said "The restaurant was somewhere over here" she meant that the diagram was drawn to reflect somewhere near the restaurant: "Yes, so I was drawing Mile Square Park and if you would drive a little, maybe a few lights, the Vietnamese restaurant would be on your right, past Mile Square Park."<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 277:25 – 280:6. | 371.  Objection:     *See*     General Objections, Objections **A, D.** What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Without waiving the objections, the Officers respond as follows: Undisputed that this was Nina's deposition testimony. |
| 372.   ***Even as she was drawing the diagram/map***, she was explaining to the officers that it related to the portion in the night where they lost CJ near Mile Square Park and ended up at the Vietnamese restaurant.<br>**Evidence**     Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 277:25 – 280:6. | 372.  Objection:     *See*     General Objections, Objections **A, D**. What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Also, this is improper argument and opinion, not a fact. Up until she completed the drawing, Nina never said it depicted when they were leaving Miles Square Park. (See Plaintiffs' Exhibit 2(a), 13:19:09-13:21:00)   Also, Cynthia Sipaseuth, who was present at the park and at the poolhall, testified about the boxing in or chasing of a car as follows:<br><br>Q. By Mr. Feldman: Sure. Essentially, so you know exactly what I'm asking about, you've already described to us at great length when you drove out of the pool hall parking lot watching |

1797161.4

people that you described as your friends chase a car and then hearing what you thought was a shot; right?

A. Yes.

Q. My question is: was that the only time that night that any sort of chase happened?

A. Yes.

…

Q. From Stonecress Park to the taqueria, same questions. Did you see anything that looked like a chase?

A. No.

Q. Did you hear any gunshots?

A. No.

Q. From Stonecress to the taqueria, I don't know if I have that order correctly. When you left Stonecress Park, did you see anything that appeared to be a chase that you've described?

A. No.

(Trial testimony of Cynthia Sipaseuth, pp. P001709:15-23, P001710:15-24, Exhibit G to Lord's opposition.)

373.    When Nina drew the map, it was her understanding that she was drawing an area near Miles Square Park.

**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 132:3 – 132:5; 162:16 – 163:4.

373. Objection: *See* General Objections, Objections **A, D**. What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Also, this is improper argument and opinion, not a fact. Up until she completed the drawing, Nina never said it depicted when they were leaving Miles Square

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Park. (See Plaintiffs' Exhibit 2(a), 13:19:09-13:21:00) Without waiving the objections, the Officers respond as follows: Undisputed that this was Nina's deposition testimony. |
| 374.   When asked again about whether they were targeting a Lexus, Nina said "No." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:20:25 – 13:20:55; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 38. | 374.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 375.   Detective Lord asked Nina again – showing her a photo – "was that one of the cars that you saw blocked in" and "did you see that car get blocked in"; Nina unequivocally denied that the she saw them blocking the car in the photo. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:20:55 – 13:21:27; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 38-39. | 375.  Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to "unequivocally." Without waiving the objections, the Officers    respond    as    follows: Undisputed. |
| 376.   Nina unequivocally denied that Aaron blocked someone in or that Aaron helped block someone in "Q: You're sure about that? A: I am positive." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:22:24 – 13:22:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 39. | 376.  Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to "unequivocally." Without waiving the objections, the Officers    respond    as    follows: Undisputed. |
| 377.   Lord then falsely represented that detectives had video of "that" (of Aaron's car blocking in another car). **Evidence**    Dkt. 73-2, Ex. 2(a) (Video | 377.  Objection:    *See*    General Objections, Objections **A, D**. Also, |

1797161.4

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 13:22:24 – 13:22:38; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 39. | Plaintiffs' statement "of Aaron's car blocking in another car" is argumentative. Contextually, it also could have meant that the police have a video of the blocking in, which they did. Without waiving the objections, the Officers respond as follows: Undisputed that Lord told Nina the police had video of the blocking in. |
| 378.  Nina emphasized again that she did not remember blocking in any one's car and did not remember helping block in anyone's car. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:22:38 – 13:23:02; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 40 | 378. Objection:  *See*    General Objections, Objections **A, D**. Argumentative as to "emphasized again."  Without waiving the objections, the Officers respond as follows: Undisputed. |
| **Car Photo ID** | |
| 379.  Detective Lord showed Nina a still shot from the video surveillance and asked twice: that "looks a lot like Aaron's car, doesn't it?" **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:23:02 – 13:23:40; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 40. | 379. Objection:  *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 380.  "I remember CJ went on the opposite lane." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:23:02 – 13:23:40; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 40. | 380. Objection:  *See*    General Objections, Objections **A, D**. Also, vague because this statement has no context as to who said it to whom. Without waiving the objections, the |

1797161.4

| | | |
|---|---|---|
| | | Officers respond as follows: Undisputed. |
| | 381.   Detective Lord showed Nina a still shot from the video and Nina identified it as the white Honda she was talking about (the car she believed was chased). **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:24:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 41. | 381.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| | 382.   After flipping the page, Detective Lord shows Nina a different car and she thought it was Aaron's because she believed their car was "the only silver one." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:24:18 – 13:24:44; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 41. | 382.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| | 383.   As Nina understood it, Detective Lord showed photos and told Nina Nguyen they had video surveillance footage of Aaron's car at the crime scene. **Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 127:15 – 127:24. | 383.  Objection:    *See*    General Objections, Objections **A, D**. This fact is not relevant to the issue raised in Plaintiffs' partial motion What Nina explains more than a decade after the event is irrelevant to the issues to be decided in this motion. Without waiving the objections, the Officers respond as follows: Undisputed that this is Nina's deposition testimony. |
| | 384.   Detective Lord left the room at 1:24:51 p.m. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) | 384.   Undisputed. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 1:24:48 – 1:24:51. | |
| **Questioning Resumes (Farley):** | |
| 385.  At 1:31 p.m., Detective Farley enters again and resumes questioning.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:31:49. | 385.   Undisputed. |
| 386.  Farley acknowledges that he knew Aaron drove a Silver Honda Accord ("And so, Silver Honda Accord, that's right?").<br>Evidence    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:32:00  -  13:32:06;  Ex.  2(b) (Transcript   of   Nina   4/20/11 Interrogation, Part 2), p. 41. | 386. Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative   as   to   the   word "acknowledges." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 387.  Nina denied that Aaron was outside of the car talking to CJ at the park.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:33:42 – 13:34:17; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 44. | 387. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 388.  Followed CJ and lost them near Miles Square Park when CJ started driving fast in the opposite lane of traffic; Nina believes CJ was trying to trap another car.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:34:17   –   13:34:40;   Ex.   2(b) (Transcript   of   Nina   4/20/11 Interrogation, Part 2), p. 45. | 388. Objection:    *See*    General Objections, Objections **A, D**. Also, this fact is lacking in context and does not state who "[f]ollowed CJ." Because of the lack of context, the Officers are unable to admit or deny this fact. |
| 389.  Simple question: Were you at the  Phi  Hong.  Answer:  "I don't remember being there. But everyone said I was there, so I don't…"<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:34:42   –   13:35:01;   Ex.   2(b) | 389. Objection:    *See*    General Objections, Objections **A, D**. Also, this fact lacks context and does not say who asked the "simple question" and who |

| | | |
|---|---|---|
| 1<br>2<br>3 | (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 45. | gave the "answer." Because of the lack of context, the Officers are unable to admit or deny this fact. |
| 4<br>5<br>6<br>7<br>8<br>9<br>10 | 390.   When Detective Farley describes the parking lot of the Phi Hong (parking lot McDonald's, and a pool hall, auto parts store, shopping center"), Nina answered "Yeah."<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:35:01 – 13:35:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 45. | 390.  Objection:  *See*  General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | 391.  In saying "yeah" Nina did not indicate whether she was agreeing that she had been in the Phi Hong parking lot or whether she was simply familiar with Detective Farley's description of the area.<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:35:01 – 13:35:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 45. | 391.  Objection:  *See*  General Objections, Objections **A, B, D**. This is not a fact but is Plaintiffs' interpretation and argument. Further, the context of the question and response shows that Nina was agreeing they were in the parking lot with the McDonalds, poolhall, etc. When she said she didn't remember being at Phi Hong, Detective Farley said, "you don't remember being at Phi Hong" and then asked if she remembered being in the parking lot with the McDonald's, poolhall, etc. |
| 25<br>26<br>27<br>28 | 392.  Detective Farley shows Nina a map or aerial photo of the Phi Hong parking lot (photo labeled #6).<br>**Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:35:07 – 13:36:30; Ex. 2(b) | 392.  Objection:  *See*  General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 46 – 47. | |
| 393.  Nina turns the map around several times while Detective Farley helps orient her to the location.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:35:07 – 13:36:30; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 46 – 47. | 393.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 394.  Pointing to the map (or aerial photo) Nina tells detective Farley that she thinks we "turned this way" following CJ's black Camry from the parking lot, as he was "chasing some other car."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:35:07 – 13:36:30; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 46 – 47. | 394.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 395.  Using the map, Nina **again** indicates that they turned on ***Harbor***, not ***Westminster***.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:36:30 – 13:37:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 47 - 48. | 395.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said they exited onto Harbor but when Detective Farley asked how they then got onto Westminster, she showed him on the map which way they turned to get onto Westminster. (See Plaintiffs' Exhibit 2(a), 13:36:30 – 13:37:04) |
| 396.  Farley tells twice that he "knows" they went down Westminster; he has Alex's cell phone records. | 396.  Objection:    *See*    General Objections, Objections **A, D**. Also, as |

1797161.4

| | |
|---|---|
| **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:36:30 – 13:37:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 47 - 48. | Plaintiffs' own evidence shows, Alex Tran, who was interviewed that same morning, told the cops they had been driving up and down Westminster the night of the shooting. (Plaintiffs' Exhibit 59, pp. 2-3) Without waiving the objections, the Officers respond as follows: Undisputed that Farley told Nina that they knew Alex had been driving on Westminster the night of the shooting. |
| 397.  Farley asks if Nina "could have" turned the other way (Westminster, not Harbor) and she agrees they could have gone either way. **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:37:00 – 13:37:18; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 48 - 49. | 397.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said they exited onto Harbor but when Detective Farley asked how they then got onto Westminster, she showed him on the map which way they turned to get onto Westminster. (See Plaintiffs' Exhibit 2(a), 13:36:30–13:37:04) |
| 398.  At 1:37 p.m., Nina identifies the White Honda again. **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:37:00 – 13:37:18; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 48 - 49. | 398.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 399.  At 1:37 p.m., Farley again confirms they were driving in a Silver | 399.  Objection:    *See*    General |

1797161.4

| | |
|---|---|
| Accord.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:37:18 – 13:37:23; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 49. | Objections, Objections **A, D**. Also, misstates the evidence. Farley asks Nina if she and Aaron were in a silver Accord, and Nina said, "uh huh." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 400.  Farley tells her that Aaron's car should be in the surveillance video stills; Farley states "That Looks like an Accord" "a Silver Accord."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:37:25 – 13:37:4; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 49. | 400.  Objection:    *See*    General Objections, Objections **A, D**. Also, Plaintiffs omit the evidence that when Farley says, "That looks like an Accord." Nina responds, "Yes." When Farley then says, "Silver Accord?," Nina answers, "Uh-huh." Without waiving this objection, Lord responds as follows: Undisputed but incomplete. Plaintiffs omit the evidence that when Farley says, "That looks like an Accord." Nina responds, "Yes." (See Plaintiffs' Exhibit 2(a), 13:37:45-13:37:51) |
| 401.  At 1:38 p.m., in viewing the surveillance photos, Nina points out a black car; when Farley asks if CJ was in the right lane, she says "no," then describes how CJ went across lanes of traffic and was going the opposite direction of the car they were supposedly trying to trap.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) | 401.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

| | |
|---|---|
| 13:37:47 – 13:38:31; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 50. | |
| 402.  Detective Farley attempts to correct her: "This was on Westminster, this was not in the parking lot." **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:37:47 – 13:38:31; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 50. | 402.  Objection:   *See*   General Objections, Objections **A, D**. Also, argumentative as to "attempts to correct her" and misstates the evidence, which shows that Farley was asking for clarification that when she was talking about CJ switching lanes, she was talking about on Westminster and not the parking lot and Nina shook her head when he said the parking lot. |
| 403.  At 1:39 p.m., Nina confirmed that Tony (in Aaron's car) was NOT included in the photo array. **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:39:22 – 13:39:44. | 403.  Objection:   *See*   General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| **Aaron & Nina Together** | |
| 404.   At 1:40 p.m., Aaron is brought into the room with Nina. **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 1:40:30. | 404.  Undisputed that Aaron was brought into the interview room with Nina at around 1:40 p.m. |
| 405.   Nina says to Aaron: I told them many times that I don't remember being there." **Evidence**   Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:40:31 – 13:41:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 51-52. | 405.  Objection:   *See*   General Objections, Objections **A, D**. Plaintiffs have failed to produce the transcription of the portion of Aaron and Nina's conversation that took place in Vietnamese and in which Aaron told Nina to lie, "Say you were at home |

| | |
|---|---|
| | watching a movie and nothing else." Exhibit T, transcript of Nina/Aaron's conversation on 4/20/11, p. 4 (p. 599 to the Officers Compendium).Without waiving the objections, the Officers respond as follows: Undisputed that Nina said this. |
| 406.    At 1:41, Lord enters and shows Aaron Nina's diagram, telling Aaron: "She drew that picture and said that you…and Puffy and CJ were over there by the pool hall." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:41:37 – 13:42:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 52-53. | 406. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 407.    Nina immediately stated: "That wasn't by the pool hall. That was by Miles Square Park." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:41:37 – 13:42:11; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 53. | 407. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that as soon as Aaron was shown Nina's diagram, Nina said it was by Mile Square Park. |
| 408.    Nina told Lord: "Everyone is lying to you. We were never at the pool hall and you kept telling me that I was lying to you….I was not at the pool hall. I don't remember being at the pool hall." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:42:29 – 13:42:42; Ex. 2(b) (Transcript of Nina 4/20/11 | 408. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

1797161.4

| | |
|---|---|
| Interrogation, Part 2), p. 53-54. | |
| 409.    Nina says again that they were not at the pool hall and the picture was intended to depict something that happened near Miles Square Park.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:42:50 – 13:43:17; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 54. | 409.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that as soon as Aaron was shown Nina's diagram, Nina said it was by Mile Square Park. |
| 410.    Nina: "they got me confused and they were saying, oh yeah, you were at the pool hall. We know you were at the pool hall. I already told them I don't remember being at the pool hall.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:43:17 – 13:43:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 54. | 410.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| **Martin Continues Questioning without Aaron** | |
| 411.    At 2:25 p.m., Sergeant Martin enters the room and resumes questioning Nina.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:25:35. | 411.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 412.    Sergeant Martin reminds Nina that they had had a conversation "about honesty."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:25:35 - 2:25:53; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 61. | 412.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 413.    Martin suggested to Nina that GGPD had talked to Alex, Julie and Tony and they already admitted they were at the pool hall. ("Who do you | 413.  Objection:    *See*    General Objections, Objections **A, D**. Also, Plaintiffs' interpretation of Martin's |

166

1797161.4

| | |
|---|---|
| think we talked to young lady?") **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:26:14 – 14:26:48; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 62. | words are not supported by the context. After Martin asked, "Who do you think we talked to young lady?", Nina replied, "CJ and those." Martin then says, "We talked to a lot people. We talked to Alex and we talked to Tony. We talked to Julie. We talked to you. We talked to Aaron. We talked to a bunch of people." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 414.    It was untrue that Alex Julie and Tony (Tony Do) had already admitted they were at the pool hall; Alexander Tran denied being there; Julie Vu and Tony Do had not been interviewed. **Evidence**    Dkt. 73-2, Ex. 59 (Report re Alexander Tran Interrogation) pp. 4 – 6; Dkt. 73-2, Ex. 68 (Chart of Interview Tapes), pp. 1 – 3 (Tony and Julie not interviewed). | 414.    Objection:    *See*    General Objections, Objections **A, D**. Further, while Alex Tran denied being at the poolhall, he admitted to driving up and down Westminster with Aaron and Nina on the night of the shooting. (Plaintiffs' Exhibit 59, pp. 2-3) Further this ignores the evidence that Alex Tran, who was criminally charged for the murder and who was originally being tried as a co-Defendant with Aaron Nguyen, pleaded guilty to one charge stemming from the events occurring on March 20, 2011. Exhibit LL, criminal docket relating to Alex Tran, pp. 1, 2, 13, 31, 34 and 35 (pp. 31-33,    38-40    to    the    Officers |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Supplemental Compendium). Without waiving the objections, the Officers respond as follows: Undisputed. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 15) |
| 415.   Sgt. Martin falsely represented they had cell phone "pings" that placed Nina and Aaron at the Phi Hong: "We have phone pings that show you were there. We, we can put you…right there. Listen, we put you right there."<br>**Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:26:48 – 14:27:09; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 62. | 415.  Objection:  *See*   General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 416.   Sgt. Martin again accuses Aaron of lying.<br>**Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:27:18 – 14:27:42; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 63. | 416.  Objection:  *See*   General Objections, Objections **A, D**. Also, argumentative as to Plaintiffs' descriptive of "again accuses Aaron" and misstates the proffered evidence. Plaintiffs' evidence shows that Martin said, "[Aaron] has a problem with the truth. He remembers being here and not here. And he remembers being with these people, but not here. Doing this and that, okay and there is no reason for him to lie. There is no reason for you to lie." |
| 417.   Sgt. Martin tells Nina there is no reason for her to lie either, suggesting | 417.  Objection:  *See*   General |

| | |
|---|---|
| he believes she is lying.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:27:18 – 14:27:42; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 63. | Objections,    Objections    **A,    D**. Argumentative    and    lacking    in evidentiary support for the statement "suggesting he believes she is lying." Plaintiffs'    interpretation    is    not supported    by    the    context    of    the statement.    (See    fact    416,    above.) Without waiving the objections, the Officers    respond    as    follows: Undisputed that Martin told Nina there is no reason for her to lie. |
| 418.    Sgt. Martin tells Nina she "can't go sideways" because she is the one who wrote "Westminster" on the diagram.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:27:18 – 14:27:58; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 63-64. | 418.    Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 419.    Nina asked to explain why she drew the diagram and then tells them that it was supposed to depict something "near Miles Square Park, not Westminster."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:27:58 – 14:28:26; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 64. | 419.    Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 420.    She told them she wrote Westminster: "Because it seems like that what all you guys wanted to hear."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:27:58 – 14:28:45; Ex. 2(b) | 420.    Objection:    *See*    General Objections, Objections **A, D**. Further, the evidence shows that prior to Nina drawing    the    picture    and    writing |

| | |
|---|---|
| (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 64. | "Westminster" on it, Nina said in her interview that she and Aaron and Tony had been in the parking lot of the poolhall and that they left to go to Tony's house and that when they left the drove on Westminster. Then, after she said they had been on Westminster, Lord said "I want you to draw me a picture. … Of the way that you saw the cars." And Nina said "okay." Lord then said, "Draw Westminster, just draw a street." (See Plaintiffs' Exhibit 2(a), 13:19:09-13:19:25; see also Exhibit W, transcript of Nina interview #2, pp. 22-23, 37, 64 (pp. 693-694, 708, 735 to the Officers Compendium). Nina chose to draw Westminster. Without waiving the objections, the Officers respond as follows: Undisputed that Nina said this. |
| 421.   Nina continues: "And I tell you guys…over and over that I was never there. I don't remember being there." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:28:38 - 14:28:45; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 64-65. | 421. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 422.   Sgt. Martin incorrectly asserts that Nina was the first person to introduce the words "Phi Hong" when it was, in fact, Det. Lord who introduced the name by showing Nina a | 422. Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative    as    to    "incorrectly |

| | |
|---|---|
| photo of the Phi Hong sign.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:28:45 – 14:29:00; Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p 35. | asserts." Plaintiffs' assertion that Lord was the first one to mention Phi Hong when he showed the picture to Nina is lacking in evidentiary support. Without waiving the objections, the Officers respond as follows: Undisputed that Martin made the statement. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 32) |
| 423.    Sgt. Martin tells Nina to be honest because "one day you are going to be a mother."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:28:45; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 65. | 423.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 424.    When Sgt. Martin said "one day you are going to be a mother," Nina believed that he was trying to scare her.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 288:23 – 289: 5( He was trying to scare me or something, that I might go to jail if I – yeah, I believe he was trying to scare me and wanted me to admit being at the Phi Hong). | 424.  Objection:    *See*    General Objections, Objections **A, D**. Further, what Nina explains more than a decade after the event as to her thoughts about Martin's statement to her also is irrelevant to the issues to be decided in this motion. Without waiving the objections, the Officers respond as follows:  Undisputed that this was Nina's testimony. |
| 425.    Sgt. Martin tells Nina she is lying for Aaron ("why would you lie for him?") because she is afraid of Aaron.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video | 425.  Objection:    *See*    General Objections,  Objections **A, D**. Also, Plaintiffs' fact misstates the evidence |

171

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 14:29:45 -14:30:00 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 65-66. | they cite, which shows that Martin asked "why" Nina would lie for Aaron. Without waiving the objections, the Officers respond as follows: Undisputed that Martin asked Nina why she would lie for Aaron. |
| 426.    Nina denied she was afraid of Aaron. (Martin: You are afraid of this guy; Nina: "No I am not.") **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:29:45 -14:30:00 ; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 65-66. | 426. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 427.    Martin tells Nina "you could be I serious crap too, young lady. I told you that." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:30:00 – 14:30:20; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 66. | 427. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 428.    Martin insists that Nina and Aaron are being dishonest "Because you and him have an issue with the truth." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:30:27 – 14:30:31; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 67. | 428. Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to "insists." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 429.    Nina again denies they were at the Phi Hong: "I told you from the beginning that I don't remember being at the Phi Hong. And you guys kept telling me that everyone's been telling you guys that we were at the Phi Hong." | 429. Objection:    *See*    General Objections, Objections **A, D**. Also, this fact is contradicted by Plaintiffs' own evidence that Nina said, "I don't remember." Without waiving the |

1797161.4

| | |
|---|---|
| **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:30:41 - 14:30:51; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 67; Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 298:12 – 299:6 (at 2:30 p.m., Nina told Sgt. Martin that she did not remember being at the Phi Hong). | objections, the Officers respond as follows: Undisputed that Nina said she didn't remember being a Phi Hong. |
| 430.    Martin falsely represents to Nina that Aaron's phone "pings at Harbor and Westminster." **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:32:30 – 14:32:47; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 69. Dkt. 73-2, Ex. 106, Peter Vi Trial Testimony, p. 1692:7 – 1692:22 (10-15 minute drive); Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, pp. 1282:26 – 1283:2 (Lord knew about it prior to Aaron's interview); Dkt. 73-2, Ex. 102, Bruce Linn Trial Testimony, p. 1598:15 – 1598:22 (no usage events from 1:58 a.m. until hours after the incident). | 430.  Objection:     *See*     General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 431.    Martin falsely represents to Nina that they have video surveillance footage of Aaron's car at Harbor and Westminster. **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:32:30 – 14:30:47; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 69. | 431.  Objection:     *See*     General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 432.    Martin insists: "We don't need people to tell us that you and your boyfriend were there. Because we have technology, we have video, and a phone…Absolute proof." **Evidence**     Dkt. 73-2, Ex. 2(a) (Video | 432.  Objection:     *See*     General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

173

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 14:30:47 – 14:33:00; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 69. | |
| 433.    Nina denies they were at the Phi Hong: "Okay, you guys have proof, but I don't remember being there."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:33:00 – 14:33:05; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 69. | 433.    Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed Nina said "I don't remember" being at Phi Hong. |
| 434.    Martin suggests that it is too late for Aaron to avoid consequences "he's twenty-six years old, he made his choice" but Nina might be able to save herself "you're still young enough to have a life."<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:33:14 – 14:33:39; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 70. | 434.    Objection:    *See*    General Objections, Objections **A, D**. Further, Plaintiffs' interpretation of Martin's statement to Nina is not supported by the evidence. Without waiving the objections, the Officers respond as follows: Undisputed Martin said the quoted words. |
| 435.    At 2:33 p.m., Nina is crying.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:33:55. | 435.    Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina starts sniffling at around this time. |
| 436.    Martin suggests that Nina could be charged with conspiracy to murder (explaining conspiracy, emphasizing "You are in one of those cars, young lady.")<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:33:55 – 14:35:41; Ex. 2(b) (Transcript of Nina 4/20/11 | 436.    Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to "emphasizing." Further, misstates the evidence. Martin never used the word "murder." Without waiving the objections, the Officers |

174

1797161.4

| | |
|---|---|
| Interrogation, Part 2), p. 70-71. | respond as follows: Undisputed that Martin mentioned conspiracy but never used the word murder or even implied it. |
| 437.    Martin asks how Aaron got lost, and Nina explains: "..CJ was driving really fast. He was cutting lanes, going opposite side. Aaron…[agreeing with Martin, didn't do that so they got separated]." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:37:30 – 14:37:57; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 73-74. | 437.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 438.    Martin tells Nina they have proof that they ended up at Harbor and Westminster after they reconnected to the group. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:37:57 – 14:38:33; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 74. | 438.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 439.    Martin tells Nina they have cell phone evidence that puts her phone and Aaron's phone at Harbor and Westminster. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:37:57 – 14:38:33; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 74. | 439.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 440.    Martin tells Nina they have video evidence of Aaron's car at Harbor and Westminster. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:37:57 – 14:38:33; Ex. 2(b) | 440.  Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

| | |
|---|---|
| (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 74. | |
| 441.    Martin insists to Nina: "All you have to say is 'yeah, we were here." **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:39:20 – 14:39:33; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 76. | 441.   Objection:   *See*   General Objections, Objections **A, D**. Argumentative as to "insists." Without waiving the objections, the Officers respond as follows: Undisputed Martin said this to Nina. |
| 442.    Martin tells Nina again that they "know" Aaron's car and his phone were at the Phi Hong. **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:39:30 – 14:39:35; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 76. | 442.   Objection:   *See*   General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 443.    Nina again denies any memory of being "by the McDonalds" [near Harbor and Westminster]. **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:39:48 – 14:39:58; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 76. | 443.   Objection:   *See*   General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 444.    Nina insists she is being one hundred percent honest. **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:40:07; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 76. | 444.   Objection:   *See*   General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 445.    Sgt. Martin then drew a diagram for Nina showing how the cars blocked in the victim car and the shooting occurred. Nina asks: "is that what happened." **Evidence**     Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:41:08 – 14:41:22 Ex. 2(b) | 445.   Objection:   *See*   General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |

1797161.4

| | |
|---|---|
| (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 78. [not depicted on transcript]. | |
| 446.    At 2:43 p.m., Martin announces "young lady…I am done" .. I don't know what we are going to do with you." **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:42:55 - 14:43:35; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 79. | 446. Objection:    *See*    General Objections, Objections **A, D**. Also, argumentative as to "announces." Without waiving the objections, the Officers respond as follows: Undisputed. |
| 447.    Nina is crying at 2:43 and continues crying for several minutes **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:43:40- 14:46:01. | 447. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 448.    At 3:00 p.m., Martin and Lord return, and ask if "Troubles" is Tony?; Nina says yes. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 15:00:53 – 15:01:14; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 80. | 448. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 449.    Detectives show Nina a photo and ask if it is Tony; she denies it is Tony, explaining that the Tony to which she is referring is fatter and older. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 15:01:10 – 15:01:42; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 80-81. | 449. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 450.    Detective Lord asks if "Tony" was the one he showed her earlier in the photos; Nina denied, explaining that was another Tony. **Evidence**    Dkt. 73-2, Ex. 2(a) (Video | 450. Objection:    *See*    General Objections, Objections **A, D**. Without waiving the objections, the Officers |

1797161.4

| | |
|---|---|
| #2 of Nina Nguyen Interrogation) 15:01:42 15:01:48; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 81. | respond as follows: Undisputed. |
| 451.  The tape ends at 3:25:53 p.m.; Nina is still in the room.<br>**Evidence**  Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 15:25:53. | 451.  Objection:  *See*  General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed. |
| **Youth as Risk Factor for False Confession** | |
| 452.  Nina's had turned 17 years old just 4 days before the interview; her birthdate was 4/16/1994<br>**Evidence**  Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 2; Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 13. | 452.  Objection:  *See*  General Objections, Objections **A, D**. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was 17 at the time of her interview by Garden Grove police, but it also is undisputed that she and Aaron had been dating for a year at that time and that they regularly attended parties together on weekends. *See* Exhibit B, Appellate opinion, Dissent, p. 5 (p. 94 of the Officers Compendium); Exhibit JJ, Nina's depo, 73:5-10, (p. 20 of the Officers Supplemental Compendium). (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 129) |
| 453.  Youth is a substantial risk factor for involuntary confessions.<br>**Evidence**  Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 7, 21 (Nina's vulnerability to coercive | 453.  Objection:  *See*  General Objections, Objections **A, D, E**. This is an improper fact that contains multiple |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| interview tactics was increased because she had just turned seventeen, was in high school, had never been in trouble before and was questioned without a parent or interested adult present); Dkt. 73-2, Ex. 203 (Boan 9-11-2023 Rebuttal Report) p. 13 (The risk of false confession depends on both the interrogation techniques used and the specific characteristics of the person being interrogated… Among homicide detectives, it is widely understood that interrogations of minors must be undertaken with considerable care given the increased risk of false confession.") | statements buried as reference to the evidence. Also, it is irrelevant because Nina did not make a confession, voluntary or otherwise. Further, Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 33, 129, 139) |
| 454.     As Dr. Kassin explains, Detectives' statements to Nina that signaled she was not free to leave: "The quicker you tell me what happened, Nina, the quicker you can go home" communicated quite clearly, and in sharp contradiction to their initial "free to leave" advisement, that Nina was not free to terminate the session or leave without detectives' permission. <br> **Evidence**     Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 31. | 454.  Objection:  *See*  General Objections, Objections **A, C, D**. Vague as to "detectives." It is not clear who made the statements referenced or if any of the named Defendants made the statements; thus, this purported fact appears to be irrelevant. Also, Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 34) |
| 455.     During deposition, Nina testified that she felt "stuck" at the police station; she did not feel free to leave: "I felt stuck there. They didn't tell me anything. They didn't tell me it was safe for me to leave. I felt like I was supposed to stay there." <br> **Evidence**     Dkt. 73-2, Ex. 401 (Nina | 455.  Objection:  *See*  General Objections, Objections **A, D, E**. This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Also, vague as to |

1797161.4

| | |
|---|---|
| Nguyen Dep. Tr.), pp. 187:10 – 187:20 ("If you don't fucking tell the truth, you are going to get in a lot of trouble, so you better tell the truth or you're going to be"…"or you're" I felt like I was stuck there at that point, and I wasn't allowed to leave until I was going to tell the truth, to them what was the truth."); 240:11 – 241:6 (Q: "…was it your understanding that you were free to leave…" A: "No, I felt like I was held there at that point because – the fact that he said, if you are going to tell the truth, the quicker you could leave, but I was telling them the truth the whole entire time and they kept questioning me and asking the same thing again and I kept giving them the same answers but to them it wasn't the truth, so I had to just go along with what they were saying in order for me to leave.") | the repeated use of "they." It is not clear if this includes the named Defendants, who are the only individuals that are the subject of this motion. Further, what Nina explains more than a decade after the event as to her feelings about the interview is irrelevant to the issues to be decided in this motion. |

| **Coercive Interview Techniques** | |
|---|---|
| 456.    In the view of police practices expert, Andrew Boan, Detectives spoke to Nina in a bullying, threatening, accusatory and intimidating manner. **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 26. | 456. Objection: *See* General Objections, Objections **A, D**. This is an improper ultimate conclusion disguised as a fact. The videos of Nina's two interviews speak for themselves. Also, vague as to "detectives." It is not clear if this includes Lord and Martin, the only two named Defendants who interviewed Nina. Further, Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, |

1797161.4

| | |
|---|---|
| | objection nos. 67, 82) |
| 457.        It was Nina's perception that the officers raised their voice at her at least several times.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 125:10 – 125:16. | 457. Objection:    *See*    General Objections, Objections **A, C, D**. Also, vague as to "officers." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Further, what Nina explains more than a decade after the event as to her feelings about the interview is irrelevant to the issues to be decided in this motion. |
| 458.        Detectives raised their voices at least three times during the first interview session: 8:22 a.m. ("Listen , you were seen in the car, with Aaron, at the poolhall; 8:47 a.m.; 9:07:55 – 9:08:29.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation); 8:22:00, 8:47:28; 9:07:55 – 9:08:29 (we've wasted almost an hour and we don't know any more now than when we started this interview). | 458. Objection:    *See*    General Objections, Objections **A, C, D** Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Further, Plaintiffs have miscited their supporting evidence. There is no timestamp of 8:22:00 on their Exhibit 2(a). Further, a review of the video of the first interview of Nina, which is what is referenced in this fact, shows that no officer yelled at Nina. |
| 459.        During the course of the two | 459. Objection:    *See*    General |

videotaped sessions, detectives told Nina more than 20 times that they did not believe her and/or that she was lying, making up stories, or concealing information.

**Evidence** (1) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:21:54 a.m.- 8:22:05; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 14 – 15 (Detective Lord tells her that he "know[s]" that she didn't go home because she was seen in the car, with Aaron, at "the pool hall.")

(2) Dkt. 73-2, Ex. 1(a) 8:22:39 – 8:22:58 a.m.; Ex. 1(b) p. 15 ( "lying about this could be a problem, so don't." "It is not a crime to be there" "but it is a crime to lie to us").

(3) Dkt. 73-2, Ex. 1(a) 8:22:58 – 8:23 a.m.; Ex. 1(b), p. 15-16.[3] (When Nina said she was trying to be honest, Detective Danielson said "no" "don't try, succeed" and "just tell us what you really know."

(4) Dkt. 73-2, Ex. 1(a) 8:23 – 8:23:36 a.m.; Ex. 1(b), p. 16. Detective Lord emphasizes "Okay, so stop beating around the bush…the quicker you just tell the truth about what happened, the quicker we can get you out of here.")

(5) Dkt. 73-2, Ex. 1(a) 8:27:06 – 8:27:10; Ex. 1(b), p. 20 ("We know what the truth sounds like…just tell us the truth.")

Objections, Objections **A, C, D, E**. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Without waiving the objections, the Officers respond as follows: Undisputed that both Lord and Martin told Nina on several occasions that they did not believe her and that she needed to tell the truth.

---

[3] Transcript is incorrect.

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

(6)     Dkt. 73-2, Ex. 1(a); 8:39:50; Ex. 1(b), p. 32 ("Okay. This is where I have a hard time believing that.")

(7)     Dkt. 73-2, Ex. 1(a); 8:39:54 – 8:40:03; Ex. 1(b), p. 32 ("you need to tell me the truth. Because I know for a fact that you and Aaron were there.")

(8)     Dkt. 73-2, Ex. 1(a); 8:41:36 – 8:42:03; Ex. 1(b), p. 34 ("It really doesn't take that long to remember things. It takes time to make up a story…You don't need to not tell us the truth, alright? … And I don't understand why you are trying to make up a story.")

(9)     Dkt. 73-2, Ex. 1(a); 8:46:33 – 8:47:08; Ex. 1(b)), p. 39 ("And I think that you're trying to tell us stuff that you think…I mean, this sudden loss of memory, it's just like my partner said 'If you remember stuff, you just know it and you just say it. And instead, you're sitting here trying to make stuff up so we don't find out who people are.")

(10)     Dkt. 73-2, Ex. 1(a); 8:52:26 – 8:52:44; Ex. 1(b), p. 44 ("do people get killed around you all of the time..it seems to me like it would be a pretty significant thing to occur in a person's life. You would remember where you were when it happened.")

(11)     Dkt. 73-2, Ex. 1(a); 8:57:15 – 8:57:31; Ex. 1(b), p. 49 (Nina explains again that she and Aaron were at the Vietnamese restaurant; detectives tell Nina she is "wrong" about being at the Vietnamese restaurant).

(12)    Dkt. 73-2, Ex. 1(a); 8:57:31 – 8:59:18; Ex. 1(b), p. 49 – 51 detectives lecture her about lying, leaving out some truth, partial honesty, and selective bad memory.)

(13)    Dkt. 73-2, Ex. 1(a); 9:06:10 – 9:06:42; Ex. 1(b), p. 57-58 ("It's a decision on your part to conceal information from us, It's not "you don't remember: …I really don't want [you] to use the word honestly in that sentence because that's not what you're being….I'd rather you tell me [you don't want to get Aaron in trouble] than beat around the bush.")

(14)    Dkt. 73-2, Ex. 1(a); 9:06:42 – 9:07:55; Ex. 1(b), p. 58-59 (Detectives continue to accuse Nina of "making up stories," and having "a selective bad memory," and lying).

(15)    Dkt. 73-2, Ex. 1(a); 9:07:55 – 9:08:10; Ex. 1(b), p. 59 (For "stop it, stop this game, stop this "I don't know, I can't remember, I've got a bad memory." Just tell us what happened for God sakes. You can tell us the truth and I'll be done asking you questions in like five minutes.")

(16)    (4x) Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:58:23 – 12:58:46; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15-16 ("You are ridiculous. You are a liar"; Nina protests: "I am honest", and Lord again says "You are a liar;" Nina asks "why would I lie straight to your face when you ask me over and over again," to which Lord responds: "You're a liar.

1797161.4

You and Aaron are liars.")

(20)    Dkt. 73-2, Ex. 2(a) 13:00:31 – 13:00:44; Ex. 2(b), p. 17 ( "But you need to tell the truth because the more you lie…the more you are going to get yourself in trouble. You are digging a hole for yourself.")

(21)    Dkt. 73-2, Ex. 2(a) 13:00:56 – 13:01:28; Ex. 2(b), p. 17-18. (Detective Lord tells Nina she is lying about where she was, insisting that people saw Nina at the poolhall, "in the car with Aaron" and she was awake, not asleep).

(22)    Dkt. 73-2, Ex. 2(a) 14:27:18 – 14:27:42; Ex. 2(b), p. 63 (Sgt. Martin tells Nina there is no reason for her to lie either)

(23)    Dkt. 73-2, Ex. 2(a); Ex. 2(b) p. 65-66 (Sgt. Martin tells Nina she is lying for Aaron ("why would you lie for him?")

(24)    Dkt. 73-2, Ex. 2(a) 14:30:27 – 14:30:31; Ex. 2(b), p. 67 (Martin insists that Nina and Aaron are being dishonest "Because you and him have an issue with the truth.")

| | |
|---|---|
| 460.    Throughout both video-recorded sessions, Nina repeatedly told detectives that she was being entirely honest with them.<br>**Evidence**    Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 15 ("Okay. But … I am trying to be…a hundred percent (100%) honest with you."); Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:43:10; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 35 | 460.    Objection:    *See*    General Objections, Objections **A, C, D, E**. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| (offering to take a lie detector test); Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15 ("I'm honest."); p. 61 ("…Aaron and I are being one hundred percent honest."); p. 76 (I'm being one hundred percent honest with you guys, you."). | buried in the cited evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina claimed she was being honest. |
| 461.    Detectives' accusations of lying had profound emotional effect on Nina.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 39:16 – 39:23 (Nina explained that she was in distress during her interrogation: "I was crying most of the time and both of the officers, detectives, kept telling me I was lying the whole entire time and there was nothing else I could do."); p. 139:6 – 139:16 (Nina confirmed that she felt intimidated when the officers kept telling her she was lying "even when I was crying and repeatedly told them I wasn't lying, they still didn't believe me. I begged and begged and begged and they didn't believe me."), 140:11 – 140:19, 143:6 - 1143:21<br><br>Ex. 401 (Nina Nguyen Dep. Tr.), p. 126:1 – 126:12 (Nina explained that she felt manipulated by the officers because they repeatedly accused her of lying even though she "kept telling the truth to them," causing her to begin to doubt whether her "answers were real anymore."), p. 268:2 – 268:22. | 461. Objection: *See* General Objections, Objections **A, C, D, E**. Also, vague as to "officers." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Also, Plaintiffs' descriptive of "profound emotional effect" is argumentative and is not supported by admissible evidence. Finally, what Nina explains more than a decade after the event as to her feelings about the interview is irrelevant to the issues to be decided in this motion. |
| **Coercive Interview Techniques - False Evidence Ploys** | |
| 462.    Dr. Saul Kassin opines: "In ways that were particularly egregious, detectives confronted Nina Nguyen with a litany of lies, the likely effect of | 462. Objection: *See* General Objections, Objections **A, C, D**. This is |

1797161.4

which was to make her feel trapped, confuse her, disorient her, and cause her to question her own memory. And whenever she sought to assert herself, they countered with the same ostensibly incontrovertible and objective evidence.

**Evidence** Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 26.

an improper ultimate conclusion disguised as a fact. Also, argumentative as to "particularly egregious" and "confronted." Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 36)

---

463.    Detectives falsely represented at least **10** times that they had cell phone GPS evidence that placed Aaron at the Phi Hong parking lot. (Lord's report describes none of these statements.)

**Evidence** 1) Dkt. 73-2, Ex. 1(a); 8:40:40 – 8:41:09; Ex. 1(b), p. 33 (Detectives represent they have cell phone location evidence (showing them at the billiard hall at Harbor and Westminster)..

2) Dkt. 73-2, Ex. 1(a) 8:55:36 – 8:55:51; Ex. 1(b), p. 47 (they show her the records so she will start "telling the truth.").

3) Dkt. 73-2, Ex. 1(a); 8:55:51; Ex. 1(b), p. 48 ("So are you going to tell me what's up or not? We already know. I already told you.")

4) Dkt. 73-2, Ex. 1(a); 8:57:14 – 8:57:15; Ex. 1(b), p. 49 (Danielson

463. Objection: *See* General Objections, Objections **A, C, D, E.** Also, vague as to "officers." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs have not identified if Lord or Martin made any of the statements listed in their evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told by various detectives that they had cell phone evidence that placed Nina and

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| represents (again) that Aaron's cell phone records show him being present at the Phi Hong at the time of the shooting: "he was there and you were with him.") | Aaron at the Phi Hong. |
| 5) Dkt. 73-2, Ex. 1(a); 9:05:38 – 9:05:46; Ex. 1(b), p. 57 (Detectives claim again that they have cell phone evidence establishing that Aaron was at the Phi Hong). | |
| 6) Dkt. 73-2, Ex. 2(a) 14:26:48 – 14:27:09; Ex. 2(b), p. 62 ("We have phone pings that show you were there. We, we can put you…right there. Listen, we put you right there.") | |
| 7) Dkt. 73-2, Ex. 2(a) 14:32:30 – 14:32:47; Ex. 2(b), p. 69 (Aaron's phone "pings at Harbor and Westminster.") | |
| 8) Dkt. 73-2, Ex. 2(a) 14:37:57 – 14:38:33; Ex. 2(b), p. 74 (Because we have technology, we have video, and a phone…Absolute proof.") | |
| 9) Dkt. 73-2, Ex. 2(a) 14:37:57 – 14:38:33; Ex. 2(b), p. 74 (Martin tells Nina they have cell phone evidence that puts her phone and Aaron's phone at Harbor and Westminster). | |
| 10) Dkt. 73-2, Ex. 2(a) 14:39:30 – 14:39:35; Ex. 2(b), p. 76 (Martin tells Nina again that they "know" Aaron's car and his phone were at the Phi Hong).<br>Lord's report describes none of these statements. Ex. 51 (Lord 4/20/22 Supp. Report). | |
| 464.       Detectives falsely represented 7 times that they had video surveillance | 464.    Objection:    *See*    General |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

footage that placed Aaron and Nina at the Phi Hong parking lot. (All omitted from Lord's report) **Evidence**    1) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:20 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 12-13 (Lord represented the police had video surveillance footage showing Aaron's car in the parking lot of "the poolhall.");

2) Dkt. 73-2, Ex. 1(a) 8:40:40 – 8:41:09; Ex. 1(b), p. 33 (Detectives represent they have video surveillance footage (showing them at the billiard hall at Harbor and Westminster);

3) Dkt. 73-2, Ex. 2(a) 13:22:24 – 13:22:38; Ex. 2(b), p. 39 (Lord then falsely represented that detectives had video of "that" (of Aaron's car blocking in another car);

4) Dkt. 73-2, Ex. 2(a) 13:37:25 – 13:37:4; Ex. 2(b), p. 49 (Farley states "That Looks like an Accord" "a Silver Accord.");

5) Dkt. 73-2, Ex. 2(a) 14:32:30 – 14:30:47; Ex. 2(b), p. 69 (video surveillance footage of Aaron's car at Harbor and Westminster);

6) Dkt. 73-2, Ex. 2(a) 14:30:47 – 14:33:00; Ex. 2(b), p. 69 (Because we have technology, we have video, and a phone…Absolute proof.");

7) Dkt. 73-2, Ex. 2(a) 14:37:57 – 14:38:33; Ex. 2(b), p. 74 (Martin tells Nina they have video evidence of Aaron's car at Harbor and

Objections, Objections **A, C, D, E**. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs have not identified if Lord or Martin made any of the statements listed in their evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told by various detectives that they had surveillance footage that placed Nina and Aaron at the Phi Hong.

1797161.4

| | |
|---|---|
| Westminster).<br>Lord's report describes none of these statements. Ex. 51 (Lord 4/20/11 Supp. Report). | |
| 465.    During the first interview, Detectives falsely told Nina that Aaron had admitted to being present at the Phi Hong parking lot.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:22:35 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 15. ("Well, Aaron was there… He's already told us that. That was already discussed.") | 465. Objection:    *See*    General Objections, Objections **A, C, D, E**. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs have not identified if Lord or Martin made the statements listed in their evidence.    Without    waiving    the objections, the Officers respond as follows: Undisputed that Nina was told that Aaron admitted being at the Phi Hong. |
| 466.    During the second interview, Detectives falsely represented that Julie, Tony and Alex had admitted to being in the Phi Hong parking lot.<br>**Evidence**    Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:26:14 – 14:26:48; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 62 ("Who do you think we talked to young lady?") | 466. Objection:    *See*    General Objections, Objections **A, C, D, E**. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

190

1797161.4

| | |
|---|---|
| | have not identified if Lord or Martine made the statements listed in their evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told that Julie, Tony and Alex admitted being at the Phi Hong. |
| 467.    Nina testified in deposition that she felt manipulated when they showed her photos of Aaron's car that were not his car.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 127:15 – 129:5. | 467. Objection:    *See*    General Objections, Objections **A, C, D**. Also, vague as to "they." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, what Nina explains more than a decade after the event as to her feelings about the interview is irrelevant to the issues to be decided in this motion. |
| 468.    Research shows that misinformation can taint people's visual perceptions, beliefs, and emotions; alter eyewitness memories; and lead innocent people to confess to crimes they did not commit.<br>**Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 10. | 468. Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 37) |
| 469.    Dr. Kassin explains: "Misleading post-event information – often far more subtle than the lies presented to Nina – can alter a | 469. Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion |

191

1797161.4

| | |
|---|---|
| witness's memory for past events, distant and recent, that they had observed and/or personally experienced… Across the board, these effects are found in adults; they are even greater in children." **Evidence** Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 26. | disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 38) |
| 470.    According to Dr. Kassin, the effects of misleading post-event information on memory for past events are even greater in children than adults; false evidence is particularly coercive when used on juvenile witnesses and suspects. **Evidence** Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 10 – 11, 26. | 470. Objection:    *See* General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 39) |
| 471.    These results are highly consistent with the developmental fact that adolescents exhibit greater tendencies toward compliance and suggestibility. **Evidence** Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 11. ("[d]evelopmental research shows that adolescents are more malleable than adults, more compliant in the presence of authority, more suggestible in response to misinformation, and often more limited in their comprehension of Miranda rights and how to invoke them.") | 471. Objection:    *See* General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 40) |
| 472.    Dr. Kassin explains that false evidence increases the risk of innocent people confessing: "The presentation of false evidence has also caused countless innocent people to comply | 472. Objection:    *See* General Objections, Objections **A, C, D**. This is an improper ultimate conclusion |

1797161.4

| | |
|---|---|
| with the demand that they confess to crimes they did not commit." <br> **Evidence**   Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 26. | disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 41) |
| 473.   In is Dr. Kassin's opinion that, in this case, "it appears that detectives knowingly deceived Nina about the evidence – multiple lies – told not just once but repeatedly, manufacturing 'facts' that appeared objective and incontrovertible." <br> **Evidence**   Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 26. | 473.   Objection:   *See*   General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 42) |
| 474.   In Dr. Kassin's opinion, "[t]hese were not more bluffs, hypotheticals, or innuendo. They were outright lies." <br> **Evidence**   Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 26. | 474.   Objection:   *See*   General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 43) |
| 475.   Dr. Kassin explains that: "Outright lies put innocent people at risk in two ways: (1) by causing them to feel trapped by the apparent weight of evidence and eliciting compliance by instilling a sense of inevitability and despair; and (2) by causing confusion and disorientation, sometimes leading them to question their own memories and at times internalizing a false belief | 475.   Objection:   *See*   General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, |

1797161.4

| | |
|---|---|
| in their own culpability." **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 10. | 44) |
| 476.    As Dr. Kassin explains, detectives did not just deceive Nina in words but also used visual props (Detective Lord opened with the red binder, which he described as "all the proof;" later Detectives purported to show Nina maps of cellphone GPS location data.") **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 29. | 476.    Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 45) |
| 477.    The use of visual props continued into the second session, where Nina was shown still-shots from video surveillance photos of the cars involved in the chase; without proof, detectives identified one of the cars in the image as Aaron's. **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 29. | 477.    Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "visual props" and "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 46) |
| 478.    While orally presented false | 478.    Objection:    *See*    General |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| evidence can cause innocent people to confess, research shows that an even greater risk exists when the lie is supplemented by false visual evidence." <br> **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 29. | Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, irrelevant because Nina did not "confess." Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 47) |
| 479.    Dr. Kassin opines: "The deceptions were unequivocal and relentless, oral and visual, leading Nina to search for an explanation as to why she did not recall the events as described to her. <br> **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 30. | 479.    Objection:  *See*  General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "deceptions," "unequivocal" and "relentless" and argumentative. It is not clear if this fact is addressing conduct by Lord or Martin as they are the only two named Defendants who interviewed Nina. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 48) |
| 480.    Dr. Kassin explains: Whereas "[m]isinformaiton affects the memories of adult witnesses and suspects who are not under duress…In this case, Nina was young, and hence vulnerable; she was respectful of authority, and she was under duress. Detectives exploited | 480.    Objection:  *See*  General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "detectives." It is not clear if this |

1797161.4

| | |
|---|---|
| these weaknesses." **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 30. | includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 49) |
| 481.    In law enforcement circles, it is widely understood that lying to witnesses can induce a false statement depending on the circumstances and risk factors. ' **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 26. | 481. Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 83) |
| 482.    Research shows that adolescents do not know that police can and will lie about evidence, which increases the risk that these misrepresentations will elicit false confessions. **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 22. | 482. Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "research shows." Plaintiffs' cited evidence is inadmissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 50) |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 483.    When the police told Nina they had evidence placing them at the Phi Hong, it was her understanding they had incriminating evidence.<br>**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 256:21 – 257:12, 286:4 – 286:23. | 483.  Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Also, vague as to "the police." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Finally, what Nina explains more than a decade after the event as to her feelings about the interview is irrelevant to the issues to be decided in this motion. Without waiving the objections, the Officers respond as follows: Undisputed that this was Nina's deposition testimony. |
| **Coercive Interview Techniques - Threats/Promises** | |
| 484.    As Dr. Kassin explains, statements that offer or imply leniency upon confession increase the risk of innocent persons confessing. The effects of post-event misinformation on memory for are even greater for youth, especially where they are under duress.<br>**Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), pp. 10-11. | 484.  Objection:    *See*    General Objections, Objections **A, C, D**. This is an improper ultimate conclusion disguised as a fact. Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 51) |
| 485.    Detectives tell Nina approximately 5 times that she can go home as soon as she tells the truth. | 485.  Objection:    *See*    General Objections, Objections **A, C, D, E**. |

1797161.4

(Omitted from Lord's report).

**Evidence**    (1) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:22:58 – 8:23 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 15-16.[4] (and "just tell us what you really know. So we can get you home and get you done."); (2) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:23 – 8:23:36 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 16 ("the quicker you tell me what happened, Nina, the quicker you can go home. Okay, so stop beating around the bush…the quicker you just tell the truth about what happened, the quicker we can get you out of here."); (3) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:23:37 – 8:23:44 a.m.; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 17 ("And the quicker you guys just say the truth, we'll get you out of here."); (4) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:06:42 – 9:06:51; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 58 ) ("the quicker you tell me…then you can get out of here."); (5) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:07:55 – 9:08:10; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59 (Just tell us what happened for God sakes. You can tell us the truth and I'll be done asking you questions in like five minutes.").

Lord's report describes none of these

Also, vague as to "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs have not identified if Lord or Martin made any of the statements listed in their evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told by various detectives that she could go home as soon as she told the truth.

---

[4] Transcript is incorrect.

1797161.4

| | |
|---|---|
| statements. Ex. 51 (Lord 4/20/11 Supp. Report). | |
| 486. At times detectives suggest she's "not in trouble" and at times that "she could be in serious crap too." **Evidence** Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:42:00; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 34 ("not in trouble"); Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:30:00 – 14:30:20; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 66 ("you could be I serious crap too, young lady. I told you that."). | 486. Objection: *See* General Objections, Objections **A, C, D, E**. Also, vague as to "suggest" and "detectives." It is not clear if this includes Lord or Martin as they are the only two named Defendants who interviewed Nina. Also, this is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Plaintiffs have not identified if Lord or Martin made any of the statements listed in their evidence. The evidence does not support the claim that Nina was told "at times" that "she could be in serious crap too." Plaintiffs have cited to a single statement of this without identifying who said it to Nina. Without waiving the objections, the Officers respond as follows: Undisputed that Nina was told by various detectives that she was not in trouble. |
| **Coercive Interview Techniques – Cumulative Effects** | |
| 487. During her deposition, Nina explained that she felt forced to say that she was at a location Phi Hong poolhall when that was untrue. | 487. Objection: *See* General Objections, Objections **A, C, D**. Also, |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

199

1797161.4

**Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 137:16 – 138:12 (Q: "…did you ever feel you were forced to tell officers that you were at a certain location that was not true?" A: "Yes, because I felt like they didn't believe me. I kept repeating the same exact thing they asked. They kept asking me the exact same thing, I answered with the same exact answer, and I felt like I had to just tell them what they wanted to hear in order for me to leave." Q: "What is it that you thought they wanted to hear?" A: "Agreeing that I was on Westminster or at Phi Hong on the day of the shooting when we weren't, and we were at a Vietnamese restaurant."); pp. 219:23 – 220:24 ("I felt like I was being forced to agree to them that we were at the pool hall and we were there…They repeatedly said that I was at the pool hall when I told them I wasn't. Every time I said, 'No, I wasn't at the pool hall,' they said 'Yes, you were.' Every time I would state something, they would jump in and say "so you heard the gunshots. So you were on Westminster. So you were at the Phi Hong'…"); pp. 223:1 – 223:14 ([Nina felt forced to agree that she was at the Phi Hong] because "Towards the end of the questioning that I was -- all I could say was that I was there so I could leave because the whole entire time that I was saying I wasn't and they wouldn't take that for an answer, so I felt like I had to say something that they wanted me to say in order for me to just leave because they weren't accepting anything else.").

vague as to "officers" and repeated use of "they." It is not clear if this includes Lord and Martin, who are the only individuals named as Defendants that interviewed Nina. Finally, what Nina explains more than a decade after the event as to her feelings about the interview is irrelevant to the issues to be decided in this motion.

1797161.4

| Misrepresentations in Detective Lord's Report | |
|---|---|
| 488.   Detective Lord drafted a 29 page report with an 18-page summary of the interview in a supplemental police report, which was forwarded to prosecutors. ("I request this supplemental report be used for the prosecution of Aaron Nguyen"). **Evidence**   Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report) p. 18. | 488.   Undisputed. |
| 489.   The report contains highly significant misrepresentations that, taken together, paint a materially misleading description of what transpired during her interrogation. **Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 28. | 489. Objection:   See General Objections, Objections **A, B, C, D**. Argumentative as to "highly significant misrepresentations" and "materially misleading" and vague as to "significant" and "materially." This also is an improper ultimate conclusion disguised as a fact. Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 84) Based on these objections, the Officers are unable to admit or deny this fact. |
| 490.   Lord's description of the first interview **falsely** states "She then told me she was down at the Phi Hong. She said Aaron NGUYEN parked his car right next to 'Puffy's' car in the parking lot, and they began to drink." (At no point during the first interview | 490. Objection:   See General Objections, Objections **A, B, C, D, E**. Argumentative as to "falsely." This is an improper fact because it contains multiple subparts/statements, many of |

1797161.4

did Nina Nguyen tell detectives that she was down at the Phi Hong; to the contrary she repeatedly denied it.) Lord's report omits that Nina told him that her reference to seeing Puffy in the parking lot of a poolhall was at 2,000 (Two Thousand) not Phi Hong; his report falsely states: "She then told me she was down at the Phi Hong. She said Aaron NGUYEN parked his car right next to 'Puffy's' car in the parking lot, and they began to drink." (At no point during the first interview did Nina Nguyen tell detectives that she was down at the Phi Hong; to the contrary she repeatedly denied it.); Nina directly told Lord that the day she saw Puffy in the parking lot of a pool hall, she was referring to Two Thousand (2,000).

**Evidence**    Dkt. 73-2, (Battles 9/22/23 Decl.), Ex. 51 (Lord 4/20/11 Supp. Report), p. 6-7; Dkt. 69, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:53:00- 8:53:25; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 45 ("Are you serious…I don't remember being there…Are you sure I was in the car? I don't remember being there.") ; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (explaining that when she referenced Puffy's car being in the parking lot, she was talking about the day at the Two Thousand [not Phi Hong])

them buried in the cited evidence. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 491.  Lord's report falsely states, that, during the first interview session: I showed Nina a picture of the Phi Hong Billiards and she admitted she was there with Aaron;" when shown a photo of the Phi Hong Billiard, Nina twice said she was not there.<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 6-7; Ex 1(b) (Video of Nina interrogation #1, 8:52:45-8:53:40. | 491. Objection:    *See*    General Objections, Objections **A, B, C, D**. Argumentative as to "falsely." This fact misstates the evidence. Lord's report does not say he showed Nina a picture and when she saw it she admitted she was there. The report states that Lord showed Nina a picture |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

of Phi Hong, which he did. This is not a false statement. Lord's report says Nina admitted she was there with Aaron. And Nina did, at times, admit to being at Phi Hong. This too, then, is not a false statement. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the

1797161.4

| | |
|---|---|
| | OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)<br><br>The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 492.   Lord Report pp. 3-7: Lord's report contains no reference whatsoever to Two Thousand (2,000) club, despite the fact that, when asked about being at a pool hall, Nina mentioned Two Thousand **at least** | 492. Objection:  *See*  General Objections, Objections **A, C, D, E**. This is an improper fact because it contains  multiple  subparts/statements |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

**seven times**.

**Evidence**    Dkt. 73-2 (Battles 9/22/23 Decl.), Ex. 51 (Lord 4/20/11 Supp. Report), p. 3-7.

1)    In responding to Lord's statement he knows they were at "the poolhall," Nina appeared visibly confused and said "Sir, I have a really bad memory, do you know what pool hall? Two Thousand, right?"? (8:14:50 – 8:14:54 a.m.).

Lord responds: "at Harbor and Westminster," to which Nina asks – again - (8:14:58) "Is it, Two Thous..?" [voice cutting off]

2)    When Detective Lord makes clear he is interested in her memory of "the pool hall" – on the day they met up with Puffy and parked next to him – Nina states that they met up at Two Thousand (2000) pool hall "with Ty."; Nina confirms again that "Ty" (i.e. Thai) was there, as well as his cousins, and that they went to someone's house afterwards so that Roger[s] could talk to Alex. Dkt. 69, Ex. 1(a) 8:46:11 – 8:46:33, 8:47:01 – 8:47:28; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 39, 40.

3)    In response to Detective Danielson's reference to the "billiard hall," Nina told him she was referring to Two Thousand Club, near Korea Plaza. Dkt. 69, Ex. 1(a); 8:52:00 – 8:52:26; Ex. 1(b) (Transcript), p. 44.

4)    When, after showing a photo of

buried in the cited evidence. Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges,

210

the Phi Hong, Lord redirects the conversation back to the day they are in the parking lot of the pool hall; Nina confirms that Puffy left after saying he had to do something; Nina confirms that she was referring to Two Thousand Club (2000), not Phi Hong. Dkt. 69, Ex. 1(a) 8:54:11 – 8:55:05; Ex. 1(b) (Transcript p. 46-47 ("no, we weren't at the Phi Hong, we were at Two Thousand")

5)   Nina tells them again, that she remembers being at Two Thousand, but does not remember being at Phi Hong. Dkt. 69, Ex. 1(a) 8:59:18 – 8:59:36; Ex. 1(b) (Transcript, p. 51. [transcript is incorrect]

6)   Nina told detectives, again, that when she described Puffy's car at the pool hall, she was referring to a different day at Two Thousand Club, not the day of the shooting and not Phi Hong. Dkt. 69, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 9:04:04 – 9:04:19; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55.

7)   When detectives claim they don't understand, Nina tries to explain again that she does not remember being at the Phi Hong, she only remembers being at Two Thousand. Dkt. 69, Ex. 1(a); 9:04:19 – 9:04:43; Ex. 1(b) (Transcript), p. 55-56.

throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4)   DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5)   Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was

211

present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | | |
|---|---|---|
| 1 | | no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |

| | | |
|---|---|---|
| | 493.   When Lord first introduces questions about a pool hall (8:14 a.m.), Nina twice asks if he's referring to Two Thousand. Later, she clarifies **seven times** that she remembers being at Two Thousand, on a different day, not Phi Hong.<br>**Evidence**   Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation): (1) 8:54:59 a.m. (after being shown photos, "No we weren't at the Phi Hong, we were at the Two Thousand.") [video | 493.   Objection:   *See*   General Objections, Objections **A, C, D, E**. This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made |

1797161.4

reference because this statement is omitted from the transcript; Ex. 1(a) (Nina Interrogation #1, Transcript): (2) Tr. P. 38 "Oh and I remember I think that day, we met up at Two Thousand (2000), we were in the pool hall and Ty) (Ty refers to "Thai," a friend of Aaron/Nina's from the victim group, by "that day" she is referring to day they were at a poolhall and Puffy was in the parking lot), (3) Tr. p. 44 ("I don't know the streets but it's Two Thousand, it's called Two Thousand Bill Billiards"), (4) Tr. p. 47 "We were just…just…no…we weren't at the [Phi Hong], we were at Two Thousand"…In response to the question about Where is Two Thousand, Nina answered "Two Thousand, …Yeh, Garden Grove…" Danielson clarifies that it is on Garden Grove Boulevard) – see the video, the transcript is incomplete in that it omits the words "Phi Hong"; (5) Tr. p. 51 (I thought we were at the Two Thousand; I don't remember us being at the Phi Hong); (6) Tr. p. 55 (I thought you meant the day we were at Two Thousand; I am getting that mixed up with the day of the shooting, indicating that the day they were at Two Thousand was a different day than the day of the shooting).; (7) Tr. p. 55-56. (I think I'm getting it mixed up with the day that we were with Puffy at Two Thousand; I remember being at Two Thousand, I don't remember being at the Phi Hong).

the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives

215

1797161.4

regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings

216

1797161.4

| | |
|---|---|
| | of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 494.   Lord omits Nina's description of playing pool inside the pool hall with Thai and his cousins (members of the victim group).<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 3-7; Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:47:01 – 8:47:28; 8:49:06 – 8:49:54, Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 40, 41-42. | 494.   Objection:    *See*    General Objections, Objections **A, C, D**. This fact is not relevant because the evidence shows Lord's report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:<br><br>          (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police

reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

220

1797161.4

| | |
|---|---|
| | sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 495.   Lord's report omits that Nina told Detective Lord directly that she was crying because Martin yelled at her. When Lord tells Nina she is crying because she admitted to being at the poolhall, Nina responded "But, cause, when I was crying cause he was in my face. He was pointing at me, he was, I don't know, and then." <br> **Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 11-18; Ex. 2, Video of Nina Interview #2, 12:57:23 – 12:57:44; Ex. 2(b) (Transcript of Interview #2), pp. 15-16. | 495. Objection:    *See*    General Objections, Objections **A, C, D**. The fact stated "Nina told Detective Lord directly that she was crying because Martin yelled at her" is not supported by the cited evidence, which shows Nina stated "he was in my face. He was pointing at me" but does not tell Lord that Martin "yelled" at her. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following: <br><br> (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both

224

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).

| | |
|---|---|
| 496. Lord's report omits that Nina told Aaron (on video, observed by officers): "That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie to them. But, I wasn't lying. I wasn't." **Evidence**    Dkt. 73-2 (Battles 9/22/23 Decl.), Ex. 51 (Lord 4/20/11 Supp. Report), p. 12-18; Ex. 2 (a), Video of Nina Interview #2; 13:49:03 – 13:49:44; Ex. 2(b) (Transcript of Interview #2), p. 58 ("That old guy was yelling at me, he was in my face. He was pointing at my face. He was like, you do not ever fucking lie to them. But, I wasn't lying. I wasn't.").[5] | 496. Objection: *See* General Objections, Objections **A, C, D, E**. Vague as to "officers." This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:     (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay |

---

[5] The transcript does not fully capture the portion of the exchange where Nina says she "was crying so much."

1797161.4

of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron

1797161.4

| | |
|---|---|
| | Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 497.   A reasonably trained detective would have included Nina's references to being yelled at, in her face, with profanity and finger pointing because it was relevant to the voluntariness of her statements.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 33. | 497. Objection:   See   General Objections, Objections **A, C, D**. This is an improper conclusion disguised as a fact. Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible(See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 85) |
| 498.   Lord's description of the second interview omits that Nina told Lord – three times before 1:02 p.m. – that she did not *remember* being at the Phi Hong.<br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 12-18.<br><br>First: Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:58:16 – 12:58:23; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15 (At 12:57, Nina again denied any memory of being at the Phi Hong: Q: "And now you are telling me you weren't there?" | 498.   Objection:   *See*   General Objections, Objections **A, B, C, D, E**. This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the |

1797161.4

A: "I didn't know I was there.")

Second: Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:59:07 – 12:59:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 16 "I promise you, just please believe me. I promise you. Okay, if we were there, the I was there. But I don't remember turning into the place and going to the park and parking at the McDonalds. I was sleeping…me and him were just sitting in the car and waiting for them to be ne with whatever they were doing.").

Third: Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:01:28 – 13:01:50; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 18 At 1:01 p.m., Nina insists "okay, okay," I was there, but I don't remember," pointing at her head as she insists: "I don't remember seeing Phi Hong in the parking lot where McDonald's was. Okay, I was there, but I don't remember. I wouldn't want to lie to you and, and making myself in bigger trouble.")

following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-

230

1797161.4

393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day

1797161.4

were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 499.   Lord's report states that Nina "would not explain further" how she knew that the victim's car was packed; this was **false** because Nina told Lord she learned this when Tony told Aaron. **Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 13; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Par 1), p. 54. | 499. Objection:    *See*    General Objections, Objections **A, B, C, D, E**. Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:  (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman

1797161.4

depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien

236

1797161.4

Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).

500.   Lord's report omits that, during the second video session, Nina's statements contradicting known facts and presenting obvious red flags that her admissions were unreliable.

**(part a)** Lord's report misleadingly portrays that Nina described an incident on Westminster by incorrectly stating that Nina described following other cars out of the Phi Hong parking lot. In fact, in response to Lord's leading questions, Nina stated 3 times they followed no other cars leaving the lot. When asked a fourth time, Nina said: "Maybe, but I don't remember seeing, seeing following them or anything." This was critical. To the extent Nina could not describe exiting with other cars onto Westminster, it suggested they were not part of the caravan involved in the chase.

**(part b)** The report states that Nina "initially" said they exited on Harbor Blvd. then changed to Westminster. This is technically true, but the report omits that Nina gave the wrong answer twice before she finally said, in response to Lord's repeated questioning, she thought they went on Westminster to the freeway to Tony's

500. Objection: *See* General Objections, Objections **A, B, C, D, E**. This is an improper fact because it contains multiple subparts/statements. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview

1797161.4

house. Lord asks yet again if there were other cars on the road – specifically suggesting maybe cars from Stonecress Park – and Nina responds that she could only remember CJ, driving the opposite direction in traffic. Lord asks yet again whether they were traveling with cars on the road – suggesting "right by the side of you, by the back of you, the front of you? On the driver side? – and Nina answers "Maybe one car, but I am not sure if it was them."

**(part c)**Also omitted from Lord's report were Nina's statements to Detective Farley indicating that she did not have a clear understanding of the location: At 1:13 p.m., Detective Farley asks whether they exited the Phi Hong parking lot on Harbor, Nina begins to answer "something…" when Lord interjects (telling Farley that she initially said Harbor, but then changed to Westminster). Farley then asks if Nina (even) knows where Westminster is; Nina responds "I am bad at my streets" indicating that she did not have a clear understanding of the location. (Lord's report omits Nina's statement indicating she wasn't sure about the location of Westminster).

**Part (d)** Detective Lord's report omits that Nina told Detective Farley again that she believed they exited on Harbor: At 1:35 p.m., Farley returns in another attempt to clarify. Farley asked Nina to demonstrate using a satellite photo/map how they exited the Phi Hong parking lot. Nina – again – gave a verbal description that contradicted

of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

key facts. Nina turns the map around several times and eventually indicates that they exited on Harbor, not Westminster. Farley then coaches her – insisting twice that he knows they exited on Westminster - and eventually gets her to agree they "could have" gone either way." Lord's report doesn't indicate that she – again – gave the wrong answer when asked about whether she exited on Harbor vs. Westminster.

**Evidence (part a)** Dkt. 73-2 (Battles 9/22/23 Decl.), Ex. 51 (Lord 4/20/11 Supp. Report) p. 14 (She said they were following other cars out of the parking lot, and they drove west on Westminster Ave., away from the Phi Hong Billiards). Dkt. 69, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:05:35 – 13:07:02; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 22-23.

**(part b)**
Dkt. 73-2 (Battles 9/22/23 Decl.), Ex. 51 (Lord 4/20/11 Supp. Report) p. 14 (She initially told me it was on Harbor Blvd., but then changed her story and told me they had left on Westminster Ave.); Dkt. 69, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:05:30 – 13:07:02; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 22.

**(part c)**
Dkt. 73-2 (Battles 9/22/23 Decl.), Ex. 51 (Lord 4/20/11 Supp. Report) p. 14 Dkt. 69, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:13:00 – 13:14:18; Ex. 2(b) (Transcript of Nina

not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1

4/20/11 Interrogation, Part 2), p. 30-32.

2

**(part d)**

3

Dkt. 73-2 (Battles 9/22/23 Decl.), Ex.

4

51 (Lord 4/20/11 Supp. Report) p. 14
Dkt. 69, Ex. 2(a) (Video #2 of Nina

5

Nguyen Interrogation) 13:35:07 –

6

13:37:18; Ex. 2(b) (Transcript of Nina
4/20/11 Interrogation, Part 2), p. 46-49

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven

1797161.4

| | | |
|---|---|---|
| 1<br>2 | | Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 3<br>4<br>5<br>6<br>7<br>8 | 501.   Lord's report states that he asked Nina whether they "participated in boxing in or trapping the cars; she responded by describing CJ and Puffy's car and agreed to draw a diagram.<br>**Evidence**     Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 14. | 501.   Undisputed that Nina agreed to draw a diagram. |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 502.   The above statement was **false** and misleading; Lord's report omits that Nina **twice** clearly stated they did not participate in boxing in a car.<br>**Evidence**     Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), pp. 14-15 ("I asked her if she or Aaron Nguyen participated in boxing in or trapping the cars. She told me they were driving on the street and 'CJ' was in front of them and 'Puffy's' car was also driving in another lane on Westminster Ave.") During her interrogation, Nina unequivocally denied that Aaron blocked someone in or that Aaron helped block someone in "Q: Did Aaron block someone in? A: No; Q: You're sure about that? A: I am positive." Dkt. 69, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:22:24 – 13:22:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 39. | 502.   Objection:   *See*   General Objections, Objections **A, C, D, E**. This fact is not vague as to "the above statement." There are 501 "above statements." This also is an improper fact because it contains multiple subparts/statements buried within the cited evidence. Finally, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:<br><br>    (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, |
| 28 | | |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N,

243

1797161.4

Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina

1797161.4

| | |
|---|---|
| | Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 503. Detective Lord's report indicates that Nina drew the diagram to depict the car chase on Westminster. He omits from his report that he told her to draw the word "Westminster." <br><br> **Evidence** Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 14, 15; Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:19:19; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 37. | 503. Objection: *See* General Objections, Objections **A, C, D**. Also, this fact misrepresents the evidence. Lord did not tell Nina to draw Westminster, he told her to draw Westminster or "just draw a street." Nina chose to draw Westminster. Further, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following: <br><br> (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police

246

1797161.4

officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 504.   He also omits that, as she is drawing the diagram, she indicates that she is sketching the part of the night where they lost CJ (near Miles Square Park) and went to the Vietnamese restaurant. "And the restaurant was somewhere over here," she said as she drew a circle on the right (13:20.13). **Evidence**     Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 14, 15; Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:20:13 – 13:20:18. | 504.  Objection:     *See*    General Objections, Objections **A, B, C, D.** Vague as to "he" and "she." Also, this fact misrepresents the cited evidence but is based solely on Plaintiffs' speculation. At no time while she was drawing the picture did Nina say that she was drawing the part of the night where they lost CJ near Miles Square Park. Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp.      374-375    to    the    Officers |

1797161.4

Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police

1797161.4

officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 505. In total, Lord's report omits the **16 (sixteen)** times Nina told detectives she had no memory of being at the Phi Hong.<br>**Evidence**    Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation) 8:52 - 9:11.<br><br>1 & 2) Dkt. 73-2, Ex. 1(a) (Video #1 of Nina Nguyen Interrogation); 8:53:00-8:53:25; Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 45 ("Are you serious…I don't remember being there…Are you sure I was in the car? I don't remember being there.")<br><br>3) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 47 (denying that they went to Phi Hong after Two Thousand and stating that she does not remember going to Phi Hong).<br><br>4) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 48 ("Can I please tell you why I know I wasn't in that car?"); Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), 293:5 – 293:14 (By, "can I tell you how I know I wasn't in that car?" Nina meant "Because I don't remember being at the Phi Hong").<br><br>5) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51 (Nina says she remembers being at the Two Thousand, not the Phi Hong).<br><br>6) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 51 (Nina says | 505. Objection:    *See*    General Objections, Objections **A, C, D, E.** V This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:<br><br>    (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>    (2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the |

253

1797161.4

she "had no clue" they were at the Phi Hong).

7) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (when Lord asks who went into the Phi Hong, Nina says she "never knew we were there.").

8) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55 (explaining that when she referenced Puffy's car being in the parking lot, she was talking about the day at the Two Thousand [not Phi Hong])

9) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 55-56 (explaining she doesn't remember being at the Phi Hong, she only remembers being at the Two Thousand)

10) Ex. 1(b) (Transcript of Nina 4/20/11 Interrogation, Part 1), p. 59 ("I don't remember being at Phi Hong.")

Before 1:02:

11) Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:58:16 – 12:58:23; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 15 (At 12:57, Nina again denied any memory of being at the Phi Hong: Q: "And now you are telling me you weren't there?" A: "I didn't know I was there.")

12): Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 12:59:07 – 12:59:32; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 16 "I promise you, just please believe me. I promise you. Okay, if we were there, the I was there. But I don't remember turning into the place and going to the

room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

park and parking at the McDonalds. I was sleeping…me and him were just sitting in the car and waiting for them to be ne with whatever they were doing.")

13): Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 13:01:28 – 13:01:50; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 18 At 1:01 p.m., Nina insists "okay, okay," I was there, but I don't remember," pointing at her head as she insists: "I don't remember seeing Phi Hong in the parking lot where McDonald's was. Okay, I was there, but I don't remember. I wouldn't want to lie to you and, and making myself in bigger trouble.")

14): Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:30:41 - 14:30:51; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 67 (Nina again denies they were at the Phi Hong: "I told you from the beginning that I don't remember being at the Phi Hong. And you guys kept telling me that everyone's been telling you guys that we were at the Phi Hong.");

15: Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:33:00 – 14:33:05; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 69 ("Okay, you guys have proof, but I don't remember being there.").

16): Dkt. 73-2, Ex. 2(a) (Video #2 of Nina Nguyen Interrogation) 14:39:48 – 14:39:58; Ex. 2(b) (Transcript of Nina 4/20/11 Interrogation, Part 2), p. 76.

audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).

1797161.4

506.   Detective Lord's report indicates there were three suspects who positively identified Aaron's car at the poolhall; this statement was incomplete and inaccurate.

**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report) p. 11.

506.   Objection:    *See*    General Objections, Objections **A, C, D**. Plaintiffs misstate the evidence. At page 11 of Lord's report, Lord states, "I told him I could believe if one person was lying, but there were now three people who were saying they had seen him in the parking lot, and he was there." Lord does not state that three people positively identified Aaron's *car* at the poolhall. Plaintiffs' also cite to no evidence to support their claim that "this statement was incomplete and inaccurate." Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 507. Detective Lord does not identify the three suspects by name, but he indicates they were the people interviewed by Detectives Gildea, Loffler and Vaicaro.<br>**Evidence** Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report) p. 11. | 507. Objection: *See* General Objections, Objections **A, C, D.** Also, this fact is not relevant because the evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium); |

1797161.4

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium) |
| | The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 508.   Police records confirm that, on 4/20/11, Detective Vaicaro interviewed Anthony Nguyen, Gildea interviewed Elvis Doan, and Loffler interviewed | 508. Objection:   *See*   General Objections, Objections **A, C, D.** Also, this fact is not relevant because the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

John Nguyen.

**Evidence**    Dkt. 73-2, Ex. 68 (Chart of Interview Tapes) pp. 1- 2.

evidence shows that the report was not relied on when DDA Feldman made the decision to prosecute Aaron Nguyen. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011,

participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 509.   Elvis Doan admitted being at the Phi Hong and going westbound on Westminster at the time of the shooting but did not identify Aaron as being present; only that he heard Aaron talking about the shooting at Tony Ngo's house after the shooting.<br>**Evidence**    Dkt. 73-2, Ex. 70 (Gildea 4/20/11 Elvis Doan Interview Report) p. 4, 11. | 509. Objection:    *See*    General Objections, Objections **A, C, D**. Plaintiffs evidence does not establish that Doan did not identify Aaron as being at the poolhall parking lot. Plaintiffs also have not provided any evidence as to what Gildea, who interviewed Doan, told Lord about that interview. (See also the Officers' separately    filed    Objections    to |

1797161.4

| | |
|---|---|
| | Plaintiffs' Evidence, objection no. 19) |
| 510.    John "Ryder" Nguyen, interviewed on 4/20/2011, believed Aaron was there, but said he didn't see him when the cars pulled out so he assumed he left before anything happened.<br>**Evidence**    Ex. 10(a) (John Ryder Nguyen Interrogation Video) 10:26:20 - . 10:27:00 ("… but I think he left before everything happened, because I didn't see him follow us or anything like that. But he met at the house though…But he ended up at the house?...Yeah, he ended up at the house out of nowhere"). | 510.    Objection:    *See*    General Objections, Objections **A, C, D**. Also, misstates the evidence. Plaintiffs have not submitted the entirety of Ryder's recorded interview; however, even in the short snippet provided by Plaintiffs Ryder unequivocally stated that after Stonecress Park both Aaron and Nina were in the parking lot of the poolhall (something Aaron denied and Nina stated she didn't remember) and although in this snippet he said he did not see Aaron and Nina follow them when they chased the rival gang's car, he ended up "at the house" afterwards (something Nina admitted they did but Aaron denied). Without waiving the objections, the Officers respond as follows:    Undisputed that Ryder unequivocally placed Aaron and Nina in the poolhall parking lot after they left Stonecress Park. |
| 511.    Anthony Nguyen misidentified Aaron's car as being a silver Camry.<br>**Evidence**    Dkt. 73-2, Ex. 69 (Anthony Nguyen Police Report (with Alan Au)) p. 16. | 511.    Objection:    *See*    General Objections, Objections **A, C, D.** It is irrelevant that Anthony identified Aaron's car as a silver Camry. DDA Feldman testified in his deposition that |

1797161.4



| | |
|---|---|
| | the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, Feldman depo, 64:15-65:10, 105:3-9, (pp. 15-17 to the Officers Supplemental Compendium). Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 18) |
| 512.  Anthony Nguyen also misidentified Aaron's car as a brown Honda Accord with a broken windshield.<br>**Evidence**    Dkt. 73-2, Ex. 69 (Anthony Nguyen Police Report (with Alan Au)) p. 18. | 512.  Objection:  *See*  General Objections, Objections **A, C, D.** It is irrelevant that Anthony misidentified Aaron's car. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, Feldman depo, 64:15-65:10, 105:3-9, (pp. 15-17 to the Officers Supplemental Compendium). Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, |

270

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | objection no. 18) |
| 513. Anthony Nguyen identified the only light color (not white) car on the surveillance footage stills as the girls' car (while also identifying the girls' car as a *black* Honda civic).<br>**Evidence**    Dkt. 73-2, Ex. 69 (Anthony Nguyen Police Report (with Alan Au)) pp. 18, 22. | 513. Objection:    *See*    General Objections, Objections **A, C, D.** It is irrelevant that Anthony identified Aaron's car as a silver Camry. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II Feldman depo, 64:15-65:10, 105:3-9, (pp. 15-17 to the Officers Supplemental Compendium). Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 18) |
| 514. Anthony Nguyen did not identify Aaron's car on the surveillance video footage stills.<br>**Evidence**    Dkt. 73-2, Ex. 69 (Anthony Nguyen Police Report (with Alan Au)) pp. 19 – 23. | 514. Objection:    *See*    General Objections, Objections **A, C, D.** It is irrelevant that Anthony identified Aaron's car as a silver Camry. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, Feldman depo, 64:15-65:10, 105:3-9, (pp. 15-17 to the Officers Supplemental Compendium). |

1797161.4

| | |
|---|---|
| | Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 18) |
| 515.   Anthony also stated he could not recall who was driving all of the vehicles or who was in the vehicles.<br>**Evidence**    Dkt. 73-2, Ex. 69 (Anthony Nguyen Police Report (with Alan Au)) p. 6. | 515.   Objection:  *See*  General Objections, Objections **A, C, D.** It is irrelevant that Anthony identified Aaron's car as a silver Camry. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, Feldman depo, 64:15-65:10, 105:3-9, (pp. 15-17 to the Officers Supplemental Compendium). Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 18) |
| 516.   He also stated that Alex was not at the scene.<br>**Evidence**    Dkt. 73-2, Ex. 7 (Anthony Nguyen Interview Audio) 45:18 – 45:44 ("he was never there.") | 516.   Objection:  *See*  General Objections, Objections **A, C, D**. Vague as to "he." Also, it is irrelevant that Anthony said Alex was not at the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | scene. The evidence shows that Alex Tran, who was criminally charged for the murder and who was originally being tried as a co-Defendant with Aaron Nguyen, pleaded guilty to one charge stemming from the events occurring on March 20, 2011. Exhibit LL, criminal docket relating to Alex Tran, pp. 1, 2, 13, 31, 34 and 35 (pp. 31-33, 38-40 to the Officers Supplemental Compendium). Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16; see also, Plaintiffs' Exhibit 7, 51:28-51:51) |
| 517.  GGPD officers discussed Anthony Nguyen identifying Alex as not being at the scene.<br>**Evidence**    Dkt. 73-2, Ex. 7 (Anthony Nguyen Interview Audio) 1:00:14 – 1:00:37 ("He knows he was a twin, but he says he wasn't there"). | 517. Objection:    *See*    General Objections, Objections **A, C, D**. It is irrelevant that Anthony said Alex was not at the scene. The evidence shows that Alex was criminally charged for the murder and pleaded guilty to one charge    stemming    from    events occurring on March 20, 2011. Exhibit LL, criminal docket relating to Alex Tran, pp. 1, 2, 13, 31, 34 and 35 (pp. 31-33,    38-40    to    the    Officers |

1797161.4

| | |
|---|---|
| | Supplemental Compendium). Further, Plaintiffs' evidence shows that Anthony Nguyen unequivocally identified Aaron as being at the poolhall. (Plaintiffs' Exhibit 69, p. 16, and Plaintiffs' Exhibit 7, 51:28-51:51) |
| 518.   Detective Lord could not say in his deposition whether police officers are permitted to falsify information in their police reports: When asked in deposition whether GGPD permits dishonesty in any aspect of a police officers job – aside from lying to witnesses – Sgt. Lord responded "I don't know." When asked if he agreed that GGPD requires, at the most basic level, truthful and accurate reporting, he responded "I don't understand what you mean."<br>**Evidence**    Dkt. 73-2, Ex. 413 (Mark Lord Deposition) p. 230:11-230:22. | 518.  Objection:    *See*    General Objections, Objections **A, C, D**. This fact is not relevant to the issues. DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17, (pp. 368, 369 to the Officers Compendium). DDA Feldman also testified that police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | Compendium). |
|---|---|
| **Nina's Diagram Contradicted by the Evidence** | |
| 519.    Detectives knew or should have known that Nina's diagram was an unreliable piece of evidence – generated through interview techniques they knew or should have known would yield unreliable evidence.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 23. | 519.  Objection:    *See*    General Objections,  Objections  **A,  C,  D**. Misstates  the  evidence,  which  shows that Nina drew the picture voluntarily. During the second interview of Nina, Lord said, "I want you to do me a favor."  To which Nina replied, "Uh huh." Lord then said, "I want you to draw me a picture." And Nina again said, "Uh huh." Lord said, "Of the way you  saw  the  cars."  Nina  again  said, "Uh huh." Lord continued, "Trapping in the car." And Nina again said, "Uh huh."  (See  Plaintiffs'  Exhibit  2(a), 13:19:09-13:19:19)  Further,  in  her deposition Nina stated that she held the pen and paper and no one at the police station held her hand on a pen and no one made her draw anything specific. (Nina depo, 131:11-20, Plaintiffs' Dkt. 73-2, Ex. 401) Further, Plaintiffs' fact is  not  supported  by  admissible evidence. Plaintiffs' expert report is not admissible.  (See  also  the  Officers' separately  filed  Objections  to Plaintiffs' Evidence, objection nos. 67, |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | 86) |
| 520.    Nina's own statements while drawing the diagram indicated that it did not depict something that happened at Harbor and Westminster: while drawing, she drew an arrow indicating that Aaron exited to the right where she verbally indicated where the restaurant was (the restaurant is over here; Detectives were aware that "the restaurant" was Thanh My and it was located near Bolsa and Bushard. **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 24; Dkt. 73-2, Ex. 101, Mark Lord Trial Testimony, pp. 1282:26 – 1283:2 (Q. It seemed like you actually then found evidence of Mr. Nguyen being at that area of Bolsa and Bushard; Correct? A. I knew that prior to doing the interview.") | 520.  Objection:    *See*    General Objections, Objections **A, C, D, E**. This is an improper fact because it contains multiple subparts/statements some of them buried in the cited evidence. Also, misstates the evidence. While Nina initially said they exited onto Harbor, when Detective Farley asked how they then got onto Westminster, she showed him on the map which way they turned to get onto Westminster. (See Plaintiffs' Exhibit 2(a), 13:36:30 – 13:37:04) Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 87) |
| 521.    Nina's diagram was factually incorrect in its placement of cars at the time of the shooting: By the time Nina was interviewed, Detectives knew that Puffy's car approached the victim's silver-colored Lexus SUV to its right, from the far-left lane, enabling the shooter to fire from the front passenger seat. Nina's diagram, however, placed Puffy to the right of the victim's car, not in the left lane, which could not be reconciled with what happened. | 521.  Objection:    *See*    General Objections, Objections **A, C, D, E**. This is an improper fact because it contains multiple subparts/statements. Also, vague as to "detectives." Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| **Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 38; Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 24. | Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 52) |
| 522.    Nina's description and diagram were incorrect in its description of the car being chased: During her interrogation, she described the car being chased as a "white Honda car;" in her diagram, she drew a box to represent the white Honda. Detectives were aware that the victim's car was not a white Honda, but instead, was a silver SUV.<br>**Evidence**    Dkt. 73-2, Ex. 200 (Dr. Saul Kassin 7/31/23 Rpt.), p. 38. | 522. Objection:    *See*    General Objections, Objections **A, C, D, E**. This is an improper fact because it contains multiple subparts/statements. Also, vague as to "detectives." Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 27, 53) |
| 523.    Detectives understood that Nina's description of the car being chased was incorrect and repeatedly tried to fix this discrepancy – even at one point showing her photos of the victim's car and asking if that was the car she was referencing; she did not budge and, even when repeatedly asked, could not identify the victim's car.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 24. | 523. Objection:    *See*    General Objections, Objections **A, C, D, E**. This is an improper fact because it contains multiple subparts/statements. Also, vague as to "detectives." Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 89) |
| 524.    The white Honda was not the car being chased; it was a car that belonged to someone in their group (Danny Tran) – and to the extent they | 524. Objection:    *See*    General Objections, Objections **A, C, D, E**. This is an improper fact because it |

1797161.4

| | |
|---|---|
| were following the white Honda, this account was consistent with their trying to follow friends near Miles Square Park (and losing them).<br><br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 24; Dkt. 73-2, Ex. 64 (Peter Vi Report), p. 23 (identifying White Honda Accord as part of Puffy's group); Dkt. 73-2, Ex. 72 (GSU Search Warrant Affidavit), p. 18 (same); Dkt. 73-2, Ex. 82 (Reynolds 3-22-12 Rept. re Danny Tran) pp. 2 (he drove a white Honda Accord on the night of the shooting); 12 (identifying the white vehicle on the surveillance stills as looking like his own). | contains multiple subparts/statements. Further, there is no evidence to support the argument that "this account was consistent with their trying to follow friends near Miles Square Park (and losing them). Further, Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objections nos. 17, 20, 22, 67, 90) |

### Reliance on Lord's Statements

| | |
|---|---|
| 525.    In his 4/20/2011 supplemental report, Detective Lord stated: "I request that this supplemental report be used for the prosecution of Aaron Nguyen."<br><br>**Evidence**    Dkt. 73-2, Ex. 51 (Lord 4/20/11 Supp. Report), p. 18. | 525. Objection:    Irrelevant but undisputed. |
| 526.    In deposition, Mr. Feldman was asked "…at the time that you file[d] a criminal complaint you would – in a case of this magnitude, at least, you would not necessarily have [had] all of the supplemental reports and records of the interviews that had been conducted…And you would have [had] to rely on essentially representations from the detectives working the case to determine whether [he] had sufficient evidence in the case to move forward in filing a complaint?" He answered: "**Precisely**."<br><br>**Evidence**    Battles 10/20/23 Decl., | 526. Objection:    *See*    General Objections, Objections **A, C**. Also, vague as to "detectives." It is not clear if this includes Lord and Martin or other, unnamed detectives. Also, this evidence in support of this fact was further clarified by DDA Feldman when he added, "[T]hroughout the case, I would be looking to verify who those people were and whether or not |

1797161.4

| | |
|---|---|
| Ex. 400 (Feldman Deposition Transcript), pp. 113:15 – 114:17. | they were competent to testify and what evidence I could use to show that as well." Exhibit N, Feldman depo, 114:25-115:3 (pp. 392-393 to the Officers Compendium). This fact is argumentative and does not show that the report was relied on when DDA Feldman made the decision to prosecute Aaron Nguyen and ignores DDA Feldman's additional testimony:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);<br><br>(3) While DDA Feldman might initially have relied on representations |

WOODRUFF & SMART<br>ATTORNEYS AT LAW<br>COSTA MESA

1797161.4

made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds

1797161.4

| | |
|---|---|
| | Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium) |
| | The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
| 527.    He also indicated that he would have specifically relied upon detectives' representations about whether other people had identified Aaron as being present at the Phi Hong parking lot.<br>**Evidence**    Battles 10/20/23 Decl., | 527. Objection: *See* General Objections, Objections **A, C**. Vague as to "he," "indicated" and "detectives." It is not clear if this includes the Defendants here. This fact irrelevant |

1797161.4

Ex. 400 (Feldman Deposition Transcript), pp. 113:15 – 115:3.

and ignores Feldman's testimony that he did not rely on police reports. DDA Feldman testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives

284

1797161.4

regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium). |
|---|---|
| 528. Deputy District Attorney Daniel Feldman testified that, in 2011, as the prosecutor, typically he would independently not raise any concern with the voluntariness of a witness's statement unless the defense had moved to exclude it, particularly where he lacked the full facts to assess the voluntariness of the statement.<br><br>**Evidence** Battles 10/20/23 Decl., Ex. 400 (Feldman Dep. Tr.), pp. 110:22 – 112:12 | 528. Objection: *See* General Objections, Objections **A, C.** Misstates Feldman's testimony. Regarding Nina's statements in her interviews about "he was in my face," Feldman testified as follows:<br><br>So if I had concerns when I'm filing a case, I try to be as concerned about everything as I can. But in a situation where someone is upset or crying or says, "Someone was in my face," is that enough for me to self-initiate a voluntariness inquiry? I don't think so, especially if I |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | knew the context as I did here. This is a young woman who I didn't believe had gang background, who is dating an older man who hangs around with much younger people who are related and in gangs, and she got upset, that makes sense to me. So her saying, "Someone got in my face," that wouldn't have - - that wouldn't have been something that I said, "Oh, we've got to stop here and investigate." I don't think I would have stopped for that. |
| | Plaintiffs' Exhibit 400, Feldman depo, 111:5-19. |
| | Also irrelevant because Aaron's defense counsel raised the issue of voluntariness of Nina's statements during Aaron's criminal trial. Exhibit Q, Excerpts from the criminal proceedings, P000379-380, P000547-550, P002738, P002746 and P003066, (pp. 441-449 to the Officers Compendium); Exhibit LL, criminal docket relating to Alex Tran, pp. 21, 24 (pp. 36-37 to the Officers Supplemental Compendium). |
| 529.    Heidi Rummel is an expert on prosecution practices.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 1-19. | 529. Irrelevant. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 140) |
| 530.    Heidi Rummel is a clinical | 530. Irrelevant. (See also the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| law professor at the University of Southern California Gould School of Law teaching in the Post-Conviction Justice Project.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 14. | Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 140) |
| 531.    Heidi Rummel has taught Criminal Law and the Post-Conviction Justice Project Seminar at the Gould School of Law.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 14. | 531.  Irrelevant.  (See  also  the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 140) |
| 532.    Between 1996 – 2005, Heidi Rummel worked as an Assistant United States Attorney in the US Attorney's Office for the Central District of California; between 1994 – 1996 Heidi Rummel worked as an Assistant United States Attorney in the US Attorney's Office for the District of Columbia.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 14, 15. | 532.  Irrelevant.  (See  also  the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 140) |
| 533.    In the opinion of prosecution expert Heidi Rummel, in making charging decisions, prosecutors rely almost exclusively on the representations of police officers as communicated in their police reports and in their verbal statements to prosecutors.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 5. | 533.  Objection:  *See*  General Objections, Objections **A, C, D**. This opinion  is  not  supported  by  the evidence in this case, particularly the testimony  of  the  prosecutor,  DDA Feldman,  who  testified  to  the following:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 141) |
| 534.    In the opinion of Heidi Rummel, "[p]olice reports are the primary vehicle by which police officers relay information to prosecutors and are the foundation of a criminal case. In making charging decisions, prosecutors rely on the completeness, accuracy and truthfulness of police reports to build the case, including (1) deciding what charges to file, (2) assessing whether there is reliable and admissible evidence to prove each element of each charged crime beyond a reasonable doubt, (3) making plea offers, (4) determining whether officers acted appropriately (e.g., whether they engaged in unprofessional or unconstitutional investigation techniques), (5) developing trial strategy, including which witnesses to call to testify, (6) anticipating and preparing for likely defenses, and (7) protecting the rights of the suspect/accused." **Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 7. | 534. Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>(2) During the second interview |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are

293

1797161.4

not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 142, 143) |
| 535.    In the opinion of Heidi Rummel, "[p]olice reports provide prosecutors with critical information; they are the primary record of all investigation activities, the documentation of police agency actions, and the source documents for criminal investigations. It is widely understood that the criminal judicial process cannot function without truthful and complete investigative reports. Police reports are the primary means by which prosecutors access the information required to initiate and to pursue criminal prosecutions. Police reports are also the primary means by which prosecutors disclose exculpatory information to the defense." **Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 7. | 535. Objection: *See* General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium); |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 144, 145, 146, 147)

1797161.4

536.    In the opinion of Heidi Rummel, police officers **are** "required to include a complete description of a witness interview, including potentially exculpatory information, in their police report, provided they also disclosed the recording of the interview."

**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 7.

536.    Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by

1797161.4

| | |
|---|---|
| | no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 148) |
| 537.    In the opinion of Heidi Rummel, "[e]ven if police reports constitute summaries, rather than verbatim transcripts that include every detail, the reports are expected to be truthful, accurate, objective summaries that capture all relevant facts, to ensure | 537. Objection: *See* General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

that all important facts relevant to an assessment of the case are communicated to the prosecutor."

**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 7.

Feldman, who testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N,

1797161.4

Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the

1797161.4

| | |
|---|---|
| | Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers' Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 149) |
| 538.      In the opinion of Heidi Rummel, "[i]t is particularly important that reports highlight or call attention to exculpatory information relayed in such interviews. Police are obligated to disclose any exculpatory information to the prosecutor." **Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 7. | 538. Objection:  *See*  General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>        (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews |

1797161.4

were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information

the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video);

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 150) |
| 539.    In the opinion of Heidi Rummel, "[i]n the context of a complex homicide investigation with dozens of witness interviews, it is especially important for prosecutors to be able to rely on the accuracy and completeness of police reports." <br><br> **Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 7-8. | 539.  Objection:    *See*  General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following: <br><br> (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 |

1797161.4

(pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

313

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and

1797161.4

| | |
|---|---|
| | Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 152) |
| 540.    In the opinion of Heidi Rummel, "[i]t may not be feasible for prosecutors to review complete video recordings for months or years after they are generated, after charging decisions have already been made and criminal proceedings instituted). Because prosecutors cannot be expected to sift through potentially hundreds of hours of videos to ensure they have made a correct charging decision, prosecutors rely on police officers to provide exculpatory evidence generated through interviews." **Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 8. | 540. Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:    (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);    (2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers'

1797161.4

| | |
|---|---|
| | separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 153, 154) |
| 541. In the opinion of Heidi Rummel, "[i]t goes without saying that prosecutors rely exclusively on police reports for accurate descriptions of witness interviews that were not recorded at all – including, for example, the unrecorded interview of Nina Nguyen by Sgt. Martin."; Because "[n]o transcript of the interview was prepared until September 2021," "DDA Feldman would have had to review hours of video footage to discover these references."<br>**Evidence**  Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 8. | 541. Objection: *See* General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);<br><br>(3) While DDA Feldman might initially have relied on representations |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343

320

1797161.4

to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 155, 158)

542.    In the opinion of Heidi Rummel, "[e]ven if the exclusion of exculpatory evidence from police

541.    Objection:    *See*    General Objections, Objections **A, C, D**. This

1797161.4

reports is considered permissible because the information is available elsewhere (i.e. a video recording), that is definitely not the case when, by excluding the exculpatory information, the report communicates a false and misleading description of events."

**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 8.

opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 141591) |
| 543.    In the opinion of Heidi Rummel, [i]t is a core obligation of the police to never provide false or misleading reports." **Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 8. | 543. Objection: *See* General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following: |

326

1797161.4

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227,

328

228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers' Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 160) |
| 544.    In the opinion of Heidi Rummel, [p]olice reports – heavily relied on by prosecutors, defense counsel, the court and often experts – must be complete, truthful, objective and unbiased.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 8. | 544.  Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have

331

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might

need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 161) |
| 545.    In the opinion of Heidi Rummel, [f]alsity by omission is equally egregious as falsity by affirmative misrepresentation.<br>**Evidence**    Dkt. 73-2, Ex. 204 (Report of Heidi Rummel, 9/11/23), p. 8. | 545. Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>    (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium); |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

336

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior

1797161.4

| | |
|---|---|
| | Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers' Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 162) |
| 546.    In the opinion of Heidi Rummel, "And while prosecutors have an independent obligation to assess the evidence they present at trial, when prosecutors receive police reports, particularly in the context of serious and complex cases, their default assumption is that the information contained within the report is truthful, accurate and reasonably complete." | 546.  Plaintiffs have not cited to any evidence in support of this fact. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 140, 163) |
| 547.    Plaintiff's police practices expert, Andrew Boan has 40 years of experience in law enforcement and worked for 31 years with the Miami Police Department, during which time he served in the ranks of patrolman through Lieutenant.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 4. | 547.  Irrelevant.    (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 67) |
| 548.    In the opinion of police practices expert, Andrew Boan, "[p]roper documentation in any type of criminal investigation is important; however, in a homicide investigation, it is crucial.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 27. | 548.  Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>(1) He was present in the Garden Grove police department for part of the |

338

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion,

after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio);

1797161.4

| | |
|---|---|
| | Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers' Compendium.) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 91) |
| 549.    In the opinion of police practices expert Andrew Boan, "reports are the foundation upon which the prosecution builds its case, and serve as prosecutors' primary source of information concerning what evidence is available, the names of witnesses, likely defenses, and other details by which to plan their strategy. Reports are also the principal source used by the courts, prosecutor, defense, and police managers to evaluate the thoroughness of a murder investigation." **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 27. | 549.    Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:  (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N,

Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 92, 93) |
| 550.    In the opinion of police practices expert Andrew Boan, reports "serve as a departmental historical record; as a management tool; an aid to officers testifying in court; and can guard against civil or related actions that may be brought against the officer or agency. Additionally, the investigative reports are typically the sole basis upon which a review of a murder investigation or a cold case investigation of an unsolved murder can be based years after a murder. **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 27. | 550. Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the

1797161.4

specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 94, 95) |
| 551.      In the opinion of police practices expert Andrew Boan, at the most basic level, the constitutional prohibition against falsifying evidence, requires, police officers to submit complete, truthful and accurate police reports, which is the primary means by which police relay information to the prosecutor. Beyond reporting, police officers are required to notify the prosecutor should false or unreliable evidence come to light at any time during a prosecution or trial." **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 34-35. | 551. Objection:    *See*    General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>        (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);<br><br>        (2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);<br><br>        (3) While DDA Feldman might |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L,

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the

1797161.4

OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 96, 97)

| | |
|---|---|
| 552.     In the opinion of police | 552.   Objection:   *See*      General |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

practices expert Andrew Boan, police "officers may **not** permissibly omit Brady information from police reports so long as they disclose the videotaped interview…. In the context of a complex homicide investigation with dozens of witness interviews, reasonably trained homicide detectives understand that prosecutors rely on the information relayed in their police reports."

**Evidence**     Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 35-37.

Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police

1797161.4

department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 98, 99) |
| 553.    In the opinion of police practices expert Andrew Boan, "[e]ven if summaries of witness interviews do not reflect every detail, the reports are expected to be accurate, objective summaries that capture all relevant facts. It is particularly important that reports highlight or call attention to exculpatory information relayed in | 553. Objection: *See* General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

such interviews. Because prosecutors cannot be expected to sift through potentially hundreds of hours of videos to ensure they have satisfied Brady obligations and reached a correct charging decision, police officers have a responsibility to flag exculpatory evidence generated through interviews."

**Evidence** Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 37.

following:

(1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-

1797161.4

393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1    were saying. (See Plaintiffs' facts 227,

2    228, above) Plaintiffs' facts show that

3    DDA Feldman made the suggestion,

4    after being informed of the information

5    the police were obtaining from the

6    different witnesses, that someone might

7    need to be flipped. (See Plaintiffs' fact

8    no. 235, above, and Exhibit N,

9    Feldman depo, 43:2-44:13, 44:18-20,

10   47:4-14, 74:4-75:15 (pp. 374-378 to the

11   Officers Compendium).

12        The evidence also shows that the

13   video DVDs of the two March 20,

14   2011 interviews were personally

15   delivered to the OCDA by April 15,

16   2011 and the video DVD of the March

17   21, 2011 interview of witness Leesa

18   Huynh was personally delivered to the

19   OCDA by April 15, 2011. Reynolds

20   Declaration, ¶¶2-4 (pp. 14 to the

21   Officers Compendium)

22        The evidence also shows that by

23   no later than July 19, 2011, the Orange

24   County District Attorney's Office had

25   in its possession the following audio

26   and video recordings of the witness and

27   suspect interviews conducted by the

28   Garden Grove Police Department

360

1797161.4

| | |
|---|---|
| | during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 100-102) |
| 554.      In the opinion of police practices expert Andrew Boan, "[e]ven if exclusion of Brady evidence from police reports is considered permissible because the information is available elsewhere, that is definitely not the case when, by excluding the Brady information, the report communicates a false and misleading description of events." **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 37. | 554. Objection: *See* General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:     (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp. 374-375 to the Officers Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

| | |
|---|---|
| | sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 103) |
| 555.    In the opinion of police practices expert Andrew Boan, "[i]t is a core obligation of the police to never provide false or misleading reports." **Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 37. | 555. Objection:  *See*   General Objections, Objections **A, C, D**. This opinion is not supported by the evidence in this case, particularly the testimony of the prosecutor, DDA Feldman, who testified to the following:<br><br>        (1) He was present in the Garden Grove police department for part of the day on April 20th while interviews were being conducted for the purpose of monitoring them and getting the "lay of the land" regarding suspects and who was being arrested. Exhibit N, Feldman depo, 43:2-44:13, 44:18-20 (pp.    374-375    to    the    Officers |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Compendium);

(2) During the second interview of Nina, DDA Feldman, suggested putting Nina and Aaron alone in the room together. Exhibit N, Feldman depo, 47:4-14, 74:4-75:15 (pp. 376, 377-378 to the Officers Compendium);

(3) While DDA Feldman might initially have relied on representations made to him by police officers placing Aaron at the scene of the shooting when deciding to file charges, throughout the case he would be looking to verify who those people were and whether or not they were competent to testify and what evidence he could use to show this. Exhibit N, Feldman depo, 113:24-115:3 (pp. 391-393 to the Officers Compendium);

(4) DDA Feldman did not rely on the completeness, accuracy, and truthfulness of the police report because he is aware that the police reports are summaries that never have all of the details. Exhibit N, Feldman depo, 34:1-9, 35:10-17 (pp. 368, 369 to the Officers Compendium);

(5) Police reports are police

1797161.4

officers' summaries -- they are not supposed to be transcriptions and are not supposed to have every detail; the specific details are contained in the audio/video recordings themselves. Exhibit N, Feldman depo, 38:1-39:4 (pp. 372-373 to the Officers Compendium); see also Exhibit L, Martin depo, vol. 2, 240:6-11 (pp. 343 to the Officers Compendium).

Further, Plaintiffs' other facts show that DDA Feldman, while he was present at the Garden Grove police department on April 20, 2011, participated in or listened in on conversations amongst the detectives regarding what the various suspects that they were interviewing that day were saying. (See Plaintiffs' facts 227, 228, above) Plaintiffs' facts show that DDA Feldman made the suggestion, after being informed of the information the police were obtaining from the different witnesses, that someone might need to be flipped. (See Plaintiffs' fact no. 235, above, and Exhibit N, Feldman depo, 43:2-44:13, 44:18-20, 47:4-14, 74:4-75:15 (pp. 374-378 to the

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

Officers Compendium).

The evidence also shows that the video DVDs of the two March 20, 2011 interviews were personally delivered to the OCDA by April 15, 2011 and the video DVD of the March 21, 2011 interview of witness Leesa Huynh was personally delivered to the OCDA by April 15, 2011. Reynolds Declaration, ¶¶2-4 (pp. 14 to the Officers Compendium)

The evidence also shows that by no later than July 19, 2011, the Orange County District Attorney's Office had in its possession the following audio and video recordings of the witness and suspect interviews conducted by the Garden Grove Police Department during its investigation of the March 20, 2011, gang related shooting: Interview of Anthony Nguyen (audio); Interview of John Nguyen (video); Interview of Alexander Tran (both sessions) (video); Interview of Aaron Nguyen (video); Interview of Tien Phung (audio); Interview of Nina Nguyen (Interview #1 video); and Interview of Nina Nguyen (Interview

1797161.4

| | |
|---|---|
| | #2 video). Declaration of Senior Deputy District Attorney Steven Schriver, ¶3 (p. 16 to the Officers Compendium).) (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 104) |

**Follow-Up Investigation**

| | |
|---|---|
| 556.    On 9/12/12, Detective Reynolds instructed Detective Lord to interview Tony Do at the Orange County Jail.<br>**Evidence**    Dkt. 73-2, Ex. 52 (Tony Do Interview Report), p. 1; see also Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), p. 151:20 – 152:4, 152:25 – 153:3 Nina remembers that Fat Tony was in Aaron's car on the night of the shooting.) | 556.    Objection: *See* General Objections, Objections **A, C, D.** This fact is not relevant to the issue raised in the pending motion for summary judgment. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 557.    According to Lord's police report, during the interview, Tony Do told Lord that he was with Aaron on the night of the homicide, attended the party at Puffy's house with Aaron and Nina, left the party and eventually wen to a restaurant; he was sure that their group was not in the Phi Hong parking lot near Harbor Blvd. and Westminster Ave.<br>**Evidence**    Dkt. 73-2, Ex. 52 (Tony Do Interview Report), p. 1-2. | 557.    Objection: *See* General Objections, Objections **A, C, D.** This fact is not relevant to the issue raised in the pending motion for summary judgment. Without waiving the objections, the Officers respond as follows: Undisputed. |
| 558.    GGPD detectives never interviewed the Julie in Aaron/Nina's car.<br>**Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 50. | 558.    Objection: *See* General Objections, Objections **A, C, D.** Vague as to "GGPD detectives." Plaintiffs' fact is not supported by admissible |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 105) |
| 559.    Cell phone records available to detectives during the investigation showed that the "Julie" in Aaron's car was Julie Vu. **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 49-50. | 559. Objection:    *See*    General Objections, Objections **A, C, D.** Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 106) |
| 560.    Julie Vu, not Julie Nguyen, was with Nina on the night of the shooting. **Evidence**    Dkt. 73-2, Ex. 401 (Nina Nguyen Dep. Tr.), pp. 178:11 – 180:4; 182:20 – 183:3 | 560. Objection:    *See*    General Objections, Objections **A, C, D**. This fact ignores the evidence that Julie Vu was deposed and she testified that after going to the party with Aaron and Nina, they dropped her off at home. Exhibit HH, Vu depo, 49:10-16, 51:13-15, 54:2-14, 56:11-13 (pp. 9-12 to the Officers Supplemental Compendium). |
| 561.    GGPD detectives had Tony Do's phone number but never obtained cell phone GPS information for his phone. **Evidence**    Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), pp. 48 – 49. | 561. Objection:    *See*    General Objections, Objections **A, C, D.** Vague as to "GGPD detectives." Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' |

1797161.4

| | |
|---|---|
| | separately filed Objections to Plaintiffs' Evidence, objection no. 67) |
| 562.     GGPD detectives never obtained cell phone GPS information for the Julie in Aaron's car.<br>**Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 50. | 562. Objection:   *See*   General Objections, Objections **A, C, D.** Vague as to "GGPD detectives." Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 107) |
| 563.     GGPD detectives did not take any steps to investigate Aaron's and Alex Tran's alibi that they were in the parking lot of the Thanh My restaurant at the time the shooting occurred.<br>**Evidence**   Dkt. 73-2, Ex. 201 (Boan 8/9/23 Report), p. 47. | 563. Objection:   *See*   General Objections, Objections **A, C, D.** Vague as to "GGPD detectives" and as to "did not take any steps." Plaintiffs' fact is not supported by admissible evidence. Plaintiffs' expert report is not admissible. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection nos. 67, 108) |
| 564.     On 6/16/11, Cynthia Sipaseuth told detectives that Aaron drove a silver Honda Accord, which she did not identify as being present at the pool hall, even though she was able to identify Puffy and CJ.<br>**Evidence**   Dkt. 73-2, Ex. 68 (Chart of Interview Tapes), p. 2; Dkt. 73-2, Ex. 81 (Report re Cynthia Sipaseuth), pp. 3, 5, ; Dkt. 73-2, Ex. 82 (Reynolds | 564. Objection:   *See*   General Objections, Objections **A, C, D.** This fact is neither material nor relevant. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 3-22-12 Rept. re Danny Tran) p. 3 | Feldman depo, 64:15-65:10, 105:3-9 (pp. 15-17 to the Officers' Supplemental Compendium). (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objections nos. 21, 22) |
| 565.    Det. Peter Vi's report regarding Leesa Huynh's interrogation indicates that she placed Aaron in the Phi Hong parking lot but, it omits that, even though she believed Aaron was there, she also told detectives that she did not see Nina or Julie in the parking lot; she assumed Aaron was present because he was in the neighborhood after the shooting. **Evidence** Dkt. 73-2, Ex. 64 (Peter Vi Report) p. 33 of 49 ("IN PARKING LOT OF POOL HALL") (emphasis in original); Dkt. 68 (Defs. Notice of Lodging – Exhibit CC-2 (Complete Video of Leesa Huynh Interrogation) (Video of Leesa Huynh Interrogation) 14:40:26 – 14:41:05 ("I didn't see anyone except for our car"; didn't see CJ or Shanks between Puffy's party and the neighborhood, assumes CJ was following because he was in the neighborhood later); 15:52:25 - 15:52:43 ("The only car I knew up there was ours"); 15:54:54 – 15:55:21 ("I think their car was really far or something because I didn't see it"); 15:57:40 – 15:57:50 ("Okay. I don't know where the brown car was… Q. But it was in the parking lot somewhere, right?... A. Yeah… Because they came to the | 565. Objection: *See* General Objections, Objections *See* General Objections, Objections **A, C, D.** This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. This also misstates the evidence. Leesa told Vi that she saw both Aaron and Nina in the poolhall parking lot and also that Aaron and Nina went to the house afterwards and also to M&M donuts. Exhibit Y, Transcript of Leesa interview, pp. 65, 66, 70, 88, 89, 90, 109, 113, 114, 116, 120, 205 (pp. 875, 876, 880, 898, 899, 900, 919, 923, 924, 926, 930, 1015 of the Officers' compendium); and Exhibits CC-1 and CC-2, video of Leesa interview at 1:13:59 – 1:14:07, 1:14:54 – 1:15:06, 1:19:11 – 1:19:23, 1:39:08 – 1:40:09, 2:42:31 – 2:43:, 2:44:52 – 2:45:32, 2:48:27 – 2:48:45. |

1797161.4

| | |
|---|---|
| neighborhood."). | Finally, to the extent this fact is based on Leesa's description of Aaron's car and whether she saw his car, it is neither material nor relevant. DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, Feldman depo, 64:15-65:10, 105:3-9 (pp. 15-17 to the Officers' Supplemental Compendium). (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 566. Det. Peter Vi's report also indicated Aaron's gang affiliation was "unk," but Leesa told him that Aaron was someone who could hang out with members of any group or gang (indicating he was NOT a gang member). **Evidence** Dkt. 73-2, Ex. 64 (Peter Vi Report) p. 29 of 49; Dkt. 68 (Defs. Notice of Lodging – Exhibit CC-2 (Complete Video of Leesa Huynh Interrogation) (Video of Leesa Huynh Interrogation) 16:49:45 – 16:50:30, 17:01:55 – 17:02:20. (Det. Peter Vi's report also omitted that she had been playing pool with the victim group the week prior because Aaron had connected her with them). | 566. Objection: *See* General Objections, Objections *See* General Objections, Objections **A, C, D.** This is an improper fact because it contains multiple subparts/statements buried in the cited evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Aaron was not a member of a gang. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 567. Leesa Huynh was not called to testify at trial. **Evidence** Ex. 118 (Rprt's Tr. On Appeal List of Witnesses), p. 6 | 567. Objection: *See* General Objections, Objections **A, C.** This fact is irrelevant. The Officers had no |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | control over what evidence was presented or not presented. DDA Feldman, as the prosecuting attorney, was the decisionmaker as to what evidence to present at trial, including deciding what witnesses he called. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium) Also, the evidence shows that Leesa was subpoenaed as a witness and she appeared in court several times in 2015 to testify but for unknown reasons she did not testify in 2017. Exhibit LL, criminal docket relating to Alex Tran, pp. 13, 16, and 17 (pp. 33-35 to the Officers Supplemental Compendium). |
| 568.    On 3/20/11, C.J., a TRG member, falsely told police that he and Aaron both drove towards the Phi Hong, but arrived at Harbor/Westminster after all the cars exited the parking lot.<br>**Evidence** Ex. 12(a) (Tien Phung/CJ 3/20/2011 Miranda Interrogation) 40:14 – 42:06. | 568. Objection: *See* General Objections, Objections **A, B.** The cited evidence does not support the statement descriptive "falsely." Without waiving the objections, the Officers respond as follows: Undisputed that CJ told the detective interviewing him that both he and Aaron drove the Phi Hong but they arrived as the cars were exiting the parking lot. |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| 569.    Detectives later determined that CJ was lying during his 3/20/2011 Miranda interview because various witnesses placed him in the parking lot **Evidence** Dkt. 73-2, Ex. 64 (Peter Vi Report re CJ, Leesa, Etc.) pp. 20, 21, 24 – 26 (the Miranda interview itself arose after officers found out that he had lied about his alibi earlier that day and had gotten his girlfriend to falsely corroborate his alibi). | 569.  Objection:    *See*    General Objections, Objections **A, C, D**. This purported fact is not supported by any evidence. Plaintiffs have not attached pp. 20, 21 and 24-26 to their Exhibit 64. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 17) |
| 570.    CJ was interrogated again on 4/23 and gave a fundamentally different statement that effectively negated everything he previously told police. During this interrogation, CJ admitted to being in the Phi Hong parking lot. He did not identify Aaron's car as being present. **Evidence** Battles 10/20/23 Decl., Ex. 65, Tien Phung 4-23-11 Interview, pp. 1 – 3, 5 – 8, 11 (noting Detective Loffler confronted CJ regarding various lies he told in earlier interrogation). | 570.  Objection:    *See*    General Objections, Objections **A, B, C**. This is an improper fact because it contains multiple subparts/statements, some of them buried in the cited evidence. It is also irrelevant since the issues raised in this case arise out of Nina's interview that occurred on April 20, 2011 and (to a limited extent) on the report of Leesa's interview that occurred on March 21. 2011. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objection no. 3) |
| 571.   C.J. was not called at trial **Evidence** Battles 10/20/23 Decl., Ex. 118 (Rprt's Tr. On Appeal List of Witnesses). | 571.  Objection:    *See*    General Objections, Objections **A, C.** This fact is irrelevant. The Officers had no control over what evidence was presented or not presented. DDA Feldman, as the prosecuting attorney, was    the    decisionmaker    as    to    what |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | evidence to present at trial, including deciding what witnesses he called. Exhibit N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21 (pp. 380-382, 388 of the Officers' compendium). |
| 572.    In his interrogation, Tom Phung described arriving at the pool hall in Cynthia's car and identified five other cars there: his brother's car, the victims' Lexus SUV, a purple car (or two), a white car and Annie's/Bones' car, but not Aaron's silver Honda Accord (Tom Phung never mentions a silver Honda Accord). Tom Phung does not mention Aaron until 1 hour and 14 minutes into the interrogation, when he says that Aaron was at Tony's house, not that he was at the Phi Hong or the shooting. When Loffler asks Tom Phung about a list of people, Tom Phung says **Alex was with Aaron**. Loffler asks, "was he in the parking lot? Well, Aaron showed up after. Was he with him? Did he go to Tony's?" Tom says, "**I didn't really know who was in the parking lot except for who I told you.**" (Thus, after *not identifying* Aaron when first asked about the pool hall in general, Tom Phung excludes Aaron from being at the pool hall when he is first asked specifically).<br><br>Loffler then *suggests*, "what about at the Phi Hong? Cause **Aaron was there right?**" Tom Phung conditionally accepts the suggestion that Alex must have been there because Aaron was there, stating: "***IF*** **Aaron was there,** | 572.    Objection:    *See*    General Objections, Objections **A, B, C**. Vague as to "his interrogation." Further, most of these facts are based on Plaintiffs' interpretation of what CJ said and not what he actually said. Also, this is an improper fact because it contains multiple subparts/statements, some of them buried in the cited evidence. Also, to the extent Plaintiffs are referencing CJ's April 23, 2011 interview, this fact is irrelevant since the issues raised in this case arise out of Nina's interview that occurred on April 20, 2011 and (to a limited extent) on the report of Leesa's interview that occurred on March 21. 2011. Further, DDA Feldman testified in his deposition that the type of car some of the suspects were in/driving was not relevant to the prosecution. Exhibit II, Feldman depo, 64:15-65:10, 105:3-9 (pp.    15-17    to the Officers' |

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

**he [Alex] was probably there too. They went together.**" Tom Phung later guesses (incorrectly) that a picture of a white Honda Accord was Aaron's car. When Tom Phung saw the only non-white light-colored vehicle (other than the shooter and victim cars-which Tom Phung identified correctly) on the surveillance footage stills, he wrote, "Puffy?". Tom Phung never indicated he saw Aaron, or any other people, apart from their cars, at the Phi Hong pool hall, and was not called to testify at trial (even though Tom Phung was in Anthony Le's car-and Anthony Le was tried together with Aaron).

**Evidence** Battles 10/20/23 Decl., Ex. 11(b) (Tom Phung Interrogation Tr.) p. 83; Battles 10/20/23 Decl., Ex. 11(a) (Tom Phung Interrogation) 12:39:40 - 12:41:55,    13:21:10   -   13:21:27, 13:25:55 - 13:26:25; Battles 10/20/23 Decl., Ex. 118 (Rprt's Tr. On Appeal List of Witnesses) P000362/Index 1 - P00364/Index; See also Dkt. 73-2, Ex. 107    (Cynthia    Sipaseuth    Trial Testimony Tr.), pp. 1120:3 - 1120:10, 1238:25 - 1239:17 (Cynthia Sipaseuth, who did testify at trial, under a grant of immunity, and was driving the car Tom Phung was in [while Tom was in the back seat], testified that she was in a position to see all of the vehicles leave the Phi Hong and did not see Aaron); Battles 10/20/23 Decl., Ex. 11(a) (Tom Phung Interrogation) (12:37:45 - 12:37:50).

Supplemental Compendium). Finally, the Officers had no control over what evidence    was    presented    or    not presented. DDA Feldman, as the prosecuting    attorney,    was    the decisionmaker as to what evidence to present at trial, including deciding what witnesses    he    called.    Exhibit    N, Feldman depo, 84:24-85:10, 86:2-18, 101:12-21    (pp.    380-382,    388 of the Officers' compendium).

573.    Aaron was prosecuted, convicted and sentenced to 40- years- to- life. Nina's fabricated diagram was the centerpiece of the prosecution's case.

573.    Objection:    *See*    General Objections,    Objections    **A, B, D**.

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| **Evidence** Dkt. 73-2, Ex. 301 (Appellate Decision) p. 2. | Argumentative a to "centerpiece of the prosecution's case." This descriptive is not supported by citation to any evidence. Without waiving the objections, the Officers respond as follows: Undisputed that Aaron was prosecuted, and after a unanimous jury found him guilty, he was sentenced to 40-years-to-life. |
| 574.   No determination was made regarding the voluntariness of her statements.<br><br>**Evidence** Battles 10/20/23 Decl., Ex. 115 (Excerpts of Transcript on Appeal) p. 281:10 - 281:20 (the court stated: ""I don't know if those statements are involuntary or voluntary at this point. I just don't know. And it could very well be that there is a mixture of involuntary statements and voluntary statements.") | 574. Objection:   *See*   General Objections, Objections **A, C**. Also, Plaintiffs' cited evidence does not support the conclusion reached in their fact that "no determination was made." Aaron's criminal defense counsel raised the issue of voluntariness during Aaron's criminal trial and these objections to Nina's statements to the police, including to the transcript of the portion of the interview where Aaron and Nina was left alone and spoke in Vietnamese, were considered by the court. Ultimately, Nina testified about her interview by the police, including being "yelled at" and not being believed when she said she didn't remember being there, and the creation and meaning of her drawing, all came |

in as did the drawing itself and the transcription of Nina and Aaron speaking Vietnamese to each other. *See* Exhibit Q, Excerpts from the criminal proceedings where Aaron's criminal defense counsel objected to and the issue of the voluntariness of Nina Nguyen's statements to the Garden Grove police officers were voluntary, Bates Stamped: P000379-380, P000547-550, P002738, P002746 and P003066 (pp. 441-449 to the Officers Compendium); Exhibit LL, criminal docket relating to Alex Tran, pp. 21, 24 (pp. 36-37 to the Officers Supplemental Compendium); Exhibit S, Nina Nguyen's criminal trial testimony beginning at P001393 through P001566, (pp. 451-594 to the Officers Compendium); Exhibit T, The People's Exhibit 73 consisting of a conversation between Aaron Nguyen and Nina Nguyen while they were at the Garden Grove police station, Bates Stamped: P004251 through P004262 (pp. 595-606 to the Officers Compendium); and Exhibit U, Diagram drawn by Nina Nguyen, Bates

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

| | |
|---|---|
| | Stamped: P000235 (p. 607 to the Officers Compendium). |
| 575.   Aaron was arrested on 4/20/2011 at 2:50 p.m.<br><br>**Evidence** Dkt. 73-2, Ex. 51 (Lord Supp Report re Nina Interrogation) p. 19. | 575.   Undisputed. |
| 576.   Any reasonable detective would have interpreted Nina's emotionally-distraught state as a red-flag that she was at risk of falsely confessing to escape an unbearable situation.<br><br>**Evidence** Dkt. 73-2, Ex. 203 (Boan 9/11/23 Report) pp. 13 - 15 (outlining IACP guidance setting out that threatening, accusatorial or antagonistic questioning can cause juveniles to offer up false information in an effort to bring an uncomfortable interview to an end, and that detectives must keep an open mind to the possibility that a juvenile might actually be innocent because detectives are no better than the average person at telling when someone is lying.) | 576.   Objection: *See* General Objections, Objections **A, C, D, E**. This is an improper ultimate conclusion disguised as a fact. This also is an improper fact because it contains multiple statements buried as reference to the evidence. Also, it is irrelevant because Nina did not make a confession, voluntary or otherwise. Further, Plaintiffs' cited evidence is inadmissible. (See also Lord's objection to Plaintiffs' evidence, objection nos. 15, 21, 83, 91) |
| 565. [sic]    The shooting incident did not involve "trapping" or "boxing" of any cars at the time of the shooting-the victim vehicle was not surrounded.<br><br>**Evidence** See e.g. Dkt. 68, Ex. EE-2 (John Ryder Nguyen Interrogation Video), 1-10:00:00 - 10:01:25 (John "Ryder" Nguyen stated he only saw Puffy's car near the victim vehicle and that the vehicles were more than half a football field away); Ex 202 (Greg | 565. [sic]    Objection: *See* General Objections, Objections **A, B, C, E**. Vague as to "did not involve." Also irrelevant that "at the time of the shooting" the victim vehicle was not surrounded. This fact is not relevant to the issues raised by Plaintiffs in this action. This purported fact is improper |

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

Meyer 7/31/23 Report) p. 5 (if surveillance video timestamps were correct, the shooting occurred at 02:17 hours); Dkt. 73-2, Ex. 69 (Anthony Nguyen Police Report (with Alan Au)) pp. 69-19 - 69-23 (surveillance footage stills captured at 02:17 hours show the victim vehicle alone with Puffy's silver Lexus); Battles 10/20/23 Decl., Ex. 310 (excerpt from Seaboard video surveillance) (showing that, after Puffy/victim car, the next closest vehicles were 4 and 5 seconds behind, making clear no "boxing" happened at the time of the shooting [and that the vehicles were too far away to have done any "boxing" in the .2 miles between the surveillance cameras just West of West St. and the Phi Hong); Battles 10/20/23 Decl., Ex. 152 (Morton Report re Shooting), p. 1 (shell casings were found just west of West St.); Battles 10/20/23 Decl., Ex. 60 (Evidence Log) p. 3 (surveillance footage business address was 13961 Seaboard Cir.); Battles 10/20/23 Decl., Ex. 309 (Google Maps Printouts) pp. 1 - 2 (McDonald's at southeast corner of Phi Hong parking lot is .2 miles away from 13961 Seaboard Cir.; 13961 Seaboard Cir. is around 400 feet away from West St.) . See also, Dkt. 73-2, Ex. 82 (Danny Tran 4-23-12 Proffer by Vi) p. 9 (Danny Tran stated, in a detailed proffer, that his car was directly behind Puffy's, and that there were no other vehicles nearby trying to box the victim vehicle in [just East of

because it contains multiple subparts/statements buried in the cited evidence. This evidence does not support the conclusion contained in the stated fact. Plaintiffs' counsel, Ms. Battles, has submitted as evidence her own interpretation as to what Exhibit 310 shows or means. She has not provided any credentials for interpreting this surveillance video. Plaintiffs have submitted evidence in support of their opposition showing that the plan was to trap or box in the victim vehicle. (See also the Officers' separately filed Objections to Plaintiffs' Evidence, objections nos. 18, 22)

1797161.4

1  | West St.]) |

4  ///

5  ///

6  DATED: October 20, 2023          WOODRUFF & SMART, APC

9  By: */s/Meredith D. Stewart*
10      CAROLINE A. BYRNE
        MEREDITH D. STEWART
11      Attorneys for Defendants CITY OF
        GARDEN GROVE, a public entity;
12      SERGEANT MARK LORD, an employee of
        City of Garden Grove, a public entity;
13      DETECTIVE MICHAEL REYNOLDS, a
14      former employee of City of Garden Grove, a
        public entity; and SERGEANT MIKE
15      MARTIN, a former employee of City of
16      Garden Grove, a public entity

1797161.4

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1

## **PROOF OF SERVICE**

2

## **STATE OF CALIFORNIA, COUNTY OF ORANGE**

3

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, CA 92626-7670.

4

5

On November 3, 2023, I served the foregoing document(s) described as **DEFENDANTS LORD, REYNOLDS AND MARTIN'S RESPONSE TO PLAINTIFFS' "ADDITIONAL" STATEMENT OF MATERIAL FACTS IN OPPOSITION TO THE OFFICERS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**

6

7

8

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

9

10

☐ **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

11

12

13

14

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

15

16

17

☐ **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

18

19

20

21

22

☐ **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

23

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

24

25

Executed on November 3, 2023, at Costa Mesa, California.

26

27

*/s/Vilay Lee*_____
Vilay Lee

28

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4

<u>**AARON NGUYEN v. CITY OF GARDEN GROVE, et al.**</u>

**USDC, CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 8:21-cv-01775-JVS (ADSx)**

**ASSIGNED FOR ALL PURPOSES TO
HONORABLE JAMES V. SELNA
COURTROOM 10C
MAGISTRATE JUDGE AUTUMN D. SPAETH
COURTROOM 6B**

<u>**SERVICE LIST**</u>

Barrett S. Litt, Esq.                      Attorneys for Plaintiffs
David McLane, Esq.                    **AARON NGUYEN, NGOC LE THI**
Lindsay Battles, Esq.                  **PHAN,    AND    HOANG    MINH**
Rodrigo Padilla, Esq.                  **NGUYEN**
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, CA 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
Email: blitt@mbllegal.com
 dmclane@mbllegal.com
 lbattles@mbllegal.com
 rpadilla@mbllegal.com
 mbolanos@mbllegal.com

7/2023

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

1797161.4